UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| COZY COMFORT COMPANY, LLC, | : |
| | : |
| Plaintiff, | : |
| | :   Court No. 22-00173 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

## **ORDER**

Upon reading plaintiff's motion for a postassignment conference to explore court-annexed mediation; defendant's response in opposition thereto; upon consideration of other papers and proceedings had herein; and upon due deliberation, it is hereby

ORDERED that plaintiff's motion be, and hereby is, denied.

_____
Stephen Alexander Vaden, Judge

Dated: New York, New York
This day_____of_____, 2023.

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A
POSTASSIGNMENT CONFERENCE TO EXPLORE COURT-ANNEXED MEDIATION**

The United States (Government), defendant, hereby responds in opposition to plaintiff's, Cozy Comfort Company, LLC's (Cozy Comfort) motion for a postassignment conference to explore court-annexed mediation. For the reasons set forth below, Cozy Comfort's motion should be denied.

This is not a complex case; it concerns the classification of a single product called The Comfy®, imported by Cozy Comfort in 2021 through the Port of Los Angeles. *See* ECF No. 1. Below is a photograph and a diagram of The Comfy® from documents produced by plaintiff in discovery:




2

*See* Attach. 1, Pl. Docs. in Resp. to Def.'s Reqs. for Prod., at Cozy Comfort 00013, 00185.

Cozy Comfort claims that the merchandise should be classified under subheading 6301.40.0020 (as a "blanket"), subheading 6307.90.9891 (as a "textile"), or subheading 6114.30.3070 (as a "garment") of the Harmonized Tariff Schedule of the United States (HTSUS). Compl. ¶¶ 27, 32, and 36, ECF No. 6. Conversely, the Government maintains that it is properly classified under subheading 6110.30.30, HTSUS, as a "pullover". *See* Answer ¶ 2, ECF No. 9. On August 24, 2023, Cozy Comfort filed a motion for court-annexed mediation. Pl. Mot., ECF No. 21.

Pursuant to USCIT Rule 16.1, "[a]t any time during the pendency of an action before the United States Court of International Trade, any judge or three-judge panel of thecourt may refer the action for mediation." "Mediation is a flexible, non-binding dispute resolution procedure in which a neutral third party, the mediator, facilitates negotiations between the parties to assist them with settlement." Court's Guidelines for Court-Annexed Mediation, at 1. "A hallmark of mediation is its capacity to help parties expand traditional settlement discussions and broaden resolution options, often going beyond the legal issues in controversy." *Id.* Mediation sessions are "structured to help parties communicate, to clarify their understanding of underlying interests and concerns, probe the strengths and weaknesses of legal positions, explore the consequences of not settling and generate settlement options." *Id.*

We oppose mediation on several grounds. First, the question presented (*i.e.*, the proper tariff classification of the imported merchandise) is not of the type that is likely to be resolved through mediation, and as such, mediation would not be a beneficial use of the parties or the Court's resources. The Government has carefully considered the physical characteristics of the merchandise in relationship to the tariff code, and we have consistently determined that The

Comfy® is properly classified as a "pullover."  On several occasions, plaintiff has proposed resolving this case through a stipulated judgment on agreed statement of facts.  But, because of the parties' differing views on the proper classification, an agreement has never been reached.

In our view, the parties have engaged in sufficient factual discovery of the imported merchandise such that there remain no genuine issues of material fact, and the facts that have been elicited through discovery show that The Comfy® is an oversized hooded pullover with a marsupial pocket and ribbed cuffs, such that it is properly classified under subheading 6110.30.30, HTSUS, as a "pullover".  In other words, this action involves only a legal dispute, and is ripe for disposition through summary judgment.  As such, mediation would not be fruitful in assisting the parties in reaching a resolution to this case.  Instead, the parties should proceed with dispositive briefing and cross-motions for summary judgment.

The classification of merchandise under the tariff code is governed by the principles set forth in the General Rules of Interpretation (GRIs) and the Additional U.S. Rules of Interpretation.  *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007).  GRI 1 provides, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the {remaining GRIs.}"  GRI 6 extends the principles of GRI 1 to the subheading level.

The determination of whether a particular product falls within a tariff classification is a two-step process: first, the meaning of terms within the provision must be ascertained, and second, a determination must be made as to whether the merchandise at issue falls within the description of such terms as properly construed.  *See Nat'l Advanced Sys. v. United States*, 26

F.3d 1107, 1109 (Fed. Cir. 1994).  "When there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'" *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965-66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

Here, there is no genuine dispute as to the nature of the merchandise or the material facts necessary to decide the question of law.  Merriam-Webster Online Dictionary defines a pullover as "1) a pullover garment (such as a sweater)." *Pullover*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/pullover (last visited Aug. 24, 2023).  Oxford Languages defines a pullover as "a garment, especially a sweater or jacket, put on over the head and covering the top half of the body." *Pullover*, Oxford Languages, https://www.google.com/search?q=pullover+definition (last visited Aug. 24, 2023).

