UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| COZY COMFORT COMPANY, LLC, | : |
| | : |
| Plaintiff, | : |
| | : Court No. 22-00173 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

## **ORDER**

Upon reading defendant's motion for summary judgment; plaintiff's response; defendant's reply; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion for summary judgment be, and hereby is, granted; and it is further; and it is further

**ORDERED** that judgment is entered for defendant and this action be, and hereby is, dismissed.

_____
Stephen Alexander Vaden, Judge

Dated: New York, New York
This day_____of_____, 2023.

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                                        BRANDON A. KENNEDY
Michael Anderson                              Trial Attorney
General Attorney                               Department of Justice, Civil Division
Office of the Assistant Chief Counsel    Commercial Litigation Branch
International Trade Litigation              26 Federal Plaza, Room 346
U.S. Customs and Border Protection     New York, New York 10278
New York, New York 10278                 Tel.: (212) 264-9237 or 9230
                                                            *Attorneys for Defendant*

Dated: November 3, 2023

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

QUESTIONS PRESENTED.............................................................................................. 12

SUMMARY OF ARGUMENT ......................................................................................... 12

ARGUMENT .................................................................................................................... 14

I.    STANDARD OF REVIEW ..................................................................................... 14

II.   LEGAL FRAMEWORK FOR TARIFF CLASSIFICATION
      UNDER THE HTSUS ............................................................................................ 15

III.  THE COMFY® IS PROPERLY CLASSIFIED UNDER SUBHEADING
      6110.30.30, HTSUS, BECAUSE IT IS DESCRIBED BY THE
      TARIFF TERM "PULLOVER" IN HEADING 6110 .............................................. 17

      a.   A "Pullover" Is A Knitted Or Crocheted Article Of Clothing That Is Worn
           By Pulling It Over One's Head And Covers The Upper Body ............................ 18

      b.   The Comfy® Meets All The Elements Of The Definition Of A Pullover ........... 20

      c.   The Arguments In Plaintiff's Complaint Are Not Supported By The Law ........ 25

      d.   The Comfy® Is Properly Classified In Subheading 6110.30.30 ...................... 26

IV.   IN THE ALTERNATIVE, SHOULD THE COMFY® NOT BE CONSIDERED
      A PULLOVER, IT IS STILL PROPERLY CLASSIFIED UNDER HEADING
      6110, HTSUS, BECAUSE IT QUALIFIES AS A "SIMILAR ARTICLE" TO
      SWEATERS, PULLOVERS, SWEATSHIRTS, AND WAISTCOATS (VESTS) ........ 27

      a.   The Meaning Of "Similar Articles" To "Sweaters, pullovers, sweatshirts,
           waistcoats (vests)" .......................................................................................... 28

      b.   The Facts Show That The Comfy® Qualifies As A "Similar Article"
           "Sweaters, pullovers, sweatshirts, waistcoats (vests)" Of Heading 6110 ........... 29

V.    THE COMFY® IS NOT PROPERLY CLASSIFIED UNDER ANY OF THE
      THREE HEADINGS PROFFERED BY PLAINTIFF IN ITS COMPLAINT .............. 31

      a.   The Comfy® Is Not Properly Classified Under HTSUS Heading 6301 For
           "Blankets and Traveling Rugs" ....................................................................... 32

i

b.  The Comfy® Is Readily Distinguishable From The Merchandise In *Allstar* ...... 34

c.  The Comfy® Is Not Properly Classified Under HTSUS Heading 6307
For "Other Made Up Articles, Including Dress Patterns" .................................. 39

d.  The Comfy® Is Not Properly Classified Under HTSUS Heading 6114
For "Other Garments, Knitted Or Crocheted" ..................................................... 40

CONCLUSION ............................................................................................................... 41

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 14

*Allstar Mktg. Grp., LLC v. United States*,
211 F.Supp.3d 1319 (Ct. Int'l Trade 2017) ................................................... *passim*

*Aves. In Leather, Inc. v. United States*,
178 F.3d 1241 (Fed. Cir. 1999) ........................................................................ 27, 28

*Aves. In Leather, Inc. v. United States*,
423 F.3d 1326 (Fed. Cir. 2005) .............................................................................. 16

*BASF Corp. v. United States*,
482 F.3d 1324 (Fed. Cir. 2007) .............................................................................. 15

*Bausch & Lomb, Inc. v. United States*,
148 F.3d 1363 (Fed. Cir. 1998) .............................................................................. 15

*BenQ Am. Corp. v. United States*,
646 F.3d 1371 (Fed. Cir. 2011) .............................................................................. 16

*CamelBak Prods., LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011) .............................................................................. 18

*Casio, Inc. v. United States*,
73 F.3d 1095 (Fed. Cir. 1996) ................................................................................ 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................... 14

*Clarendon Marketing, Inc. v. United States*,
144 F.3d 1464 (Fed. Cir. 1998) .............................................................................. 15

*Cummins Inc. v. United States*,
454 F.3d 1361 (Fed. Cir. 2006) .............................................................................. 16

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014) ..................................................................... 17, 21, 27

*Fuji Am. Corp. v. United States*,
519 F.3d 1355 (Fed. Cir. 2008) .............................................................................. 16

*GRK Canada, Ltd. v. United States*,
761 F.3d 1354 (Fed. Cir. 2014) ........................................................................ 17, 21

*Kahrs International, Inc. v. United States*,
   713 F.3d 640 (Fed. Cir. 2013)........................................................................ 17

*Len-Ron Mfg. Co., Inc. v. United States*,
   334 F.3d 1304 (Fed. Cir. 2003)...................................................................... 16

*Link Snacks, Inc. v. United States*,
   742 F.3d 962 (Fed. Cir. 2014)........................................................................ 16

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)....................................................................................... 14

*Michael Simon Design, Inc. v. United States*,
   637 F. Supp. 2d 1218 (Ct. Int'l Trade 2009) ................................................. 17

*Nat'l Advanced Sys. v. United States*,
   26 F.3d 1107 (Fed. Cir. 1994)........................................................................ 16

*Orlando Food Corp. v. United States*,
   140 F.3d 1437 (Fed. Cir. 1998)...................................................................... 15

*Phone-Mate, Inc. v. United States*,
   690 F.Supp. 1048 (Ct. Int'l Trade 1988),
   *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) ........................................................... 14

*Rollerblade, Inc. v. United States*,
   282 F.3d 1349, 1354 (Fed. Cir. 2002)……….…………………………………………39, 41

*R.T. Foods, Inc. v. United States*,
   757 F.3d 1349 (Fed. Cir. 2014)............................................................... *passim*

*Rubies Costume Co. v. United States*,
   279 F.Supp.3d 1145 (Ct. Int'l Trade 2017)............................................. *passim*

*Rubies Costume Co. v. United States*,
   922 F.3d 1337 (Fed. Cir. 2019)....................................... 13, 25, 28, 29, 31

*Sports Graphics, Inc. v. United States*,
   24 F.3d 1390 (Fed. Cir. 1994)........................................................................ 27

*The Pomeroy Collection, Ltd. v. United States*,
   559 F.Supp.2d 1374 (Ct. Int'l Trade 2008) ................................................... 15

*Texas Apparel Co. v. United States*,
   698 F. Supp. 932 (Ct. Int'l Trade 1988),
   *aff'd* 883 F.2d 66 (Fed. Cir. 1989), *cert denied* 493 US 1024 (1990)....................................... 14

*United States v. Pan Pac. Textile Group Inc.*,
   276 F.Supp.2d 1316 (Ct. Int'l Tr. 2003) ................................................................ 14

*Victoria's Secret Direct, LLC v. United States*,
   769 F.3d 1102 (Fed. Cir. 2014) ......................................................... 27, 28, 31

*Warner-Lambert Co. v. United States*,
   407 F.3d 1207 (Fed. Cir. 2005) ...................................................................... 16

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 ........................................................... *passim*

General Rule of Interpretation 6 ......................................................... 5, 27

Chapter 61

   Heading 6110 ............................................................................. *passim*

      Explanatory Note 61.10 ......................................................... 18, 30

      Subheading 6110.30 ............................................................... 27

      Subheading 6110.30.30 ...................................................... *passim*

   Heading 6111 ......................................................................... 19

   Heading 6114 ...................................................... 12, 13, 40, 41

   Explanatory Note 61.14 (2017) ................................................ 41

   Subheading 6114.30.30 ........................................................... 40

   Subheading 6114.30.3070 ........................................................... 1

Chapter 63

   Heading 6301 ........................................................................ *passim*

   Explanatory Note 63.01 (2017) .................................................. 32

   Explanatory Note 63.07 (2017) .................................................. 40

   Subheading 6301.40.00 ............................................................. 32

   Subheading 6301.40.0020 ............................................................ 1

Heading 6307 ..................................................................................................*passim*

    Subheading 6307.90.98................................................................................ 39
    Subheading 6307.90.9891............................................................................. 1

    Note 7 to Section XI .................................................................................. 40

Chapter 99

 Heading 9903

    Subheading 9903.88.15............................................................................... 2

**Rules**

USCIT Rule 56 .............................................................................................. 1,14

USCIT Rule 56(c) ............................................................................................ 14

USCIT Rule 30(b)(6) ………………………………………………………....5

**Other Authorities**

HQ H313594 (May 21, 2021) ...................................................................... 2, 10

PULLOVER, *Merriam Webster*,
available at https://www.merriam-webster.com/dictionary/pullover ......................................... 18

PULLOVER, *Encyclopedia Britannica*,
available at https://www.britannica.com/dictionary/pullover..................................................... 18

PULLOVER, *Dictionary.com*,
available at https://www.dictionary.com/browse/pullover ......................................................... 18

PULLOVER, *The American Heritage Dictionary*,
available at https://www.ahdictionary.com/word/search.html?q =pullover ............................... 19

PULLOVER, *The Fairchild Dictionary of Fashion (2003)* .......................................................19

BLANKET, *Merriam Webster*,
available at https://www.merriam-webster.com/dictionary/blanket ........................................... 33

BLANKET, *The American Heritage Dictionary*,
available at https://www.ahdictionary.com/word/search.html?q=blanket................................... 33

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade,

defendant, United States, respectfully moves this Court for an Order: (1) granting our motion for

summary judgment; (2) entering judgment for defendant and dismissing this action; and (3)

granting defendant such other and further relief as may be just and appropriate.  Summary

judgment in favor of defendant is appropriate because there are no genuine issues of material

fact, and defendant is entitled to judgment in its favor as a matter of law.

