## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:
Michael Anderson
General Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
New York, New York 10278

BRANDON A. KENNEDY
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9237 or 9230
*Attorneys for Defendant*

Dated: January 12, 2024

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE ................................... 2

II.   PLAINTIFF'S DISPUTE IS NOT WITH THE FACTS, BUT WITH THE
      INTERPRETATION OF THE TARIFF TERMS "PULLOVER"
      AND "SIMILAR ARTICLES"............................................................................ 2

      a.  Plaintiff Disputes The Meaning Of The Term "Pullover"................................. 3

      b.  Plaintiff Disputes The Meaning Of The Term "Similar Articles".................. ...4

III.  PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL
      FACTS NOT IN DISPUTE DO NOT COMPORT WITH THE REQUIREMENTS OF
      USCIT RULES 56 AND 56.3............................................................................ 8

IV.   THERE IS NO BASIS FOR PLAINTIFF'S REQUEST FOR FEES AND COSTS ...... 12

CONCLUSION ..................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................... 2, 8, 9

*Antonio Pompeo v. United States*,
   40 Cust. Ct. 362 (1958)....................................................................................... 7

*Clarendon Marketing, Inc. v. United States*,
   144 F.3d 1464 (Fed. Cir. 1998)....................................................................... 2

*Copelands' Enters., Inc. v. CNV, Inc.*,
   945 F.2d 1563 (Fed. Cir. 1991)....................................................................... 9

*Lemans Corp. v. United States*,
   660 F.3d 1311 (Fed. Cir. 2011)....................................................................... 4

*Lemans Corp. v. United States*,
   675 F.Supp.2d 1374 (Ct. Int'l Trade 2010) ................................................. 4

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)........................................................................... 9

*Mattel, Inc. v. United States*,
   926 F.2d 1116 (Fed. Cir. 1991)................................................................. 3, 11

*Republic Sav. Bank, F.S.B. v. United States*,
   584 F.3d 1369 (Fed. Cir. 2009)....................................................................... 9

*Rubies Costume Co. v. United States*,
   279 F.Supp.3d 1145 (Ct. Int'l Trade 2017) ............................................. 5, 6

*Rubie's Costume Co. v. United States*,
   337 F.3d 1350 (Fed. Cir. 2003)....................................................................... 7

*Rubies Costume Co. v. United States*,
   922 F.3d 1337 (Fed. Cir. 2019)............................................................... 4, 5, 7, 8

*Texas Apparel Co. v. United States,*
   698 F. Supp. 932 (Ct. Int'l Trade 1988),
   *aff'd* 883 F.2d 66 (Fed. Cir. 1989), *cert denied* 493 US 1024 (1990)....................................... 2

**Statutes**

28 U.S.C. § 1581(a) ........................................................................................ 12

**Harmonized Tariff Schedule of the United States**

Chapter 61

Heading 6110 .................................................................................................*passim*

Subheading 6110.30.30 .............................................................................. 1, 13

**Rules**

USCIT Rule 56 ......................................................................................... 8, 9, 10

USCIT Rule 56(c) ............................................................................................... 8

USCIT Rule 56.3 ................................................................................................ 8

USCIT Rule 56.3(c) ............................................................................................ 8

USCIT Rule 56(c)(1)(B) ..................................................................................... 8

USCIT Rule 56(e)(2) ....................................................................................... 8, 9

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), submits this memorandum in reply to plaintiff's, Cozy Comfort Company, LLC, (Cozy Comfort), response to our motion for summary judgment. As further shown below, summary judgment in favor of defendant is appropriate because there are no genuine issues of material fact, and the undisputed facts show that defendant is entitled to judgment in its favor as a matter of law.

**INTRODUCTION**

In our motion, we established that the undisputed facts show that The Comfy® is properly classified under subheading 6110.30.30 of the Harmonized Tariff Schedule of the United States (HTSUS), as a "pullover" or, alternatively, a "similar article." As we have shown in our papers, The Comfy® is an oversized hooded pullover with a marsupial pocket and ribbed cuffs, and it is therefore properly classified under subheading 6110.30.30, HTSUS, as a "pullover" or "similar article" as those terms are interpreted pursuant to their plain meaning.

