# UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| COZY COMFORT COMPANY LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　Defendant. | Court No. 22-00173 |

**PLAINTIFF COZY COMFORT COMPANY LLC'S MOTION *IN LIMINE*
TO EXCLUDE THE TESTIMONY OF RENEE ORSAT**

I.       **INTRODUCTION**

Comfort Company LLC (hereinafter "Plaintiff" or "Cozy") hereby moves *in limine* to exclude the testimony of Renee Orsat, a U.S. Customs and Border Protection ("CBP") employee who is testifying on behalf of the United States ("Defendant").

*First*, Ms. Orsat should be precluded from testifying at trial about her consultations with and advice to "other CBP personnel regarding the classification of the merchandise covered by the protest", as well as "her review of plaintiff's submissions concerning the classification of the subject merchandise[,]" as Defendant has thus far withheld such testimony and redacted underlying documents on the basis of deliberative process privilege. (Defendant's Pretrial Summary of Renee Orsat's Testimony, "Orsat Summary," Joint Pretrial Order, ECF 52 at p. 59.) Indeed, the government's discovery privilege log showed that Renee Orsat is either the author or recipient of no less than 43 documents and communications for which the government asserted deliberative process privilege. (Exhibit A, "Plaintiff's Response to Government's Production".) Defendant intends to call Ms. Orsat to testify at trial anyway.

This is trial by surprise, and it is axiomatic to our adversarial system that parties cannot have it both ways, leveraging the civil discovery privileges as both a

discovery shield and trial sword. See Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) ("[T]hose privileges include the privilege for attorney work-product and what is sometimes called the "deliberative process" privilege"); In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1303 (Fed. Cir. 2006) ("The overarching goal of waiver [of privilege] in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice.").

Indeed, Defendant prevented Plaintiff from developing deposition testimony or fully examining underlying documents that would ostensibly support (or perhaps challenge) Ms. Orsat's proposed trial testimony. Plaintiff raised a discovery dispute about deliberative process privilege with Defendant just last year. On March 24, 2023, Plaintiff sent a letter to Defendant highlighting the fact that Defendant's deliberative process privilege assertions were both unsupported and unjustified. (Ex. A, at pp. 1-6.) Allowing Ms. Orsat to now testify on matters previously claimed to be privileged would prejudice Plaintiff, preventing it from conducting an effective cross-examination of Ms. Orsat, and potentially any of the other government witnesses in this case. See William A. Schwarzer, et al., Federal Civil Procedure Before Trial, ¶ 11:37 at 11–29 (2000) (stating that "the court may fashion remedies to prevent surprise and unfairness to the party seeking discovery. ***For example,***

*where the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged*") (emphasis added).

*Second*, Ms. Orsat should be precluded from testifying about her existing opinion, as National Import Specialist (NIS) with the National Commodity Specialist Division (NCSD) of the CBP in charge of classification 6110, that The Comfy® "functions as a garment and lacks the features to protect from extreme cold[,]" since such testimony improperly encroaches upon this Court's *de novo* review. (ECF 52 at p. 59.) Deference to the CBP is not implicated by the Court's review, and CBP's administrative record, including the classification letter and Plaintiff's submissions in connection with Protest No. 2704-20-141606, speaks for itself. Whether The Comfy® protects from the "extreme cold" such that it belongs in a different classification is a question of law and the exclusive province of this Court.

*Third*, Ms. Orsat should be precluded from testifying about "plaintiff's prior protests concerning the same subject merchandise[,]" given that, despite Defendant's statements to the contrary, those protests do not actually concern *the same* merchandise at issue, The Comfy® Original. Such testimony is therefore irrelevant under Federal Rules of Evidence 401 and 402.

*Fourth*, Ms. Orsat should not be allowed to testify in this case, given that Defendant's pretrial Orsat Summary makes abundantly clear that Ms. Orsat will provide expert, rather than lay witness testimony as to the meaning of the ultimate phrase at issue: "extreme cold." Defendant, however, failed to adhere to the expert disclosure requirements of USCIT Rule 26(a)(2), and never identified Ms. Orsat as an expert nor provided an expert report to Plaintiff.