The facts show that The Comfy® meets this plain meaning of a pullover.  The Comfy® is 41 inches in length from the shoulder to the bottom hem, the center length from the center line of The Comfy® down to the bottom hem is 36 inches, and the back hem from the center length is 41 inches.  *See* Attach. 2, Speciale Dep. 12:15-19.  Consistent with the plain meaning of a pullover, The Comfy® has sleeves, an opening for the head, and an opening for the waist, and is worn by being pulled over the head.  *Id.* at 43:3-22.  Like other pullovers, The Comfy® is made of microfiber on the outside and has sherpa lining on the inside.  *Id.* at 33:21.  Moreover, like other pullovers, The Comfy® has ribbed cuffs, a hood, and a marsupial pocket for the hands on the front side.  *Id.*  Blankets, however, do not have sleeves, ribbed cuffs, openings for the head or waist, or marsupial pockets.  *Id.* at 41:22-42:10.  Finally, The Comfy® can be worn and used in the same manner as a pullover, such as when walking, dancing, running, walking the dog, camping, watching a movie at a theater, and attending a sporting event, with the wearer

maintaining access to items through the sleeves.  *See id.* at 46:14-48:20.  Indeed, customers put it on in the typical fashion of or similar to an article of clothing.  *Id.* at 93:1-3.  All these facts show that The Comfy® is designed, worn, and used in the same manner as an oversized pullover or hoodie, and none of the above facts are genuinely disputed.

Neither of the dictionary definitions set forth above limit the length of a pullover to above the waist, or the knees.  One requirement in the second definition is simply that the garment cover the top half of the body, which The Comfy® does.  As such, there are no facts that are material to the resolution of the parties' legal dispute regarding The Comfy®'s proper classification that are genuinely disputed.  Because there is no genuine, material dispute as to the nature of the merchandise, the two-step classification analysis collapses entirely into a question of law.

Cozy Comfort argues that mediation is appropriate because the Government has purportedly "admitted that its chosen classification is incorrect."  Pl.'s Mot. 1.  However, the Government has made no such admission, Cozy Comfort has not cited to any evidence to support this assertion, and the appropriate tariff classification of the merchandise remains a disputed legal question between the parties.

To the extent that Cozy Comfort is referencing the classification of "sweaters" under heading 6110, HTSUS, as discussed in U.S. Customs and Border Protection's (Customs) Informed Compliance Publication on Classification: Apparel Terminology under the HTSUS, June 2008 (ICP), *see* Pl. Mot. 1-2, Cozy Comfort's allegation is also without support.  *See* Attach. 3, ICP at GOV0000995, GOV0001005, GOV0001016.  The Government explained, in response to Cozy Comfort's interrogatory No. 12 and during the deposition of the Government's designated agent pursuant to USCIT Rule 30(b)(6), that the statement in the ICP applies only to "sweaters" with sherpa linings that otherwise meet the criteria for classification as one of the

outerwear articles under headings 6101 or 6102, HTSUS.  *See* Attach. 3, ICP at GOV0001005,

GOV0001016; Attach. 4, Def. Resps. to Pl. Interrogs. at 9; Attach. 5, Matherne Dep. 147:7-

159:7.  The statement does not apply to "pullovers" of heading 6110, HTSUS, which are

separately described in the ICP, or to products that do not otherwise meet the criteria of the

outwear products under headings 6101 or 6102, HTSUS.  *Id.*  Because The Comfy® is properly

classified as a "pullover," Customs' analysis of "sweaters" does not apply to The Comfy®.

Indeed, headings 6101 and 6102 provide for outerwear garments with <u>full front openings</u>, such as

overcoats, carcoats, capes, cloaks, anoraks (including ski-jackets), windbreakers and similar

articles, and The Comfy® lacks a full front opening.  *See* Attach. 4, Def. Resps. to Pl. Interrogs.

at 9.  Furthermore, the Court reviews the question of the tariff classification *de novo* based on the

record made before the Court.  28 U.S.C. § 2640(a)(1).  Consequently, the ICP is merely

guidance for the trade community.[1]  Given that the Government has already explained its position

to plaintiff, mediation is unlikely to resolve the parties' dispute on this point.

To the extent that plaintiff is relying upon Customs' recent ruling on an electric wearable

blanket in NY Ruling N333990, dated July 25, 2023 (NY N333990), the product in NY

N333990 is dissimilar from The Comfy®.  NY N33990 does not include a photograph of the

merchandise, but it describes the electric blanket at issue as follows:

> The product is composed of two layers: 100 percent polyester plush
> knit pile fabric on one side and 100 percent sherpa fleece knit pile
> fabric on the other side.  The blanket has a cape-like design with
> pockets below the waist on the plush knit side when worn, as
> intended.  It is oblong in shape with rounded corners and a narrow 35

---

[1]  The ICP is intended to provide guidance and information to the trade community.  Attach. 3, ICP
at GOV0000996.  It reflects the position on or interpretation of the applicable laws or regulations
by Customs as of the date of publication, which is shown on the front cover.  *Id.*  It does not in any
way replace or supersede those laws or regulations.  *Id.*  Only the latest official version of the laws
or regulations is authoritative.  *Id.*

inch long "U" shaped opening cut from the front bottom edge
through the center to allow the blanket to drape down the back and
over both shoulders.  The blanket contains warming wires throughout
sewn in place between the two layers.  The warming wires connect to
a touch control button on the lower right front and a cord connector
on the lower right back.  The blanket measures 58 × 64 inches and
has hemmed edges.  A power cord that connects to the cord
connector is included.