## **INTRODUCTION**

This case concerns the classification of a single product called The Comfy®, imported

by Cozy Comfort in 2021 through the Port of Los Angeles.  *See* Summons (ECF No. 1).  Cozy

Comfort claims that the merchandise should be classified under subheading 6301.40.0020 (as

a "blanket"), subheading 6307.90.9891 (as a "textile"), or subheading 6114.30.3070 (as a

"garment") of the Harmonized Tariff Schedule of the United States (HTSUS).  Cmpl. ¶¶ 27,

32, 36 (ECF No. 6).  Conversely, the Government maintains that it is properly classified under

subheading 6110.30.30, HTSUS, as a "pullover" or "similar article."  *See* Answer ¶ 2 (ECF

No. 9).

The parties have engaged in factual discovery of the imported merchandise such that no genuine disputes remain as to the facts that are material to the resolution of this action. As we show below, The Comfy® is an oversized hooded pullover with a marsupial pocket and ribbed cuffs, and it is properly classified under subheading 6110.30.30, HTSUS, as a "pullover" or "similar article" as those terms are interpreted pursuant to their plain meaning.

<u>**STATEMENT OF FACTS**</u>

The merchandise at issue was entered in January 2021, under cover of Entry No. 442-9233932-0. Def. Statement of Facts (SOF), ¶ 1. The commercial invoice and packaging list for the merchandise at issue describes the merchandise as "Knit PullOver (Comfy Blue)." Def. SOF, ¶ 2. The merchandise at issue is a product of China and is commercially known as The Comfy® or The Comfy® Original. Def. SOF, ¶¶ 3-4. U.S. Customs and Border Protection (Customs or CBP) classified The Comfy® as a pullover in Headquarters Ruling Letter (HQ) H313594, dated May 21, 2021; thereafter, Customs classified The Comfy® upon liquidation under subheading 6110.30.30, HTSUS, dutiable at 32 percent *ad valorem*, and assessed Section 301 duties under subheading 9903.88.15 at 7.5 percent *ad valorem*. Def. SOF, ¶ 5. Below are a photograph and a diagram of The Comfy®:



Def. SOF, ¶ 6.

The Comfy® is knitted, made of man-made fibers, 100 percent polyester, and is made using two separate knitted fabrics: a microfiber fabric (microfleece) for the exterior and a sherpa fabric for the interior. Def. SOF, ¶ 7. The Comfy®, which is reversible, features an opening for the head, a hood, long-sleeves with ribbed cuffs, a frontal marsupial pouch pocket open at both ends, and an opening for the waist. Def. SOF, ¶¶ 8-9. The front panel of The Comfy® measures approximately 36 inches wide and 33 inches long from the bottom of the neck hole to the bottom of the panel. Def. SOF, ¶ 10. The front panel is shorter than the back panel, which measures approximately 36 inches wide and 41 inches long from the bottom of the neck hole to the bottom of the panel. *Id.* The dimensions of The Comfy® are provided in the following two images:





*Id.*

The Comfy® is worn on the body of the user like an article of clothing.  Def. SOF, ¶ 11.
To wear The Comfy®, users pull it over their heads, extend their arms through the sleeves, and
have the option of placing the hood over their heads.  Def. SOF, ¶ 12.  The following four
photographs depict users correctly wearing The Comfy®:

4

1          2          3



4

Def. SOF, ¶ 13.  Michael Speciale, plaintiff's designated agent pursuant to USCIT R. 30(b)(6),

appears in photographs 1, 3, and 4 (beginning from the top left, the photographs are labeled 1

through 4).  *Id.*

        The Comfy® is sized as one-size-fits-all, and Cozy Comfort also describes The Comfy®

as being "[f]or people of all ages, shapes, and sizes . . . ."  Def. SOF, ¶ 14.  The Comfy® covers

the user's torso and typically extends below the waist, but the length below the waist will depend

on the user's body size.  Def. SOF, ¶ 15.  For some users, The Comfy® will fall mid-thigh or

above the knees, while for other users, The Comfy® will fall at or below the knees.  *Id.*  The

5

following is a photograph of people wearing The Comfy® that appeared on Cozy Comfort's

website:



*Id.*

The design of The Comfy® was inspired by a men's XL hooded sweatshirt.  Def. SOF,

¶ 16.  Cozy Comfort stated:

> The idea for The Comfy was hatched in Brian Speciale's Phoenix,
> Arizona living room when his little bro Michael was staying with
> him as he went through a painful divorce.  Michael woke up one
> morning and saw Brian's seven-year-old son, Saxon, curled up on
> the couch in one of his brother's old hoodies. Since it was a men's
> XL, it obviously swallowed Saxon up. Michael looked at Brian and
> said, "Hey Bro, you think they make those for adults?"

*Id.*  Further, the Comfy® is intended to be worn over clothes.  Def. SOF, ¶ 18.

Although The Comfy® is intended to provide warmth to its users, it is not worn

for protection against the elements, such as rain, wind, or extreme cold.  Def. SOF, ¶ 19-

21.

The Comfy® is intended to allow users who wear it to perform activities that are not feasible with a traditional blanket, and is intended for use both inside and outside the home.  Def. SOF, ¶¶ 22-23.  The Comfy® is intended and marketed for use both while relaxing and while doing activities such as ice skating, holiday activities at the park, tailgating, dinner party hosting, outside chores (like raking leaves), outside play (like jumping in freshly raked leaf piles), pumpkin picking or carving, hayrides, corn mazes, dancing, walking the dog, getting the mail, cheering on the sidelines, raiding the fridge for snacks, and more.  Def. SOF, ¶ 24.

The Comfy® is sold online, including on Cozy Comfort's website (https://thecomfy.com) and Amazon, in retail brick and mortar stores, through social media, and by live stream.  Def. SOF, ¶ 25.  Cozy Comfort has at times marketed The Comfy® as a wearable blanket, but Cozy Comfort's marketing specifically distinguishes The Comfy® from traditional blankets based on its functions and features, including that The Comfy® allows users who wear The Comfy® to perform activities that are not feasible with an ordinary blanket.  Def. SOF, ¶ 26.  Cozy Comfort has also at times marketed The Comfy® as a sweatshirt or a garment and as "a giant blanket that's really a giant sweatshirt."  Def. SOF, ¶¶ 27-28.  Cozy Comfort's website introduced The Comfy® as follows:

THE COMFY COLLECTION

It started as a passing idea; it's now on its way to becoming a worldwide craze. Meet...
The Original Comfy. It's a giant blanket that's really a giant sweatshirt. (The other way around works, too.)

Its ultra-soft, ultra-luxurious, oversized design means you'll be wrapped in warmth and comfort whenever and wherever you need it.
While it's perfect for lounging around the house on those chilly mornings, it's also made for when you're on the go;
imagine having it at a sporting event, a camping trip, a cold movie theater, a cool evening on the patio−the possibilities are endless.

Best of all, there's no worrying about picking the right size − The Original Comfy is one-size-fits-most, so all you have to do is pick your color and GET COMFY!

*Id.*  Cozy Comfort marketed The Comfy® as "The Blanket … That's A Sweatshirt" on its

website, its product labeling for The Comfy®, in a promotional video, and during its co-

founders' appearance on the television show Shark Tank.  Def. SOF, ¶ 29.  Cozy Comfort also

marketed The Comfy® as a "Blanket/Sweatshirt" on its product packaging, as shown in the

following image, in which Cozy Comfort describes The Comfy® as "The Original

Blanket/Sweatshirt."