## ARGUMENT

## I.   SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE

On a motion for summary judgment, the Court determines whether there are any factual disputes that are *material* to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Texas Apparel Co. v. United States*, 698 F.Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations omitted).

Here, the Court has a sample of the merchandise, and the nature of the merchandise is clear.  Its features, measurements, physical characteristics, and composition cannot be disputed.  *See* Def. Statement of Facts (Def. SOF), ¶¶ 7, 11-13; Pl. Resp. to Def. Statement of Facts (Pl. Resp.), ¶¶ 7, 11-13.  Summary judgment is thus appropriate where, as here, the nature of the merchandise is not in question and the sole issue before the Court is the proper interpretation of the tariff code, which is a question of law.  *See Clarendon Marketing, Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998) ("There are no factual issues in this case.  The propriety of the summary judgment turns on the proper construction of the HTSUS, which is a question of law.").  In this case, and as we have shown in our papers, the only dispute is over the legal meaning of the tariff terms "pullover" and "similar articles" of heading 6110.

## II.   PLAINTIFF'S DISPUTE IS NOT WITH THE FACTS, BUT WITH THE INTERPRETATION OF THE TARIFF TERMS "PULLOVER" AND "SIMILAR ARTICLES"

Plaintiff's dispute in this case is not with the facts, but with the interpretation of the tariff terms "pullover" and "similar articles" of heading 6110, HTSUS.  Plaintiff seeks to impose requirements or limitations for these terms that are not supported by their common meaning or the law.

2

### a.  Plaintiff Disputes The Meaning Of The Term "Pullover"

Plaintiff identifies facts regarding the dimensions of The Comfy® that it claims are in dispute between the parties.  *See* Pl. Opp'n to Def. Mot. for Summ. J. (Pl. Opp'n), 14.  But the dimensions and physical attributes of the merchandise (*e.g.*, the length, width, size, thickness, shape) are objectively observable and easily measurable.  Thus, they cannot be disputed by either party.  Indeed, the Court has a sample of the merchandise, and a sample is a most potent witness. *Mattel, Inc. v. United States*, 926 F.2d 1116, 1120 (Fed. Cir. 1991) ("samples of the merchandise . . . are most potent witnesses") (internal citations omitted).

Instead, the true nature of the disagreement between the parties is over the legal criteria that qualifies an item as a pullover.  The legal criteria are established by the interpretation of the tariff term "pullover."  This is a legal question.  Interpreting the term "pullover" and identifying the legal criteria that describe a pullover will necessarily show which facts of this case are material and which are immaterial.

As explained in our opening papers, the common meaning of "pullover," taken from dictionary definitions and relevant case law, is (1) a knitted or crocheted (2) article of clothing (3) worn by pulling it over one's head (4) that covers the upper parts of the body.  Def. Mot. for Summ. J., 18-20.

There is no criterion in the common meaning of the term that imposes a length requirement.  As such, the length of The Comfy® on the "average" user is immaterial.  *See* Pl. Opp'n, 11, 14.  Plaintiff cannot reasonably challenge this interpretation of the term, as the case law and definition of "pullover" relied upon by plaintiff lacks an overall length requirement and omits any discussion of the length of the garment for the "average" user.  *See* Pl. Opp'n, 14-15. For example, plaintiff argues that "pullover" has been previously defined as a "garment (as a

sweater, shirt, or blouse) that is put on by being pulled over the head and is usually made without a placket or similar opening," citing to *Lemans Corp. v. United States*, 675 F.Supp.2d 1374, 1381 (Ct. Int'l Trade 2010) (quoting 11 Webster's Third New International Dictionary 1840, 2308 (2002)), *affirmed by Lemans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011).  Pl. Opp'n, 14-15.  Notably, this definition does not impose any length requirement for the garment.