II.  **ARGUMENT**

   *A. Defendant cannot leverage the deliberative process privilege as both sword and shield in this case.*

A form of executive privilege, "[t]he deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." United States Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 266 (2021).  The deliberative process privilege, like the attorney-client privilege, may not, however, be used as both a sword and a shield. Pac. Gas & Elec. Co. v. Lynch, No. C-01-3023 VRW`, 2002 WL 32812098, at *3 (N.D. Cal. Aug. 19, 2002) (citing Chevron Corp. v. Pennzoil Co*.,* 974 F.2d 1156, 1162 (9th Cir.1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield."); Bobkoski v. Board of Educ*.,* 141 F.R.D. 88, 91 (N.D.Ill.1992) (noting that the primary rationales for the deliberative process

privilege and the attorney client privilege are analogous).).

Here, Defendant intends to call Ms. Orsat to testify about The Comfy® Original's classification and the CBP deliberations with which she was involved, as well as the advice she rendered to CBP personnel as to the current protest. (ECF 52 at p. 59.) Ms. Orsat, however, cannot be permitted to testify on any of these matters because Defendant asserted the deliberative process privilege over such topics and despite Plaintiff's repeated attempts during discovery to obtain such material, Defendants refused to produce any documents reflecting the CPB deliberations in which Ms. Orsat was involved. See Ex. A at 1. By refusing to produce such documents and information during discovery, CPB has used the deliberative process privilege as a shield. Calling Ms. Orsat at trial to testify about those same deliberations is an impermissible use of the same material as a sword. Indeed, allowing such testimony would be manifestly unjust since Plaintiff has been precluded from examining documents related to internal disagreements regarding CBP's classification of The Comfy®, as well as documents that referenced the underlying deliberations. These documents and communications support Plaintiff's argument that even the CPB believes that The Comfy® **does not belong in classification 6110**. That CBP itself was not fully convinced that The Comfy® belonged in the classification was the basis of Plaintiff's discovery dispute with

Defendant:

> CBP's position in the pre-penalty notice is directly at odds and conflicts with the government's litigation position in asserting the deliberative process privilege here. In the pre-penalty notice, CBP alleges plaintiff should have classified The Comfy® as a pullover because this classification was obvious and indisputable if plaintiff had exercised due care. . . . Either (1) the The Comfy's® classification was obvious to all, in which case the protest decision was issued as a matter of course with little need for any deliberative process; or (2) the classification determination was a tough call requiring much internal debate that must necessarily be shielded from discovery. It must be one or the other and cannot be both. **<u>If the government argues for the first scenario, then there must have been little deliberation, and the government should eliminate or at the very least drastically reduce its redactions under the deliberative process privilege</u>**.

(Ex. A at 4–5.)

Despite repeated requests from Plaintiff that Defendant withdraw or reduce its deliberative process privilege assertions during discovery, Defendant failed to do so—continually maintaining that the numerous communications involving Ms. Orsat were privileged. Yet, now on the eve of trial, Defendant seeks to affirmatively call Ms. Orsat to testify on these matters, revealing these heretofore privileged communications for the first time at trial. To allow Ms. Orsat to testify at trial regarding material withheld during discovery on the basis of privilege would be a direct violation of the principle that a privilege cannot be used as both a sword and a shield.

The prejudice to Plaintiff under Fed.R.Evid. 403 is only further enhanced by the fact that Ms. Orsat, were she to testify, would be free to selectively disclose internal communications favorable to Defendant's theory of the case, while obscuring by omission, facts, documents, and communications that tend to support Plaintiff's theory of the case. See EchoStar, 448 F.3d at 1303 (noting that a party asserting an advice of counsel defense cannot use "the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice"); see also Jahn as Tr. for Doyon v. Gov't Emps. Ins. Co., 759 F. App'x 815, 817-18 (11th Cir. 2018) (noting that "selective disclosure for tactical purposes" waives the civil discovery privilege and that "specifically seeking to elicit testimony concerning privileged communications . . . waived any privilege").