Attach. 6, NY N333990 at 1.

Although both products include a sherpa lining, the design and features of The Comfy®

contrast with the product in NY N333990.  Cozy Comfort's designated agent pursuant to USCIT

Rule 30(b)(6) confirmed that The Comfy® has sleeves, an opening for the head, and an opening

for the waist, and is worn by being pulled over the head (Attach. 2, Speciale Dep. 43:3-22); has

ribbed cuffs, a hood, and a marsupial pocket for the hands on the front side (*id.*); and its

measurements are 41 inches in length from the shoulder to the bottom hem, the center length from

the center line of The Comfy® down to the bottom hem is 36 inches, and the back hem from the

center length is 41 inches (*id.* at 12:15-19).  Moreover, unlike the electric blanket in NY Ruling

N333990, which presumably must be plugged in during operation, The Comfy® is not electric, it

does not have warming wires or a power cord, and it can be worn in various different activities

both inside and outside the home, such as walking, running, dancing, walking the dog, camping,

watching a movie at a theater, and attending a sporting event.  *See id.* at 46:18-48:11-13.  Given the

differences between the products, NY N333990 is not informative for the proper tariff

classification of The Comfy®.  As such, NY N333990 does not provide a basis for mediation.

Cozy Comfort's other stated reason for seeking mediation, that "the parties also continue

to dispute several key material facts, such as: the length of The Comfy® on the average

consumer, the weight of the material used to construct The Comfy®, and how The Comfy® is

used by the average consumer", is also incorrect. Pl. Mot. 2. The parties do not dispute the overall design, construction, composition, and function of The Comfy®. As noted above, Cozy Comfort confirmed the key facts on each of these topics during discovery, and any factual disputes that might exist are not material to the classification of The Comfy®. For example, in its motion, *see id.*, Cozy Comfort states that The Comfy®, which is a one-size-fits-all product, can fit differently depending on the height or size of the wearer. *See also* Attach. 1, Pl. Docs. in Resp. to Def.'s Reqs. for Prod., at Cozy Comfort 00216 (The Comfy® "is made for adults and children over 10 years of age"). However, the Government disagrees that there is a genuine dispute over how The Comfy® fits, given the information that Cozy Comfort provided, including marketing materials showing The Comfy® being worn by a variety of wearers, as well as deposition testimony showing that The Comfy® is correctly worn by customers on whom The Comfy® goes past the knees as well as by customers on whom it sits above the knees or mid-thigh. Attach. 2, Speciale Dep. 29:13-32:15.

Regardless of how long The Comfy® appears on the average user, the undisputed facts show that the product is designed and used as a "pullover." Moreover, the length of The Comfy® on the average consumer is not material to the disposition of the case, based on the common meaning of the term "pullover". Similarly, based on the common meaning of the term "pullover", the weight of the material used to construct The Comfy® is not material to disposition at summary judgment. Finally, how The Comfy® is used by the average consumer is not genuinely disputed, given that the record shows that The Comfy® can be worn in various places while engaged in various activities and can be used in the same manner as a pullover, such as when walking, running, dancing, walking the dog, camping, watching a movie at a theater, and attending a sporting event, with the wearer maintaining access to items through the

sleeves. *Id.* at 46:18-48:11-13.

Finally, mediation is most effective when it is supported by both parties. In *Midwest-CBK, LLC v. United States*, Consol. Court No. 17-00154, the Court denied plaintiff's motion for court-annexed mediation on the basis that defendant opposed mediation and mediation "is most effective with willing parties." Order 1, ECF No. 46 ("The court will not refer the action to mediation because Defendant opposes Plaintiff's Motion and mediation is a tool that is most effective with willing parties. Therefore, the court denies the Plaintiff's Motion."). Further, in *Midwest*, significant discovery had already taken place at the time plaintiff filed its motion for mediation, *see* Def.'s Resp. to Pl.'s Mot. at 1, ECF No. 44, as is also the case here. Because the Government does not support mediation (for the reasons previously explained), and mediation is most effective with willing parties, the Court should also deny plaintiff's motion on this independent basis.

### Conclusion

For all the reasons above, the Government respectfully requests that the Court deny Cozy Comfort's motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge

        /s/ Brandon A. Kennedy
        BRANDON A. KENNEDY
        Trial Attorney
        10

Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-9237 or 9230

Dated: September 7, 2023                    *Attorneys for Defendant*