Def. SOF, ¶ 30.  Cozy Comfort also marketed The Comfy® as a "giant blanket that's a giant

sweatshirt" in its promotional video and as a "blanket that's a sweatshirt" during an appearance

8

on the television show Shark Tank.  Def. SOF, ¶¶ 31-32.  Cozy Comfort markets The Comfy®

as a substitute for an oversized sweatshirt and on its website states:

> It's no secret that there is something sensational about throwing on
> a sweatshirt that's 3 sizes too big for you. That's literally why we
> invented The Comfy, a giant wearable blanket that feels even
> better than an oversized sweatshirt! Whether you're tired of your
> favorite sweatshirt going missing, or you're tired of them
> complaining about you wearing their sweatshirt, it no longer has to
> be a problem! Trade out their oversized sweatshirt for a wearable
> blanket, and it'll be smooth snuggling from here on out.

Def. SOF, ¶ 33.

Cozy Comfort has described The Comfy® as a garment and a sweatshirt in other

filings before the U.S. Government.  Def. SOF, ¶ 34.  For example, Cozy Comfort

described The Comfy® as "The Blanket . . . That's A Sweatshirt" in one of its

trademarks.  *Id.*  Cozy Comfort obtained a federal trademark registration, Reg. No.

5,678,126, for the following trademark:



*Id.*  The trademark is described in the registration as consisting of "an image of a panda bear

wearing a hooded sweatshirt to the left of the words 'THE COMFY' all of which is above the

words 'THE BLANKET … THAT'S A SWEATSHIRT!'"  *Id.*  The trademark was first used in

commerce on December 3, 2017, and Cozy Comfort used the trademark on its website, its

product labeling for The Comfy®, in a promotional video, and during its co-founders'

appearance on the television show Shark Tank.  Def. SOF, ¶¶ 34-35.

However, Cozy Comfort requested that Reg. No. 5,678,126 be surrendered in its entirety

on June 17, 2021.[1]  Def. SOF, ¶ 36.  Nevertheless, Cozy Comfort describes The Comfy® as a

garment or overgarment in two of its patents, which were issued by the United States Patent and

Trademark Office.  Def. SOF, ¶ 37.  The Comfy® is covered by U.S. Patent Nos. 10,420,431,

D859,788 and D969,458.  Def. SOF, ¶ 38.  Cozy Comfort filed U.S. Patent No. 10,420,431 on

September 13, 2018, and it is entitled "Overgarment with an elevated marsupial pocket"; the

patent issued on September 24, 2019.  Def. SOF, ¶ 39.  Although in U.S. Patent No. 10,420,431,

the applicant described the field of the invention as relating to blankets or large, wearable

blankets, the covered product is consistently referred to as a "garment" or an "overgarment"

throughout the patent.  Def. SOF, ¶ 40.  For example, the Abstract and the first paragraph under

the heading titled "Summary of the Invention" provides as follows:

> An overgarment includes a single body constructed from two soft,
> woven fabric plies and a torso in the body. Opposed sleeves are
> attached to the torso at sleeve openings, and the sleeves each have
> a top, an opposed bottom, and a length. A marsupial pocket on a
> front of the torso has a top and opposed bottom, the top of the
> marsupial pocket is above the bottom of each sleeve, and the
> bottom of the marsupial pocket is below the bottom of each sleeve.

*Id.*  Moreover, all claims of U.S. Patent No. 10,420,431 are directed to an overgarment.

Def. SOF, ¶ 41.  For example, Claim 1 provides as follows:  The invention claimed is:  1.

An overgarment comprising:

---

[1] Cozy Comfort requested that Reg. No. 5,678,126 be surrendered after the issuance of Customs'
ruling on the classification of The Comfy® in Headquarters Ruling Letter (HQ) H313594, dated
May 21, 2021.

a single body constructed from two soft, woven fabric plies;

a torso in the body, the torso having a neck opening;

opposed sleeves attached to the torso at sleeve openings, the sleeves each having a top, an opposed bottom, and a length;

a marsupial pocket having a top and opposed bottom, wherein the top of the marsupial pocket is above the bottom of each sleeve at the respective sleeve opening, and the bottom of the marsupial pocket is below the bottom of each sleeve at the respective sleeve opening;

wherein the marsupial pocket has a height between its top and bottom which is 1.2 times the distance between the neck opening and the top of the marsupial pocket.

*Id.*

Cozy Comfort filed U.S. Patent No. D859,788 on September 13, 2017, and it is entitled "Enlarged over-garment with an elevated marsupial pocket"; the patent issued on September 17, 2019. Def. SOF, ¶ 42. The covered product in U.S. Patent No. D859,788 is consistently referred to as an "enlarged over-garment" throughout the patent, and it is not referred to as a blanket anywhere in the patent. Def. SOF, ¶ 43. The sole claim of U.S. Patent No. D859,788 is directed to the ornamental design for an enlarged over-garment with an elevated marsupial pocket, as shown and described in the patent. Def. SOF, ¶ 44. Cozy Comfort filed U.S. Patent No. D969,458 on April 11, 2020, and it is entitled "Whole body blanket"; the patent issued on November 15, 2022. Def. SOF, ¶¶ 45-46. The sole claim of U.S. Patent No. D969,458 is directed to the ornamental design for a whole body blanket, as shown and described in the patent. Def. SOF, ¶ 47.

Cozy Comfort's confidential internal business documentation shows that ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████. Def. SOF, ¶ 48.  The Comfy® has been manufactured by Xiamen Fitex

Garment Company, Xiamen Jinshi Export and Import Trade Company, Zhangzhou

Luckytex Garment Company, Quanzhou Shengliren Garments and Weaving Company,

and Mace Quanzhou Clothing Company.  Def. SOF, ¶ 49.  At least four of these are

garment or clothing companies.  *Id.*  Finally, Cozy Comfort's confidential internal

business documentation shows that The Comfy® ████████████████████

████████████.  Def. SOF, ¶ 50.

## QUESTIONS PRESENTED

1.   Whether The Comfy® is properly classified as a "pullover" or "similar article" under

heading 6110, HTSUS, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests)

and similar articles, knitted or crocheted," or

2.   Whether The Comfy® is properly classified as a "blanket" under heading 6301, HTSUS,

which provides for "Blankets and traveling rugs," or

3.   Whether The Comfy® is properly classified as an "other made up article" under the

basket heading 6307, HTSUS, which provides for "Other made up articles, including dress

patterns," or

4.   Whether The Comfy® is properly classified as an "other garment" under the basket

heading 6114, HTSUS, which provides for "Other garments, knitted or crocheted."

## SUMMARY OF ARGUMENT

Heading 6110, HTSUS, provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests)

and similar articles, knitted or crocheted."  The Comfy® is properly classified under this heading

because, pursuant to Rule 1 of the General Rules of Interpretation (GRIs) of the tariff code, it is

described by the common meaning of the tariff term "pullover."  A "pullover" is defined as a

knitted or crocheted article of clothing worn by pulling it over one's head that covers the upper parts of the body.  The dimensions and features of The Comfy® show that it meets this criteria. Specifically, like all pullovers, it is a knitted article of clothing that is worn by pulling it over one's head and it covers the upper parts of the body.  Moreover, like all pullovers, it features front and back panels, openings for the head and waist, and long sleeves, and like many pullovers, it features ribbed cuffs, fleece or microfleece material, a hood, and a marsupial pocket for the hands on the front.  Consequently, it is properly classified as a pullover under heading 6110, HTSUS.

Second, The Comfy® is properly classified under heading 6110 because, alternatively, pursuant to the rule of *ejusdem generis*, it qualifies as a "similar article" to "[s]weaters, pullovers, sweatshirts, waistcoats (vests)."  Under this rule, the phrase "similar articles" in heading 6110, HTSUS, covers articles that share the essential characteristics of (1) covering the upper body; (2) providing warmth to the wearer; (3) being suitable for wear over either undergarments or other clothing; and (4) not protecting against wind, rain, or extreme cold. *Rubies Costume Co. v. United States*, 922 F.3d 1337, 1345-1346 (Fed. Cir. 2019).  Here, like a sweater, pullover, or sweatshirt, The Comfy® covers the upper body and provides warmth to the wearer but does not protect against wind, rain, or extreme cold and because the wearer can also wear it over either undergarments or other clothing.  Def. SOF, ¶ 13, 18-21.  Therefore, classifying the merchandise under heading 6110 is appropriate under this alternative legal basis.

Finally, The Comfy® is not properly classified under heading 6301, HTSUS, because it is not described by the plain meaning of the tariff term "blanket."  Similarly, it is not properly classified under headings 6307 or 6114, HTSUS, which are basket provisions, because The

Comfy® is described by the plain meaning of the terms "pullover" and "similar articles" of heading 6110, HTSUS.

<u>**ARGUMENT**</u>

**I.      STANDARD OF REVIEW**

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  On a motion for summary judgment, the Court determines whether there are any factual disputes that are *material* to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Texas Apparel Co. v. United States*, 698 F.Supp.932, 934 (Ct. Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations omitted).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

"The court may not resolve or try factual issues on a motion for summary judgment." *Phone-Mate, Inc. v. United States*, 690 F.Supp.1048, 1050 (Ct. Int'l Tr. 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (citation omitted).  In determining whether a genuine issue of fact exists, the Court reviews the evidence submitted, drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F.Supp.2d 1316, 1319 (Ct. Int'l Tr. 2003); *Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This Court may resolve a classification issue by means of summary judgment.  *See*

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Summary judgment is appropriate where the nature of the merchandise is not in question and the sole issue before the Court is the proper classification of the merchandise. *See id*. In the absence of genuine factual issues, the propriety of summary judgment turns on the proper construction of the HTSUS, which is a question of law. *See Clarendon Marketing, Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998).