Given the common meaning of pullover, none of the other properties, characteristics, or uses identified by plaintiff are material.  *See* Pl. Opp'n, 14.  Here, there is no dispute that The Comfy® is (1) a knitted (Def. SOF, ¶ 7 and Pl. Resp., ¶ 7) (2) article of clothing (Def. SOF, ¶ 11 and Pl. Resp., ¶ 11) (3) that is worn by pulling it over one's head (Def. SOF, ¶ 12 and Pl. Resp., ¶ 12) and (4) that covers the upper parts of the body (Def. SOF, ¶ 13 and Pl. Resp., ¶ 13). Because there is no dispute as to these material facts which constitute the elements of the common meaning of the term "pullover," The Comfy® meets the elements of the definition and is therefore classifiable as a pullover under HTSUS heading 6110.

**b.   Plaintiff Disputes The Meaning Of The Term "Similar Articles"**

Although plaintiff agrees that the meaning of "similar articles" of heading 6110 was laid out by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Rubies Costume Co. v. United States*, 922 F.3d 1337, 1345-1346 (Fed. Cir. 2019), plaintiff argues that "the parties fundamentally disagree regarding whether the term 'similar articles' is inherently limited to articles of a certain length and the way that *ejusdem generis* provides insight into this issue."  Pl. Opp'n, 17-18.  But the Federal Circuit's analysis in *Rubies* does not contain any specific length limitation for similar articles of heading 6110.  922 F.3d at 1345-1346.  Instead, characteristics that the Federal Circuit found to be common to articles of heading 6110 include covering the upper body, providing warmth to the wearer, being suitable for wear over either an undergarment

4

or other clothing, and not protecting against wind, rain, or extreme cold.  *Id.*  Plaintiff cannot impose a requirement or limitation for the term "similar articles" of heading 6110 that is not supported by the plain meaning or the relevant case law.  Therefore, the pertinent question is whether the article covers the upper body, not its length below the upper body.

In addition, this Court previously defined the tariff term waistcoat (vest), of heading 6110, as "'[a]n item of wearing apparel extending to the waist *or longer* . . . , usually worn over a blouse or shirt and sometimes under a suit jacket'") (internal citations omitted) (emphasis added).  *Rubies Costume Co. v. United States*, 279 F.Supp.3d 1145, 1167 (Ct. Int'l Trade 2017).  As such, there is no support for plaintiff's arguments (see Pl. Opp'n at 16 and 18) that articles of heading 6110 may not extend "to the waist or longer."  *Rubies*, 279 F.Supp.3d at 1167.  Moreover, the Federal Circuit in *Rubies* affirmed the trial court's classification of a Santa Suit jacket, which extended below the waist approximately to the mid-thigh area, as a "similar article" of heading 6110.  922 F.3d at 1345-1346.  Below is a photograph of the Santa suit from *Rubies*, taken from the trial court's docket in Court No. 13-00407, ECF No. 30-3 (Defendant's Exhibit 1 in support of its cross-motion for summary judgment), at 3:



Like The Comfy®, the Santa jacket came in only one size.  *Rubies*, 279 F.Supp.3d at 1151.

Therefore, the *Rubies* case confirms that length beyond the waistline is not a legal factor within

the common meaning of "similar articles" of heading 6110.

Moreover, plaintiff claims that our interpretation of the term "similar articles" "would

lead to the absurd result that garments that extend to a user's feet" would be classified under

heading 6110.  Pl. Opp'n, 18.  Not so.  As a threshold matter, there is no record evidence

showing that The Comfy® reaches a wearer's feet.  *See generally* Pl. Resp.; *see also* Pl. Resp.,

¶ 13.  Thus, plaintiff's hypothetical is unnecessary.