While selective direct examination testimony may be countervailed by rigorous cross-examination, Defendant's assertion of privilege effectively foreclosed a proficient cross-examination at trial. Likewise, though Defendant's Orsat Summary forecasts that it will waive privilege when eliciting Ms. Orsat's testimony, this alone does not resolve the substantial prejudice to Plaintiff.[1] Simply

---

[1] Indeed, it is exactly this selective-waiver issue that has caused most courts to adopt a "partial waiver equals full waiver" rule. See, e.g., Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co., 953 F.2d 1004, 1007 (5th Cir. 1992) ("[d]isclosure of any significant portion of a confidential communication

put, Defendant's assertions of privilege deprived Plaintiff of the opportunity to test Ms. Orsat's credibility on these issues during discovery and is currently preventing Plaintiff from developing an effective cross-examination and impeachment material for trial. United States v. Bilzerian, 926 F.2d 1285, 1293 (2d Cir. 1991) ("[C]ourts cannot sanction the use of the privilege to prevent effective cross-examination on matters reasonably related to those introduced in direct examination.").

As a result, Plaintiff's request to preclude Ms. Orsat from testifying is reasonable. It is impermissible for Defendant to routinely assert deliberative process privilege on certain matters and documents throughout discovery, only to have Ms. Orsat spring the information upon Plaintiff at the eleventh hour. Indeed, eliciting such testimony in **open court** undermines the core rationale for the deliberative process privilege: "To protect agencies from being forced to operate in a fishbowl." Sierra Club, 592 U.S. at 267. Ultimately, the Court should not allow Defendant to develop on direct examination the very same information for which it invoked

---

waives the privilege as to the whole."); United States v. El Paso Co., 682 F.2d 530, 538 (5th Cir. 1982), cert. denied, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984)). The idea behind this "partial waiver equals full waiver" rule is that a party should not be able to use the privilege to selectively disclose portions of communications or documents but withhold others in a way that favors them. See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.").

deliberative process privilege. See, e.g., Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming district court's decision to preclude individual "from invoking the advice of counsel defense" in a copyright infringement case when the individual "sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the 'eleventh hour.'").

Ultimately, Defendant asserted the privilege, and permitting Ms. Orsat to testify on heretofore withheld consultations would reward Defendant with an unfair tactical advantage. Indeed, Plaintiff was prevented from examining documents tending to show Ms. Orsat's consultations and advice with CBP personnel, and whether they shed any light on CBP's final classification decision.

### B. Ms. Orsat's intended testimony touches upon irrelevant issues and will improperly encroach upon the Court's de novo review.

"The court has protest denial jurisdiction under 28 U.S.C. § 1581(a) (2018) [and] [d]enied protests are subject to *de novo* review 'upon the basis of the record made before the court.'" Performance Additives, LLC v. United States, 705 F. Supp. 3d 1385, 1388 (Ct. Int'l Trade 2024) (citing 28 U.S.C. § 2640(a)(1)).

Ms. Orsat is the National Import Specialist (NIS) in charge of classification

6110 at the CBP's National Commodity Specialist Division (NCSD). Defendant's pretrial summary of her testimony indicates that she will testify that The Comfy® "functions as a garment and lacks the features to protect from extreme cold." (ECF 52 at p. 59.) This is CBP's existing position on the subject merchandise, a position that is no secret to this Court based on the administrative record, and a position which CBP has hired expert witnesses to advocate for at trial. Accordingly, the testimony of Ms. Orsat on this issue is at best duplicative, and at worst, prejudicial.

Indeed, the prejudice of Ms. Orsat's testimony substantially outweighs its probative value under Fed.R.Evid. 403, given that such testimony encroaches upon a question of law that is subject to this Court's *de novo* review. Permitting this testimony enables the executive official in charge of classification 6110 to reinforce her executive agency's administrative decision with in-court testimony, influencing what should be a 'clean-slate' review of the law with agency boosterism. Likewise, the testimony is duplicative of the administrative record, and irrelevant under Fed.R.Evid. 401 and 402, given that the Court is not deferring to CBP's classification decision, least of all the opinion of the NIS in charge of one of the classifications at issue.[2] Accordingly, whether The Comfy® protects from the

---

[2] Tellingly, Defendant is not calling the NIS' responsible for HTSUS headings 6301 (blankets), 6307 (other textiles), 6114 (other garments), or 6108 (robes).

"extreme cold" such that it belongs in a different classification is a question of law and the exclusive province of this Court.