In this case, and as we will show further below, there are no facts that are genuinely in dispute to preclude summary judgment. The only dispute in this case is over the legal meaning of the tariff terms "pullover" and "similar articles" of heading 6110.

## II.    LEGAL FRAMEWORK FOR TARIFF CLASSIFICATION UNDER THE HTSUS

Merchandise imported into the United States is classified under the HTSUS. The tariff classification of merchandise under the HTSUS is governed by the principles set forth in the GRIs and the Additional U.S. Rules of Interpretation. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007).

GRI 1 provides, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the {remaining GRIs.}" As interpreted by its EN, GRI 1 establishes that "the terms of the headings and any relative section or Chapter Notes are paramount, *i.e.*, they are the first consideration in determining classification." *See also The Pomeroy Collection, Ltd. v. United States*, 559 F.Supp.2d 1374, 1385 (Ct. Int'l Trade 2008). GRI 6 extends the principles of GRI 1 to the subheading level. The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force

of statutory law.  *Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).

The determination of whether a particular product falls within a tariff classification is a two-step process: first, the meaning of terms within the provision must be ascertained, and second, a determination must be made as to whether the merchandise at issue falls within the description of such terms as properly construed.  *See Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994).  "When there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'"  *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965-66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

Where, as here, relevant terms are undefined in the tariff statute, they "are {to be} construed according to their common {and} commercial meanings."  *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (internal quotation marks omitted).  To ascertain the "common {and} commercial meanings" of a particular tariff term, the Court "may rely on its own understanding of the term as well as upon lexicographic and scientific authorities."  *Len-Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003).  That is, the "court may consult dictionaries, scientific authorities, and other reliable information sources."  *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

"After consulting the [H]eadings and relevant section or chapter notes" consistent with GRI 1, the ENs attendant to the relevant HTSUS Headings may be considered.  *Fuji Am. Corp. v. United States*, 519 F.3d 1355, 1357 (Fed. Cir. 2008) (citation omitted).  The World Customs Organization publishes the ENs as its "official interpretation of the Harmonized Commodity Description and Coding System," the "global system of trade nomenclature on which the HTSUS

is based." *Kahrs International, Inc. v. United States*, 713 F.3d 640, 644 n.2 (Fed. Cir. 2013);

*Michael Simon Design, Inc. v. United States*, 637 F. Supp. 2d 1218 (Ct. Int'l Trade 2009)

(discussing the HTSUS's historical backdrop.  The ENs provide persuasive guidance and "are

generally indicative of the proper interpretation," although they do not constitute binding

authority.  *Kahrs*, 713 F.3d at 645 (citations omitted).

**III.   THE COMFY® IS PROPERLY CLASSIFIED UNDER SUBHEADING 6110.30.30, HTSUS, BECAUSE IT IS DESCRIBED BY THE TARIFF TERM "PULLOVER" IN HEADING 6110**

The first question presented is whether, pursuant to GRI 1, The Comfy® is described by

the term "pullover" of heading 6110, HTSUS.  The definitions, case law, and undisputed

material facts demonstrate that it is.

Heading 6110, HTSUS, provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests)

and similar articles, knitted or crocheted."  The first four terms in the heading, "sweaters,"

"pullovers," "sweatshirts," and "waistcoats (vests)" are *eo nomine* terms—terms that describe a

commodity by a specific name, and they are interpreted through an *eo nomine* analysis.  *See R.T.*

*Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014); *Deckers Corp. v. United*

*States*, 752 F.3d 949, 957 (Fed. Cir. 2014).

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has explained that "*eo*

*nomine* designations include all forms of an article, including future improvements to that

article."  *Deckers*, 752 F.3d at 957; *see also GRK Canada, Ltd. v. United States*, 761 F.3d 1354,

1358 (Fed. Cir. 2014) ("An *eo nomine* designation with no terms of limitation, will ordinarily

include all forms of the named article.").  "*Eo nomine* terms are thus forward-looking, such that

they include technological advancements, as long as the improved article performs the same

essential function of the named exemplar."  *Deckers*, 752 F.3d at 957.  However, "when an

article 'is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant,' it is not properly classified within an *eo nomine* provision." *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1365 (Fed. Cir. 2011) (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1097 (Fed. Cir. 1996)).  "To determine whether such a difference is significant enough to remove an article from an *eo nomine* provision, [the Federal Circuit] has looked to whether the item possess[es] features *substantially in excess* of those within the common meaning of the term,' or whether the subject article is 'a change in identity of the article described by the statute.'" *R.T. Foods*, 757 F.3d at 1354 (quoting *CamelBak Prods.*, 73 F.3d at 1365) (emphasis added).

We next discuss the term "pullover" from heading 6110.

### a. A "Pullover" Is A Knitted Or Crocheted Article Of Clothing That Is Worn By Pulling It Over One's Head And Covers The Upper Body

As stated above, heading 6110, HTSUS applies to, *inter alia*, "pullovers" that are knitted or crocheted.  The term "pullover" is not defined in the HTSUS.  The ENs to heading 61.10, however, state, in relevant part, "This heading covers a category of knitted or crocheted articles, without distinction between male or female wear, designed to cover the upper parts of the body (jerseys, pullovers, cardigans, waistcoats and similar articles)."

Merriam-Webster defines "pullover" as "a pullover garment (such as a sweater)." *Pullover*, *available at* https://www.merriam-webster.com/dictionary/pullover (last viewed Oct. 16, 2023).  Encyclopedia Britannica defines "pullover" as "a piece of clothing (such as a sweater) that is put on by pulling it over your head." *Pullover*, *available at* https://www.britannica.com/dictionary/pullover (last viewed Oct. 16, 2023).  Dictionary.com defines "pullover" as "Also called slipover, a garment, especially a sweater, that must be drawn over the head to be put on." *Pullover*, *available at* https://www.dictionary.com/browse/pullover

(last viewed Oct. 16, 2023.  The American Heritage Dictionary defines "pullover" as "[a]

garment, such as a sweater, designed to be put on or taken off over the head."  *Pullover*,

*available at* https://www.ahdictionary.com/word/search.html?q =pullover (last viewed Oct. 16,

2023).[2]

        In addition, the Court of International Trade has previously considered the definition of

"pullover."  In *Rubies Costume Co. v. United States*, 279 F.Supp.3d 1145, 1167 (Ct. Int'l Trade

2017), the Court offered the following definition: "'[a]ny light knit shirt without neck placket or

fastening,' alternatively, '[s]weater with round, crew, or V-neck pulled on over the head as

contrasted with a cardigan or coat sweater, which opens down the front, Charlotte Mankey

Calasibetta & Phyllis Tortora, *The Fairchild Dictionary of Fashion* ('*Dictionary of Fashion*')

408, 441 (Fairchild Publications, Inc.) (2003)[.]"

        CBP's 2008 Informed Compliance Publication (ICP), entitled "What Every Member of

the Trade Community Should Know: Classification: Apparel Terminology under the HTSUS,"

provides the following definition of "pullovers":

> **Pullovers** (6110, 6111) - are upper body knit garments without a
> full length opening, which are pulled over the head and are not
> more specifically provided for elsewhere in chapter 61.

*What Every Member of the Trade Community Should Know About: Classification: Apparel*

*Terminology under the HTSUS*, an Informed Compliance Publication, U.S. Customs and Border

---

[2]  Because some of the definitions above include the terms "garment" and "clothing", it is also
necessary to provide definitions for these terms.  The term "garment" "is not defined in the
relevant section or chapter notes or in the legislative history."  *Allstar Mktg. Grp., LLC v. United
States*, 211 F.Supp.3d 1319, 1329 (Ct. Int'l Trade 2017).  However, the *Allstar* Court considered
its common commercial meaning.  *Id.*  The *Allstar* Court explained that the terms "garment,"
"apparel," "article of clothing," "clothes," "article of dress," and "wearing apparel" are all
interchangeable with each other.  *See id.*  The Court found further support in this reasoning in
The American Heritage Dictionary's definitions of "garment" as "An article of clothing," and
"clothes" as "Articles of dress; wearing apparel; garments."  *Id.*

Protection, June 2008 (ICP), at 18, *available at*

https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/ICP-Apparel-Terminology-2008-Final.pdf (last viewed Oct. 25, 2023).

Taken together, the above authorities show that the common meaning of "pullover" is (1) a knitted or crocheted (2) article of clothing (3) worn by pulling it over one's head (4) that covers the upper parts of the body.

**b.  The Comfy® Meets All The Elements Of The Definition Of A Pullover**

The Comfy® meets all the elements of the definitions of "pullover" described above because it is a knitted article of clothing worn by pulling it over one's head and it covers the upper parts of the body.

The Comfy® satisfies the first element of the definition of a pullover over because it is knitted.  SOF, ¶ 7.