But more importantly, the operative question is whether the garment functions as an

upper-body garment (like a pullover, sweater, sweatshirt, vest, or similar articles), a full-body

garment (like a dress, onesie, or one-piece ski suit covering the upper and lower bodies), or a

lower-body garment (like pants or a skirt).  Here, it is immediately apparent from the design of

The Comfy®, as reflected by the physical sample submitted to the Court, as well as the images now in the record featuring individuals wearing The Comfy®, that The Comfy®, like the Santa jacket in *Rubies*, 922 F.3d at 1345-1346, is not a substitute for a full-body garment, like a dress, or for a lower-body garment, like pants or a skirt.  For example, The Comfy® is plainly not like a dress or a pair of pants that must provide a certain amount of coverage over the lower body for decency purposes.  *See Rubie's Costume Co. v. United States*, 337 F.3d 1350 (Fed. Cir. 2003) ("[W]earing apparel refers to clothes or coverings for the human body worn for decency or comfort and common knowledge indicates that adornment is also an element of many articles of wearing apparel.") (quoting *Antonio Pompeo v. United States,* 40 Cust. Ct. 362 (1958)).  Indeed, the photos in the record show that The Comfy®'s users wear full-body or lower-body garments with The Comfy®.

In addition, regardless of who the average user may be, it is undisputed that The Comfy® is designed to be worn by and is marketed to people of all shapes and sizes.  *See* Def. SOF, ¶ 14; Pl. Resp., ¶ 14.  Because it is one-size-fits-all, The Comfy® may hang to the knees on a petite woman who is 5'4", but only extend to the upper thigh of a large man who is 6'4", even though both are wearing The Comfy® as intended.  The fact that The Comfy® will fit different users differently does not change its nature as an upper-body garment.  The record evidence again shows that The Comfy®'s wearers, regardless of their size, wear the product as an upper-body garment.  Def. SOF, ¶ 13; Pl. Resp., ¶ 13.

The undisputed facts—and particularly, the sample of The Comfy® itself—show that The Comfy® is very similar to the Santa jacket at issue in *Rubies*, which like The Comfy®, was knitted, made of man-made fabrics, provided warmth to the wearer, and could be worn over

either undergarments or other clothing.  Based on these facts, the Court classified the Santa jacket as a "similar article" of heading 6110.  922 F.3d at 1346.

In sum, the record evidence shows that The Comfy® shares the defining characteristics of similar articles of heading 6110.  Indeed, pursuant to the Federal Circuit's analysis in *Rubies*, 922 F.3d at 1345-1346, because The Comfy® covers the upper body, provides warmth to the wearer, is suitable for wear over either an undergarment or other clothing, and does not protect against wind, rain, or extreme cold, it is also classifiable as a similar article of heading 6110.

## III.  PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE DO NOT COMPORT WITH THE REQUIREMENTS OF USCIT RULES 56 AND 56.3

Throughout its opposition to our motion, plaintiff attempts to dispute what are undisputed facts as a means of pushing this case to a trial.  But as we have explained above, there are no facts involving the physical traits of the merchandise that require a trial, and many of plaintiff's denials in its response to our SOF do not comport with the requirements of USCIT Rules 56 and 56.3.  The materials cited by plaintiff in support of many if its denials, including but not limited to Def. SOF ¶¶ 2, 3, 6, 7, 8, 11, 19, 20, 21, do not establish the presence of a genuine dispute, nor has plaintiff shown that it can produce admissible evidence to support many of its denials. USCIT Rules 56(c)(1)(B), 56.3(c).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may" . . . "consider the fact undisputed for purposes of the motion[,]" among other options. USCIT Rule 56(e)(2).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249 (internal citations omitted).  "If the evidence is merely colorable . . . or is not significantly probative, . . . summary

judgment may be granted." *Id.* at 250 (internal citations omitted).  Further, when opposing a motion for summary judgment, the nonmovant is "obligated to 'do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the [fact-finder] of the dispute over the fact.'" *Republic Sav. Bank, F.S.B. v. United States*, 584 F.3d 1369 (Fed. Cir. 2009) (quoting *Copelands' Enters., Inc. v. CNV, Inc.,* 945 F.2d 1563, 1566 (Fed. Cir. 1991) (internal citations omitted)); *see also Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation").