Moreover, Ms. Orsat plans to testify about "plaintiff's prior protests concerning the same subject merchandise." (ECF 52 at p. 59.) This testimony is outside the scope of the present review, given that those protests do not actually concern *the same* merchandise at issue, The Comfy® Original, but rather other designs of The Comfy® brand. Such testimony is therefore irrelevant under Fed.R.Evid. 401 and 402.

### C. Ms. Orsat is being offered as an "expert", rather than a lay witness, yet Defendant failed to notice Ms. Orsat as an expert.

Far from providing run-of-the-mill lay testimony as to what constitutes "extreme cold," Ms. Orsat is instead being offered to provide expert *testimony* within the meaning of Fed.R.Evid. 701(c) and 702. As this Court has previously held, parties cannot cloak expert opinion under the guise of lay testimony. See United States v. Univar USA Inc., 355 F. Supp. 3d 1225, 1243–44 (Ct. Int'l Trade 2018) (citing Fed. R. Evid. 701 advisory committee's note to 2000 amendments) (Fed. R. Evid. 701 was amended to clarify that lay witness testimony cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Indeed, this language was added to Rule 701 "to eliminate the risk that the reliability

requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.").

Ms. Orsat plans to tell the Court that she believes The Comfy® "lacks the features to protect from extreme cold" and that it belongs in its present classification. (ECF 52 at p. 59.) Ms. Orsat's proposed testimony is precisely the kind contemplated by the advisory committee's 2000 amendments to Rule 701, which "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." Fed.R.Evid. 701 advisory committee's note to 2000 amendments.

For instance, the proposed testimony will require Ms. Orsat to give her opinion as to the meaning of the ultimate term at issue in this case: "extreme cold." Yet the analysis used by Ms. Orsat to arrive at her conclusion is not based on her experience as an employee familiar with CBP import processes and general tariff classifications. Rather, Ms. Orsat's intended testimony is based on her *specialized* training as a National Import *Specialist* (NIS) with the National Commodity *Specialist* Division (NCSD) of the CBP. Indeed, the average CBP employee, let alone the average person, is unlikely to have the specialized training and expertise of a National Import Specialist "responsible for the tariff heading 6110" and "heading 6104[,]" who issues rulings regarding "the application of special trade provisions." (ECF 52 at p. 59.)

The committee's note to the 2000 amendments to Fed.R.Evid. 701 cites to analogous circumstances in United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997), where "law enforcement agents could testify that the defendant was acting suspiciously, without being qualified as experts" but that "the rules on experts were applicable ***where the agents testified on the basis of extensive experience that the defendant was using code words to refer to drug quantities and prices***." (Emphasis added) Like the agents' testimony on code words in Figueroa-Lopez, Ms. Orsat's testimony on "extreme cold," made in reliance on her specialized experience as an NIS, is precisely the kind of expert testimony that the 2000 amendments to Fed.R.Evid. 701 removed from the orbit of lay testimony.

Accordingly, Ms. Orsat's testimony on the topic of "extreme cold" is properly classified as Rule 702 expert testimony. Defendant, however, never disclosed Ms. Orsat as an expert in this case on any topic, as required by USCIT Rule 26(a)(2). See Fed.R.Evid. 701 advisory committee's note to 2000 amendments ("The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."). Ms. Orsat should therefore be precluded from testifying about the topic of "extreme cold."

## III. <u>CONCLUSION</u>

For the foregoing reasons, Cozy respectfully requests that the Court grant its motion, precluding Defendant from calling Ms. Orsat to testify on any of these matters at trial.

DATED: September 24, 2024

          */s/ Christopher J. Duncan*
Christopher J. Duncan
Elon Pollack
**STEIN SHOSTAK SHOSTAK POLLACK & O'HARA, LLP**
865 S. Figueroa St., Suite 1388
Los Angeles, California 90017
Telephone: (213) 630-8888
cduncan@steinshostak.com

Gregory P. Sitrick
Isaac S. Crum
Sharif S. Ahmed
**MESSNER REEVES LLP**
7250 N. 16th St., Suite 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552
gsitrick@messner.com
icrum@messner.com
sahmed@messner.com

**ATTORNEYS FOR PLAINTIFF
COZY COMFORT COMPANY, LLC**