The Comfy® satisfies the second element of the definition because the evidence shows that is an article of clothing or a garment.  Significantly, Cozy Comfort has indicated that the design of The Comfy® was inspired by a garment, a men's XL hooded sweatshirt.  Def. SOF, ¶ 16.  Cozy Comfort explicitly stated:

> The idea for The Comfy was hatched in Brian Speciale's Phoenix, Arizona living room when his little bro Michael was staying with him as he went through a painful divorce.  Michael woke up one morning and saw Brian's seven-year-old son, Saxon, curled up on the couch in one of his brother's old hoodies. Since it was a men's XL, it obviously swallowed Saxon up. Michael looked at Brian and said, "Hey Bro, you think they make those for adults?"

*Id.*  Moreover, The Comfy® possesses at least nine physical features that can be found in garments, such as pullovers.  Def. SOF, ¶ 17.  These features include a front panel, a back panel, long sleeves, ribbed cuffs, an opening for the head, an opening for the waist, fleece

or microfleece, a hood, and a marsupial pocket for the hands on the front. *Id.* All these features common to garments are clear evidence that The Comfy®, too, is a garment.

Although the tariff term "pullover" is an *eo nomine* provision, we recognize that "use may be considered when determining the commercial meaning of a term in an *eo nomine* provision when the merchandise named in that provision 'inherently suggests a type of use,' or when determining whether a particular article 'fits within the classification's scope." *Rubies Costume Co. v. United States*, 279 F.Supp.3d 1145, 1169 n.37 (Ct. Int'l Trade 2017) (quoting *GRK*, 761 F.3d at 1358–59). "As to the latter inquiry, the court may consider 'the subject article's physical characteristics, as well as what features the article has for typical users, how it was designed and for what objectives, and how it was marketed." *Id.* (quoting *GRK*, 761 F.3d at 1358). However, we do not believe that use is determinative of classification under heading 6110, HTSUS because the term "pullover" constitutes "[a]n *eo nomine* designation with no terms of limitation" such that it "include[s] all forms of the named article." *GRK*, 761 F.3d at 1358. In addition, *eo nomine* terms, such as "pullover," are "forward-looking, such that they include technological advancements, as long as the improved article performs the same essential function of the named exemplar," and here, The Comfy® performs the same essential function as a pullover of heading 6110. *Deckers*, 752 F.3d at 957.

Nevertheless, should the Court consider use, the undisputed facts show that the use of The Comfy® is that of a garment. To begin, The Comfy® is worn in the same manner as an article of clothing, particularly a pullover—by being pulled over the head. Def. SOF, ¶¶ 11, 12. To wear The Comfy®, users pull it over their heads, extend their arms through the sleeves, and have the option of placing the hood over their heads. Def. SOF, ¶ 12. Indeed, the Comfy® is

intended to be worn over clothes, like many types of garments, and like many garments, The Comfy® is intended to provide warmth to its users. Def. SOF, ¶¶ 18-19. The Comfy® is also intended to allow users who wear it to perform activities that are not feasible with a traditional blanket, but that are feasible with similar garments such as pullovers. Def. SOF, ¶ 22. And like many garments, The Comfy® is intended for use both inside and outside the home, and is intended and marketed for use both while relaxing and while doing a variety of activities amenable to wearing similar garments such as pullovers or sweatshirts. Def. SOF, ¶¶ 22-24.

Further evidence that The Comfy® is a garment can be found in the fact that Cozy Comfort has at times marketed The Comfy® as a sweatshirt or a garment. Def. SOF, ¶ 27. Cozy Comfort has also described The Comfy® as a garment and a sweatshirt in filings before the U.S. Government. Def. SOF, ¶ 34. For example, Cozy Comfort first described The Comfy® as "The Blanket . . . That's A Sweatshirt" in one of its federally registered trademarks in 2017. *Id.* The trademark is described in the registration as consisting of "an image of a panda bear wearing a hooded sweatshirt to the left of the words 'THE COMFY' all of which is above the words 'THE BLANKET … THAT'S A SWEATSHIRT!'" *Id.* Cozy Comfort has used the trademark on its website, its product labeling for The Comfy®, in a promotional video, and during its co-founders' appearance on the television show Shark Tank. Def. SOF, ¶ 35.

Cozy Comfort describes The Comfy® as a garment or overgarment in two of its patents issued by the United States Patent and Trademark Office. Def. SOF, ¶¶ 37-38. Cozy Comfort's Patent No. 10,420,431 is entitled "Overgarment with an elevated marsupial pocket," and the covered product is consistently referred to as a "garment" or an "overgarment" throughout the patent. Def. SOF, ¶¶ 39-40. For example, the Abstract and the first paragraph under the heading titled "Summary of the Invention" provides as follows:

> An overgarment includes a single body constructed from two soft, woven fabric plies and a torso in the body. Opposed sleeves are attached to the torso at sleeve openings, and the sleeves each have a top, an opposed bottom, and a length. A marsupial pocket on a front of the torso has a top and opposed bottom, the top of the marsupial pocket is above the bottom of each sleeve, and the bottom of the marsupial pocket is below the bottom of each sleeve.

Def. SOF, ¶ 40.  Further, all claims of U.S. Patent No. 10,420,431 are directed to an overgarment.  Def. SOF, ¶ 41.  For example, Claim 1 provides as follows:  The invention claimed is:  1. An overgarment comprising:

> a single body constructed from two soft, woven fabric plies;
>
> a torso in the body, the torso having a neck opening;
>
> opposed sleeves attached to the torso at sleeve openings, the sleeves each having a top, an opposed bottom, and a length;
>
> a marsupial pocket having a top and opposed bottom, wherein the top of the marsupial pocket is above the bottom of each sleeve at the respective sleeve opening, and the bottom of the marsupial pocket is below the bottom of each sleeve at the respective sleeve opening;
>
> wherein the marsupial pocket has a height between its top and bottom which is 1.2 times the distance between the neck opening and the top of the marsupial pocket.

*Id.*

Since 2017—with the filing of U.S. Patent No. D859,788 on September 13, 2017, which is entitled "Enlarged over-garment with an elevated marsupial pocket"—Cozy Comfort has referred to The Comfy® as a garment.  Def. SOF, ¶ 42.  The covered product in this patent is consistently referred to as an "enlarged over-garment" throughout the patent, and it is not referred to as a blanket anywhere in the patent.  Def. SOF, ¶ 43.  The sole claim of this patent is directed to the ornamental design for an enlarged over-garment with an elevated marsupial pocket, as shown and described in the patent.  Def. SOF, ¶ 44.

23

Further, The Comfy® has often been referred to as a garment or apparel in commercial invoices, packaging lists, purchase orders, testing protocols, and by some of its manufacturers and vendors.  Def. SOF, ¶¶ 2, 52-54.  The commercial invoices for the subject entries for The Comfy® describe it as a "Knit PullOver (Comfy Blue)."  Def. SOF, ¶ 2.  Cozy Comfort's own confidential internal business documentation shows that

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████.  Def. SOF, ¶ 48.  As such, this shows that █████████████████

█████████████████.  The Comfy® has been manufactured by at least four garment or clothing companies.  Def. SOF, ¶ 49.  Finally, Cozy Comfort's confidential internal business documentation shows that The Comfy® █████████████████████

████████████████.  Def. SOF, ¶ 50.  As such, all the foregoing facts show that The Comfy® is a garment.

As to the third element of the definition of pullover (*i.e.*, worn by pulling it over one's head), and as has been shown above, to wear The Comfy®, users pull it over their heads, extend their arms through the sleeves, and have the option of placing the hood over their heads.  Def. SOF, ¶ 12.

As to the fourth and final element of the definition of pullover (*i.e.*, that it covers the upper parts of the body), the undisputed material facts show that The Comfy® covers upper parts of the body, such as the head, torso, chest, shoulders, arms, back, hips, and waist.  Def. SOF, ¶¶ 6, 8, 12-13, 15, 41.

24

As we have shown above, The Comfy® meets all four elements of the common definition of a pullover. As such, The Comfy® is described by the tariff term "pullover" of heading 6110.

### c.  The Arguments In Plaintiff's Complaint Are Not Supported By The Law

Plaintiff alleges in its Complaint that CBP's 2008 Informed Compliance Publication "instructs importers that Heading 6110 of the HTSUS excludes garments that have a sherpa lining and that such garments with a sherpa lining are to be classified in a different HTSUS heading." Cmpl. ¶ 13 (ECF No. 6). Plaintiff also claims that the ICP indicates that "a 'pullover' only covers the 'upper' part of a person's body" and that The Comfy® "extends to, or below, the average consumer's knees." *Id.* ¶¶ 17, 18. Plaintiff argues that The Comfy® is not classifiable as a "pullover" because of its sherpa lining, its length, and its alleged design, use, and function as a wearable blanket. *See id.* ¶¶ 26, 29, 34.

To begin, the ICP is not binding on this Court. *Rubies*, 922 F.3d at 1344. Moreover, plaintiff's interpretation of the ICP is not supported by the law. Indeed, nothing in the terms of heading 6110 or in the dictionary definitions providing the plain meaning of the terms excludes garments with a sherpa lining or garments that cover the upper parts of a person's body and which extend to, or below, the wearer's knees from classification in heading 6110. *See supra*, Section III.b. As noted above, the common meaning of "pullover" is (1) a knitted or crocheted (2) article of clothing (3) worn by pulling it over one's head (4) that covers the upper parts of the body. As such, nothing in the definition excludes garments with a sherpa lining or garments that cover the upper parts of a person's body and which extend to, or below, the wearer's knees but which meet the four elements of the definition of "pullover" from being considered a pullover of heading 6110.