Some examples of plaintiff's deficient denials appear in their responses to SOFs at paragraphs 2 and 3.  Our SOF at paragraph 2 states, "The commercial invoice and packaging list for the merchandise at issue describes the merchandise as 'Knit PullOver (Comfy Blue).'"  Def. SOF, ¶ 2.  Plaintiff responds, in part, by stating, "**Denies**, to the extent the statement does not contain a material fact."  Pl. Resp., ¶ 2.  This response does not address the substance of the statement.  The commercial invoice and packing list are immutable documents, and any observer can look at the documents and objectively discern whether the descriptive terms "Knit PullOver (Comfy Blue)" appear on the documents.  Instead, plaintiff's response focuses on whether the statement is material to the case and on other facts not contained in defendant's SOF, *e.g.*, who prepared the commercial invoice, why, and when.  *See* Pl. Resp., ¶ 2.  The materiality of a fact is a legal question, and plaintiff's response does not comply with the requirements of USCIT Rule 56.  We respectfully ask that the Court consider this fact as undisputed for purposes of our motion.  USCIT Rule 56(e)(2).

Similarly, our SOF at paragraph 3 states, "The merchandise at issue is a product of China."  Def. SOF, ¶ 3.  However, plaintiff again begins its response by stating, "**<u>Denies</u>**, to the extent the statement does not contain a material fact."  Pl. Resp., ¶ 3.  Once again, plaintiff's response does not address the substance of the statement and disregards the requirements of Rule 56.  Materiality is a legal question, and plaintiff has not properly supported its denial.

Plaintiff's response to our SOF at paragraph 11, which states, "The Comfy® is worn on the body of the user like an article of clothing[,]" also does not follow the requirements of Rule 56.  Def. SOF, ¶ 11; Pl. Resp., ¶ 11.  Once again, plaintiff begins its response with a denial involving an evidentiary citation, but further down in its response, plaintiff admits that our other citations do support the statement.  Pl. Resp., ¶ 11.  Moreover, plaintiff had already previously unambiguously admitted in its 30(b)(6) deposition that The Comfy® matches the definition of an article of clothing:

> 14 Q Merriam-Webster defines "garment" as "an
> 15 article of clothing." Does Cozy agree with this
> 16 definition of the word "garment"?
> 17 A Yes.
> 18 Q Merriam-Webster defines "clothing" as "items
> 19 as of cloth designed to be worn to cover the body."
> 20 Does Cozy agree with this definition?
> 21 A Yes.
> 22 Q Is The Comfy designed to be worn to cover the
> 23 body?
> 24 A Yes.
> 25 Q Merriam-Webster defines "cloth" as "a pliable
> 1 material made usually by weaving, felting, or knitting
> 2 natural or synthetic fibers and filaments." Does Cozy
> 3 agree with this definition?
> 4 A Yes.
> 5 Q Is The Comfy composed of natural or synthetic
> 6 fibers and filaments?
> 7 A Yes.
> 8 Q Are they woven, felted, or knitted together?
> 9 A Yes.
> 10 Q Therefore, The Comfy is made of cloth;

11 correct?
12 A Correct.

Def. Ex. 3, Speciale Depo. Tr. at 49:14–50:12.  As such, despite plaintiff's initial denial, the

Court should also consider this fact as undisputed for purposes of our motion.

A sample of the merchandise has been provided to the Court, and as we demonstrated

above, the sample is a most potent witness.  *Mattel*, 926 F.2d at 1120 ("samples of the

merchandise . . . are most potent witnesses") (internal citations omitted).  The sample reflects the

following undisputed facts, and shows that The Comfy® meets the elements of the definition of

"pullover":

1.  The Comfy® is knitted and made of man-made fibers.  The Comfy® is 100 percent

    polyester, and it is made using two separate knitted fabrics: a microfiber fabric

    (microfleece) for the exterior and a sherpa fabric for the interior.  Def. SOF, ¶ 7; Pl.