In addition, plaintiff's descriptions of the ICP are not accurate. *See* Cmpl. ¶¶ 13, 17. As explained above, the ICP defines pullovers as "upper body knit garments without a full length opening, which are pulled over the head and are not more specifically provided for elsewhere in chapter 61." ICP, at 18. Nothing in this definition references sherpa lining. Moreover, contrary to plaintiff's interpretation, the definition of "pullover" in the ICP does not state that pullovers *only* cover the upper body. *Id.* Instead, the phrase "upper body knit garments" from the definition of "pullover" in the ICP simply means that pullovers cover the upper body, but that does not disqualify them from also covering portions of the middle or lower body as well. This interpretation comports with the common meaning of "pullover." Accordingly, the ICP's definition of "pullover" does not conflict with the common meaning of the term "pullover" of heading 6110, HTSUS.

Plaintiff also claims that the design, use, and function of The Comfy® are not of a pullover. *See* Cmpl. ¶¶ 26, 29, 34. However, as we have shown, The Comfy®'s features match the plain meaning of the *eo nomine* term "pullover" of heading 6110, HTSUS; therefore, use is not determinative of classification as a "pullover." Nevertheless, as we have demonstrated *supra* in Section III.b, should the Court consider other factors such as use, the undisputed facts show that the use, design, and function of The Comfy® are of a garment, and specifically of a pullover.

### d. The Comfy® Is Properly Classified In Subheading 6110.30.30

Having established that heading 6110 describes The Comfy®, pursuant to GRI 6, we begin anew the application of the GRIs in sequential order to determine the correct subheading, at each subheading level.

The Comfy® is knitted and made of man-made fibers.  SOF, ¶ 7.  Therefore, pursuant to GRI 1, it is properly described by subheading 6110.30, HTSUS ("Of man-made fibers.").  And because The Comfy® is 100 polyester and is made using two separate knitted fabrics (a microfiber fabric for the exterior and a sherpa fabric for the interior), the only subheading at the eight-digit level that describes The Comfy® is subheading 6110.30.30 ("Other").  *Id.*  Therefore, The Comfy® is properly classified in subheading 6110.30.30, HTSUS.

## IV.   IN THE ALTERNATIVE, SHOULD THE COMFY® NOT BE CONSIDERED A PULLOVER, IT IS STILL PROPERLY CLASSIFIED UNDER HEADING 6110, HTSUS, BECAUSE IT QUALIFIES AS A "SIMILAR ARTICLE" TO SWEATERS, PULLOVERS, SWEATSHIRTS, AND WAISTCOATS (VESTS)

The *eo nomine* terms in heading 6110 (*i.e.*, "[s]weaters, pullovers, sweatshirts, waistcoats (vests)), are followed by the general phrase "and similar articles," which invites an *ejusdem generis* analysis.  "In an *ejusdem generis* analysis 'where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified.'"  *Deckers*, 752 at 952 n.3 (quoting *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994)).  "*Ejusdem generis* analysis 'requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms.'"  *Id.* at 956 (quoting *Sports Graphics*, 24 F.3d at 1392).  "Identifying the essential (or unifying) characteristics is 'a question of law' and 'a matter of common sense.'"  *Rubies*, 279 F.Supp.3d at 1168 (quoting *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1107 (Fed. Cir. 2014)).  The first step in the analysis is to "consider the common characteristics or unifying purpose of the listed exemplars in a heading."  *Victoria's Secret*, 769 F.3d at 1107 (quoting *Aves. In Leather, Inc. v. United States*, 178 F.3d 1241 (Fed. Cir. 1999)).  "[T]he unifying characteristics may consist of both affirmative features and limitations."  *Id.*  The second step "is to consider the merchandise

at issue with the identified unifying characteristics (or purpose) in mind." *Id.*  Classification of imported merchandise under *ejusdem generis* is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars.  *Aves. In Leather, Inc. v. United States*, 178 F.3d 1241, 1244 (Fed. Cir. 1999).

### a. The Meaning Of "Similar Articles" To "Sweaters, Pullovers, Sweatshirts, Waistcoats (Vests)"

The Federal Circuit interpreted the phrase "similar articles" in heading 6110, HTSUS, using the rule of *ejusdem generis*, to encompasses articles that share the essential characteristics of (1) covering the upper body, (2) providing warmth to the wearer, (3) being suitable for wear over either undergarments or other clothing; and (4) not protecting against wind, rain, or extreme cold.  *Rubies*, 922 F.3d at 1345-1346.  During the trial court proceedings of the *Rubies* case, the Court of International Trade also conducted an *ejusdem generis* analysis using dictionary definitions of the listed exemplars in heading 6110, HTSUS—*i.e.*, "sweaters," "pullovers," "sweatshirts," and "waistcoats (vests)"—and on the ENs to heading 6110.  *Rubies*, 279 F.Supp.3d at 1167-1169.  Notably, the Court of International Trade recognized that, although the ENs provide examples of articles that share the essential characteristics of the articles named in the heading, the "[EN's] exemplars do not represent the limits of what may be deemed 'similar' to the heading's exemplars." *Rubies*, 279 F.Supp.3d at 1169.  Based on its analysis, the Court of International Trade determined that a jacket worn as part of a Santa costume was properly classified under heading 6110, HTSUS, despite not falling under any of the heading's named exemplars, and the Federal Circuit affirmed.  *Id.*; *Rubies*, 922 F.3d at 1345-1346.

**b.   The Facts Show That The Comfy® Qualifies As A "Similar Article" To "Sweaters, Pullovers, Sweatshirts, Waistcoats (Vests)" Of Heading 6110**

In the alternative, should the Court find that The Comfy® is not a "pullover," it is still properly classified under heading 6110, HTSUS, because it qualifies as a "similar article" to sweaters, pullovers, sweatshirts, and waistcoats (vests).  The exemplars identified in heading 6110 are indicative of the types of items that are classified under the heading, and The Comfy® shares many characteristics that are similar to these exemplars.

The Comfy® possesses at least nine features that can be found in pullovers and similar articles: a front panel, back panel, long sleeves, ribbed cuffs, an opening for the head, an opening for the waist, fleece or microfleece, a hood, and a marsupial pocket for the hands on the front.  Def. SOF, ¶ 17.  Like sweaters, pullovers, sweatshirts, and waistcoats, The Comfy® covers the upper parts of the body (torso and arms).  Def. SOF, ¶ 13.  Further, The Comfy® is worn in the same manner as sweaters, sweatshirts, and pullovers—by being pulled over the head.  Def. SOF, ¶¶ 11-12.  Like sweaters, pullovers, sweatshirts, and waistcoats, The Comfy® is intended to be worn over clothes and is intended to provide warmth to its users.  Def. SOF, ¶¶ 18-19.  And like sweaters, pullovers, and sweatshirts, The Comfy® is not worn for protection against the elements, such as rain, wind, or extreme cold.  Def. SOF, ¶¶ 20-21.  As such, The Comfy® meets all elements of the *Rubies* test for "similar articles" of heading 6110.  922 F.3d at 1345-1346.

Plaintiff alleges in its Complaint that the ICP "instructs importers that Heading 6110 of the HTSUS excludes garments that have a sherpa lining and that such garments with a sherpa lining are to be classified in a different HTSUS heading."  Cmpl. ¶ 13 (ECF No. 6).  However, this argument is without merit.  As we have noted before, the ICP is not binding.  *Rubies*, 922 F.3d at 1344.  Moreover, plaintiff's interpretation of the ICP's guidance as to heading 6110 is not supported by the law, because the *Rubies* test for "similar articles" of heading 6110 does not

include fabric or materials, such as sherpa, as an element of the definition.  922 F.3d at 1345-

1346.  Given the definition above, The Comfy®'s sherpa lining and microfleece do not change

its character as a "similar article" of heading 6110, because these characteristics are not elements

of the definition.

Moreover, like some exemplars of heading 6110 (*i.e.*, waistcoats or vests), The Comfy®

typically extends below the waist.  Def. SOF, ¶ 1; *Rubies*, 279 F.Supp.3d at 1167 ("vest: '[a]n

item of wearing apparel extending to the waist or longer . . . , usually worn over a blouse or shirt

and sometimes under a suit jacket'") (internal citations omitted).  The fact that, on some users,

The Comfy® may extend below the users' waist does not change its similarity to articles of

heading 6110, particularly considering that The Comfy® was inspired by an XL hooded

sweatshirt—an article of heading 6110—and that in that example, the XL hooded sweatshirt

actually covered part of the user's legs.  Def. SOF, ¶ 16; *R.T. Foods*, 757 F.3d at 1354.  The fact

that the inspirational XL hooded sweatshirt swallowed up its user did not then transform the XL

hooded sweatshirt into something other than an XL hooded sweatshirt, and for the same reason,

the length of The Comfy® on some users does not remove it from consideration as a similar

article of heading 6110.  The Comfy®'s length on a user is thus immaterial because the Federal

Circuit's definition of "similar articles" of heading 6110 does not contain a length limitation as

one of the definition's elements.  *See also* 6110, HTSUS; EN 61.10.  In addition, The Comfy® is

a one-size-fits-all, and as such may extend below some users' waists, at times reaching some

users' knees or below; nevertheless, its features remain those of an upper body garment, it is in

practice worn as an upper body garment, and indeed it always covers the upper parts of the body.