    Pl. Resp., ¶ 7.

2.  The Comfy® is worn on the body of the user like an article of clothing.  Def. SOF,

    ¶ 11; Pl. Resp., ¶ 11.

3.  To wear The Comfy®, users pull it over their heads, extend their arms through the

    sleeves, and have the option of placing the hood over their heads.  Def. SOF, ¶ 12; Pl.

    Resp., ¶ 12.

4.  The Comfy® covers the user's torso.  The length below the waist will depend on the

    user's body size.  For some users, The Comfy® will fall mid-thigh or above the

    knees.  For other users, The Comfy® will fall at or below the knees.  Def. SOF, ¶ 13;

    Pl. Resp., ¶ 13.

In addition, the sample reflects the following undisputed facts, and shows that, should the Court not classify The Comfy® as a pullover, it is properly classified as a "similar article" of heading 6110, HTSUS:

1. The front panel of The Comfy® measures approximately 36 inches wide and 33 inches long from the bottom of the neck hole to the bottom of the panel.  The back panel is longer than the front panel.  The back panel measures approximately 36 inches wide and 41 inches long from the bottom of the neck hole to the bottom of the panel.  Def. SOF, ¶ 10; Pl. Resp., ¶ 10.

2. The Comfy® possesses the following features: a front panel, a back panel, long sleeves, ribbed cuffs, an opening for the head, an opening for the waist, fleece or microfleece, a hood, and a marsupial pocket for the hands on the front.  Def. SOF, ¶ 17; Pl. Resp., ¶ 17.

3. The Comfy® is intended to be worn over clothes.  Def. SOF, ¶ 18; Pl. Resp., ¶ 18.

4. The Comfy® is intended to provide warmth to its users.  Def. SOF, ¶ 19; Pl. Resp., ¶ 19.

5. The Comfy® is not intended to be worn for protection against the rain, wind, or extreme cold.  *See* Def. SOF, ¶ 21; Pl. Resp., ¶ 21.

## IV.    THERE IS NO BASIS FOR PLAINTIFF'S REQUEST FOR FEES AND COSTS

In the proposed order accompanying its opposition to our motion, plaintiff proposes that it be awarded fees and costs.  Pl. Opp'n, 1.  Nevertheless, plaintiff fails to identify any basis, statutory or otherwise, for the award of fees and costs.  *See generally* Pl. Opp'n.  Plaintiff's cause of action arises under 28 U.S.C. § 1581(a), but this statute does not include any provision for the

award of fees and costs to plaintiff. As such, plaintiff's request to be awarded fees and costs should be disregarded.

## <u>CONCLUSION</u>

As we have demonstrated above and in our motion, the undisputed facts show that The Comfy® is a "pullover" or, in the alternative, a "similar article" under heading 6110, HTSUS, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted," and that it is properly classified under subheading 6110.30.30, HTSUS.

For all the foregoing reasons, we respectfully request that the Court grant our motion for summary judgment, enter judgment for the United States, and dismiss the action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
      JUSTIN R. MILLER
      Attorney-In-Charge
      International Trade Field Office

*Of Counsel*:                                      /s/ Brandon A. Kennedy
Michael Anderson                           BRANDON A. KENNEDY
General Attorney                             Trial Attorney
Office of the Assistant Chief Counsel      Department of Justice, Civil Division
International Trade Litigation              Commercial Litigation Branch
U.S. Customs and Border Protection         26 Federal Plaza, Room 346
New York, New York 10278                   New York, New York 10278
                                           Tel.: (212) 264-9237 or 9230
                                           *Attorneys for Defendant*

Dated: January 12, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**<u>CERTIFICATE OF COMPLIANCE</u>**

    I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for defendant's Reply Memorandum In Further Support Of Defendant's Motion For Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,523 words.

                                  /s/ Brandon A. Kennedy
                                  BRANDON A. KENNEDY