Def. SOF, ¶¶ 6, 13-15.  Further, The Comfy®'s length beyond the waist is not essential to its

function as an article "similar" to sweaters, pullovers, sweatshirts, and waistcoats, as would be

the case with full body or lower body garments, which common sense dictates must extend to certain lengths below the waist to meet fashion standards, preserve decorum, or protect the user's decency.  *See* Def. SOF ¶¶ 15, 19-24; *Allstar*, 211 F.Supp.3d at 1330-1331; *see also Rubies*, 279 F.Supp.3d at 1168 ("Identifying the essential (or unifying) characteristics is 'a question of law' and 'a matter of common sense.'") (quoting *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1107 (Fed. Cir. 2014)).  In other words, tall children and adults wearing The Comfy® are still wearing it correctly regardless of how far down it goes on their bodies, because on all users, The Comfy® performs its essential characteristic of covering the upper parts of the body (torso and arms).  *See* Def. SOF, ¶ 13.

Given all the above, The Comfy® is properly classified in heading 6110, HTSUS, under an *ejusdem generis* analysis because it possesses the essential characteristics of the heading's named exemplars as previously determined by the Federal Circuit.  Plaintiff cannot genuinely dispute that The Comfy® (1) covers the upper body; (2) provides warmth to the wearer; (3) is suitable for wear over either undergarments or other clothing; and (4) does not protect against wind, rain, or extreme cold.  Def. SOF, ¶¶ 6, 8, 12-13, 15, 18-21, 41; *Rubies*, 922 F.3d at 1345; *Rubies*, 279 F.Supp.3d at 168.

Finally, having established that The Comfy® is properly classified in heading 6110, HTSUS, under an *ejusdem generis* analysis, The Comfy® is properly further classified in subheading 6110.30.30, as explained *supra* in Section III.d.

## V.   THE COMFY® IS NOT PROPERLY CLASSIFIED UNDER ANY OF THE THREE HEADINGS PROFFERED BY PLAINTIFF IN ITS COMPLAINT

In its complaint, plaintiff proffers three HTSUS headings for classification of The Comfy®: 6301 ("Blankets and traveling rugs"), 6307 ("Other made up articles, including dress

patterns"), and 6114 ("Other garments, knitted or crocheted").  Cmpl. ¶¶ 27, 32, 36.  As we

explain below, none of these headings describe The Comfy® pursuant to a GRI 1 analysis.

### a.  The Comfy® Is Not Properly Classified Under HTSUS Heading 6301 For "Blankets And Traveling Rugs"

In the first Count of its complaint, plaintiff claims that the subject merchandise is

classifiable under subheading 6301.40.00, HTSUS.  Cmpl. ¶ 27.  Heading 6301, HTSUS,

provides for: "Blankets and traveling rugs."  The heading does not define the term "blanket."

Although not dispositive or legally binding, the ENs to heading 6301 explain, in relevant part:

> Blankets and travelling rugs are usually made of wool, animal hair,
> cotton or man-made fibres, frequently with a raised pile surface,
> and generally of thick heavy-texture material for protection against
> the cold. The heading also covers rugs and blankets for cots or
> prams.

> Travelling rugs usually have fringes (generally formed by
> projecting warp or weft threads), but the edges of blankets are
> normally preserved by blanket stitching or binding.

> The heading includes fabrics in the piece which, by the simple
> process of cutting along defined lines indicated by the absence of
> weft threads, may be converted into separate articles having the
> character of finished blankets or travelling rugs.

> Electrically heated blankets are also included in the heading.

EN 63.01 (2017).

The Court of International Trade has previously considered the common commercial

meaning of the term "blanket."  In *Allstar*, 211 F.Supp.3d at 1336, the Court found "first, that a

blanket is a large (possibly oblong) piece of fabric, and second, that a blanket is used as a

covering for warmth, often, but not always, as common knowledge dictates, on a bed."

Merriam-Webster defines blanket as "a large usually oblong piece of fabric used as a bed

covering."  *Blanket, available at* https://www.merriam-webster.com/dictionary/blanket (last

viewed on Oct. 18, 2023).  The American Heritage Dictionary defines blanket as "a large piece of woven material used as a covering for warmth, especially on a bed."  *Blanket, available at* https://www.ahdictionary.com/word/search.html?q=blanket (last viewed on Oct. 18, 2023).

The undisputed material facts show that The Comfy®'s physical features do not comport with the common meaning of a blanket.  *R.T. Foods*, 757 F.3d at 1354.  Unlike most blankets, The Comfy® is not oblong.  Def. SOF ¶ 6.  Unlike a blanket, The Comfy® features an opening for the head, a hood, long-sleeves with ribbed cuffs, a frontal marsupial pouch pocket open at both ends, and an opening for the waist.  Def. SOF, ¶ 8.  Unlike a blanket which is typically put on a bed or simply laid over a person's body, The Comfy® is worn by a person by pulling it over one's head.  Def. SOF, ¶ 11-12.  Unlike a blanket, The Comfy®'s back panel is longer than the front panel.  Def. SOF, ¶ 10.  Unlike a blanket, The Comfy® is worn on the body of the user like an article of clothing.  Def. SOF, ¶ 11.  Unlike a blanket, to wear The Comfy®, users pull it over their heads, extend their arms through the sleeves, and have the option of placing the hood over their heads.  Def. SOF, ¶ 12.  A comparison of the physical features of a blanket and of The Comfy® therefore leads to the conclusion that The Comfy® does not match the definition of a blanket.

Although it is unnecessary to consider use because a review of The Comfy®'s physical features is sufficient to show that it is not a blanket, in the alternative, should the Court decide to consider use, The Comfy®'s use does not comport with the use of a blanket.  Indeed, The Comfy® is intended to allow users who wear it to perform activities that are not feasible with a traditional blanket.  Def. SOF, ¶¶ 22, 24.  Further, Cozy Comfort has marketed and patented The Comfy® as a garment, and not a blanket.  Def. SOF, ¶¶ 33, 34, 37.

All the foregoing facts further establish that The Comfy® is not a blanket, and therefore not properly classified in heading 6301, HTSUS.

**b.   The Comfy® Is Readily Distinguishable From The Merchandise In *Allstar***

In addition, The Comfy® is readily distinguishable from the merchandise considered by the *Allstar* Court.  211 F.Supp.3d at 1319.  At issue in that case was The Snuggie®, which consisted of a 71-by-54-inch rectangular piece of polyester fleece knit fabric, with 28.5-inch sleeves attached to the front.  *Id.* at 1333.  A photograph of The Snuggie® being worn appears on its packaging in the photograph below:

34



*Allstar Marketing Group LLC v. United States*, Court No. 13-00395, Def. Resp. and Cross-Mot. to Mot. for Summ. Judg. (ECF No. 42-1, Ex. A, at 2).

Based on the unique characteristics of The Snuggie®, the *Allstar* Court concluded that its design, features, use, sales information, and marketing were of a blanket, albeit an improved one with sleeves. 211 F.Supp.3d at 1334-1335. The Court first found that The Snuggie®'s physical features, such as its dimensions and lack of rear closure, did not resemble an article of apparel.

*Id.* at 1334.  Second, the Court found that The Snuggie®'s design was inspired by blankets.  *Id.* Third, the Court found that The Snuggie®'s use was similar to that of a blanket because it was loosely worn as an outer layer to cover the front of the user.  *Id.*  Finally, the Court found that The Snuggie®'s sales and marketing referred to The Snuggie® as a blanket, and not as apparel. *Id.*  For all these reasons, the Court essentially found that The Snuggie® was an improved blanket, also because the loose sleeves were "incidental" to The Snuggie®'s use as a blanket and the sleeves were "not so substantial as to transform The Snuggie® into something other than a blanket."  *Id.* at 1337.

The Snuggie®'s physical features differ significantly from The Comfy®'s, however. The dimensions of The Snuggie® are very different from The Comfy®, which is not rectangular. Def. SOF, ¶¶ 6, 10; *Allstar*, 211 F.Supp.3d at 1333.  The Snuggie®'s dimensions are larger than The Comfy®'s: The Snuggie®'s 71-inch longest dimension is larger than The Comfy®'s (41 inches), and The Snuggie®'s shortest dimension (54 inches) is also longer than The Comfy®'s shortest dimension (33 inches).  The shape and dimensions of The Comfy® considered together are also significantly different to The Snuggie®'s simple, longer, rectangular design: the front panel of The Comfy® measures approximately 36 inches wide and 33 inches long from the bottom of the neck hole to the bottom of the panel, and the back panel is longer than the front panel, given that the back panel measures approximately 36 inches wide and 41 inches long from the bottom of the neck hole to the bottom of the panel.  Def. SOF, ¶ 10.  Further, unlike The Comfy®, The Snuggie® was completely open with no closure in the back; therefore, it could only be used on the front side of the person.  Def. SOF, ¶¶ 8, 10, 17; *Allstar,* 211 F.Supp.3d at 1333.  Unlike The Comfy®, The Snuggie® lacked a neck hole, waist opening, ribbed cuffs, a hood, and a marsupial pocket in the front.  Def. SOF, ¶ 10; *Allstar*, 211 F.Supp.3d at 1333.

Unlike The Comfy®, The Snuggie® had loose-fitting sleeves, which differ from The Comfy®'s more fitted sleeves. *See* Physical Sample; Def. SOF, ¶¶ 6, 8, 10; *Allstar*, 211 F.Supp.3d at 1333.

Aside from the substantial differences in their physical features, The Snuggie® is also distinguishable from The Comfy® in terms of their design, use, and marketing. The Snuggie®'s design was inspired by the Slanket® and the Freedom Blanket, two products that are marketed as blankets, whereas The Comfy®'s design was inspired by a garment, specifically an XL hooded sweatshirt. Def. SOF, ¶ 16; *Allstar*, 211 F.Supp.3d at 1334. Whereas The Snuggie® was used and was designed to be used primarily inside the home, The Comfy® is used and was designed to be used both inside and outside the home, including while performing a number of different outdoor activities such as walking the dog, ice skating, tailgating, and outside chores that cannot be performed with a blanket. Def. SOF, ¶¶ 22, 24; *Allstar*, 211 F.Supp.3d at 1333-35. While The Snuggie® was designed to be draped over the front of users bodies' with their arms through the loose sleeves and used primarily while reclining or seated on an airplane, couch, bed, and floor, and engaging in largely sedentary activities such as reading, writing, knitting, holding a remote control, using a laptop, holding a baby, and playing backgammon, it could also be worn while standing and pouring coffee in the kitchen. *Allstar*, 211 F.Supp.3d at 1325-26. In stark contrast, The Comfy® is worn by pulling it over one's head and placing the arms through the long sleeves with ribbed cuffs and pulling it down to cover the torso, and The Comfy® is used for all kinds of activities, not just sedentary ones, such as ice skating, holiday activities at the park, tailgating, outside chores (like raking leaves), outside play (like jumping in freshly raked leaf piles), pumpkin picking, hayrides, corn mazes, dancing, walking the dog, getting the mail, and raiding the fridge for snacks. Def. SOF, ¶¶ 12, 24.

Moreover, whereas The Snuggie® was referred to as a blanket, not apparel, in discussions with the foreign vendor and in purchase orders, specifications, and commercial and retail invoices, The Comfy® has often been referred to as a garment or apparel in commercial invoices, purchase orders, testing protocols, and by some of its vendors. Def. SOF, ¶¶ 2, 48-49; *Allstar*, 211 F.Supp.3d at 1334. In fact, ████████████████████████████████████ ████████████████████████████████████ Def. SOF, ¶ 48. Moreover, at least four of the manufacturers of The Comfy® call themselves garment or clothing companies. Def. SOF, ¶ 49. In addition, Cozy Comfort's confidential internal business documentation shows that The Comfy® ██████████████████████████████. Def. SOF, ¶ 50.

Finally, Cozy Comfort regularly described The Comfy® as a sweatshirt or garment in its trademarks and patents. Def. SOF, ¶¶ 34-43; 211 F.Supp.3d at 1334. Cozy Comfort called The Comfy® "The Blanket . . . That's A Sweatshirt" in one of its federally registered trademarks. Def. SOF, ¶ 34. Cozy Comfort obtained a federal trademark registration, Reg. No. 5,678,126, for the following trademark:



*Id.* Cozy Comfort described the trademark to the United States Patent Office as including "an image of a panda bear wearing a hooded sweatshirt." *Id.* Cozy Comfort used the trademark on

its website, its product labeling for The Comfy®, in a promotional video, and during its co-founders' appearance on the television show Shark Tank.  Def. SOF, ¶ 35.  Cozy Comfort describes The Comfy® as a garment or overgarment in two of its patents, which were issued by the United States Patent and Trademark Office.  Def. SOF, ¶ 37.  Cozy Comfort filed U.S. Patent No. 10,420,431 on September 13, 2018, which is entitled "Overgarment with an elevated marsupial pocket."  Def. SOF, ¶ 39.  Although in U.S. Patent No. 10,420,431, the applicant described the field of the invention as relating to blankets or large, wearable blankets, the covered product is consistently referred to as a "garment" or an "overgarment" throughout the patent.  Def. SOF, ¶ 40.  All claims of U.S. Patent No. 10,420,431 are directed to an overgarment.  Def. SOF, ¶ 41.  Cozy Comfort filed U.S. Patent No. D859,788 on September 13, 2017, and is entitled "Enlarged over-garment with an elevated marsupial pocket."  Def. SOF, ¶ 42.  The covered product in U.S. Patent No. D859,788 is consistently referred to as an "enlarged over-garment" throughout the patent, and it is not referred to as a blanket anywhere in the patent.  Def. SOF, ¶ 43.

For all the reasons noted above, The Comfy® has numerous characteristics that distinguish it from the features of a blanket.  Therefore, The Comfy® is not properly classified under heading 6301.

### c.  The Comfy® Is Not Properly Classified Under HTSUS Heading 6307 For "Other Made Up Articles, Including Dress Patterns"

In the second Count of its complaint, plaintiff claims that the subject merchandise is classifiable under subheading 6307.90.98, HTSUS.  Cmpl. ¶ 32.  Heading 6307, HTSUS, provides for: "Other made up articles, including dress patterns."  As the term "Other" suggests, heading 6307 is not a specific provision, and is instead a basket provision.  *See R.T. Foods*, 757 F.3d at 1354; *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002).

"[C]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *R.T. Foods*, 757 F.3d at 1354.

The tariff term "made up" is defined in Note 7 to Section XI, which covers Chapter 63, HTSUS.  Note 7 to Section XI provides, in relevant part: "For the purposes of this section, the expression "made up" means: ". . . (b) Produced in the finished state, ready for use (or merely needing separation by cutting dividing threads) without sewing or other working (for example, certain dusters, towels, tablecloths, scarf squares, blankets)."  The ENs to heading 6307 also explain, in relevant part: "This heading covers made up articles of any textile material which are not included more specifically in other headings of Section XI or elsewhere in the Nomenclature."  EN 63.07 (2017).

As noted above, heading 6307, HTSUS, is a basket provision covering "other made up articles" not described in any other heading of the HTSUS.  The Comfy®, however, is described by the terms "pullover" and "similar articles" of heading 6110, HTSUS.  As such, pursuant to the rules governing the classification of merchandise under basket provisions, as well the ENs to heading 6307, which instruct that the heading "covers made up articles of any textile material which are not included more specifically in other headings," The Comfy® must be excluded from classification under the basket heading 6307, and classified under the specific terms of heading 6110.

### d.  The Comfy® Is Not Properly Classified Under HTSUS Heading 6114 For "Other Garments, Knitted Or Crocheted"

In the third Count of its complaint, plaintiff claims that the subject merchandise is classifiable under subheading 6114.30.30, HTSUS.  Cmpl. ¶ 36.  Heading 6114, HTSUS, provides for "Other garments, knitted or crocheted."  The ENs to heading 6114 explain, in relevant part: "This heading covers knitted or crocheted garments which are not included more

specifically in the preceding headings of this Chapter."  EN 61.14 (2017).  Like heading 6307, this heading is also a basket provision that is only appropriate if there is no tariff category that covers the merchandise more specifically.  *See R.T. Foods*, 757 F.3d at 1354; *Rollerblade*, 282 F.3d at 1354.

As we have established above, The Comfy® is a knitted garment with long sleeves, front and back panels, ribbed cuffs, a hood, and a marsupial pocket; is worn by being pulled over one's head; covers the upper parts of the body; provides warmth to the wearer; is suitable for wear over either undergarments or other clothing; and does not protect against wind, rain, or extreme cold.  Def. SOF, ¶¶ 7-12, 15, 17-21.  As such, The Comfy® is described by the terms "pullover" and "similar articles" of heading 6110, HTSUS; therefore, The Comfy® is excluded from classification under heading 6114, which is a basket provision for garments not included more specifically in the preceding headings.

## **CONCLUSION**

As we have demonstrated above, the undisputed facts confirm that The Comfy® is correctly classified as a "pullover" or "similar article" under heading 6110, HTSUS, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted," and that it is further properly classified under subheading 6110.30.30, HTSUS.

For all the foregoing reasons, we respectfully request that the Court grant our motion for summary judgment, enter judgment for the United States, and dismiss the action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
      JUSTIN R. MILLER
      Attorney-In-Charge
      International Trade Field Office

*Of Counsel*:                               /s/ Brandon A. Kennedy
Michael Anderson                            BRANDON A. KENNEDY
General Attorney                            Trial Attorney
Office of the Assistant Chief Counsel       Department of Justice, Civil Division
International Trade Litigation               Commercial Litigation Branch
U.S. Customs and Border Protection          26 Federal Plaza, Room 346
New York, New York 10278                    New York, New York 10278
                                            Tel.: (212) 264-9237 or 9230
                                            *Attorneys for Defendant*

Dated: November 3, 2023

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF COMPLIANCE

I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 11,228 words.

/s/ Brandon A. Kennedy
BRANDON A. KENNEDY