## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| COZY COMFORT COMPANY, LLC, : <br> : <br> Plaintiff, : <br> : Court No. 22-00173 <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant. : | |

## **ORDER**

Upon consideration of defendant's motion *in limine* to exclude the expert testimony of Mr. James H. Crumley, plaintiff's response thereto, and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion be, and hereby is, granted; and it is further

**ORDERED** that Mr. James H. Crumley is excluded as an expert witness in this action.

_____
JUDGE

Dated: _____ New York, New York

| | |
|---|---|
| COZY COMFORT COMPANY, LLC, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant. : | Court No. 22-00173 |

# DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
# THE EXPERT TESTIMONY OF MR. JAMES H. CRUMLEY

Defendant, United States (the Government), in accordance with the Court's September 19, 2024 Minute Order, ECF No. 58, respectfully moves this Court for an order excluding expert testimony from Mr. James H. Crumley, a witness plaintiff, Cozy Comfort Company, LLC (Cozy Comfort), proposes to offer at trial.[1]

## BACKGROUND

The Court is familiar with the background of this case, which concerns the proper classification of plaintiff's subject merchandise, The Comfy®. *See* ECF No. 48, Court's Order dated June 18, 2024. Plaintiff maintains that The Comfy® is not classifiable as a pullover, sweatshirt, or similar article under heading 6110, HTSUS. *See id.* at 1. The Government maintains that the physical features, design, use, and marketing of The Comfy® show that it meets the definitions of pullover and sweatshirt, or that it is otherwise a similar article of heading 6110, HTSUS. *See id.* at 1-2.

---

[1] During his deposition in this matter, Mr. Crumley testified that he testified as an expert witness on infringement of a design patent in *Top Brand LLC v. Cozy Comfort Company, LLC*, Case No. 21-cv-00597-PHX-SPL (D. Ariz) (the *Top Brand* Litigation).

# ARGUMENT

I. **PLAINTIFF'S PROPOSED EXPERT TESTIMONY FROM MR. JAMES H. CRUMLEY SHOULD BE REJECTED AND EXCLUDED FROM TRIAL**

The Court decides actions that contest the denial of a protest on a *de novo* basis. *See Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 924 (Fed. Cir. 2003). In conducting that *de novo* review, this Court applies the Federal Rules of Evidence (FRE). *See* 28 U.S.C. § 2641 (except for certain scenarios not at issue here, the FRE "shall apply to all civil actions in the Court of International Trade.").

   A. **Standard To Permit Expert Witness Testimony**

FRE 702 (Testimony by Expert Witnesses) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has held that trial courts have a special obligation to act as gatekeepers to ensure that expert testimony meets the requirements of qualification, reliability, and relevance. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). As a gatekeeper, the trial court must consider the proposed expert's qualifications as to the issue on which the expert is to opine. An expert may be disallowed from providing testimony if he is not qualified to speak on the subject, or he offers an opinion that is not founded from an area of expertise. For example, the U.S. Court of Appeals for the Federal Circuit reversed the judgment of a trial court where that court permitted a patent lawyer to opine on a

technical issue when he lacked knowledge on the topic.  *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008) (reversing the trial court's judgment after it had permitted the lawyer to testify).  The Federal Circuit reasoned that because the expert was not qualified by knowledge, skill, experience or training, he could not assist the trier or fact.  *Id.* at 1361–62.  Rather, "admitting testimony from such a person . . . with no skill in the pertinent art, serves only to cause mischief and confuse the factfinder." *Id.* at 1362.

In *Daubert* and *Kumho Tire*, the Supreme Court held that FRE 702 requires the trial judge as gatekeeper to ensure that an expert's opinion has a reliable basis.  *Daubert*, 509 U.S. at 592.  The Supreme Court also expressed its desire that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152.  "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."  FRE 702 advisory Committee's note (2000 amends.).

### B. Mr. Crumley Does Not Qualify As An Expert

Mr. Crumley has experience in garment and outdoor textile design.  His foray into garment design and product development began with exploring how to put his own designs/patterns onto fabric materials.  He focused on making modifications to hunting garments to make them more usable and efficient, which led to his original Trebark camouflage design along with other patterns that are used in the commercial hunting camouflage industry.  He also focused in adding features to hunting garments to make them quiet, mobile, and usable.  He has been involved in the garment and outdoor textile design industry.  According to his expert report, Mr. Crumley was retained "to provide expert analysis and opinions on topics such as "whether The Comfy® protects from extreme cold, whether The Comfy® is a[n] oversized sweatshirt, pullover, or similar article, and whether The Comfy® is a

3

blanket."

As discussed below, Mr. Crumley is of no assistance to the Court as the trier of fact in understanding the evidence or determining a fact in issue. This is so because Mr. Crumley (i) has changed his position, without explanation, on whether The Comfy® is a garment or blanket, (ii) relied on an irrelevant version of the Snuggie® for comparison with The Comfy®, (iii) failed to consider any facts or documents developed in discovery in this litigation, (iv) is relying on his memory concerning information from the *Top Brand* Litigation, where such information was burned in May 2024, and (v) bases his opinions almost entirely on his own experience. Because Mr. Crumley fails to meet any of the FRE 702 factors, he should be rejected as an expert in this matter.

Mr. Crumley was deposed in this matter on August 5, 2024. At page 18 of his deposition, when asked, "What did you understand your assignment to be in this case," Mr. Crumley responded, "To compare the Cozy product with blankets and the Snuggy [sic] product." When further asked, "Anything else?", he replied, "No." Later, at pages 40-41 of the transcript, when asked, "What did you understand your assignment to be in drafting the expert report," Mr. Crumley testified, "To compare the Comfy with the Snuggy [sic]. And the differences or a semblance of and whether or not it was considered a blanket." In response to the follow up question "Were you asked to opine on anything else," Mr. Crumley stated, "No" and then added, "Excuse me. Also, I was [sic] extreme cold of the Comfy." He further testified that the main conclusions of his report are "[t]hat the Comfy is, in fact, a blanket. It's not what's considered a garment and that it can, in fact, protect from extreme cold."

In order for Mr. Crumley's opinions to be admissible, they must rest on a reliable basis or foundation. Simply stating that an opinion is based on experience is not sufficient to establish the reliability of that opinion. *See United States v. Frazier*, 387 F.3d 1244, 1265 (11th Cir. 2004) (where

4

expert relied solely or primarily on experience, proponent bore the burden of explaining how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case.). "The court's gatekeeping function requires more than simply taking the expert's word for it." FRE 702 advisory committee's note (2000 amends.) (internal quotation omitted).

During his deposition, Mr. Crumley frequently pointed to his personal experience as the basis for his opinion:

> Q. Paragraph 14, you indicate the term extreme cold is used in the outdoor industry to describe conditions significantly more cold for a geographic location. Do you have any source of authority or citation for that statement?
> A. No.
> Q. So how did you come up with that statement?
> A. Having been in that situation, personal experience.

Crumley Tr. at 169.

> Q. Did you consult any sources to try, and see if there was an established definition of extreme cold?
> A. No.
> Q. Why not?
> A. I just felt like I personally knew what extreme cold is.

Crumley Tr. at 170.

> Q. And if you are making one product like the Comfy that is sold all across the country, how do you design that product to be used in extreme cold all over the country?
> A. The heavyweight of it, and the fact that you can enclose your entire body in it like a blanket, and just the fabrics and cells protecting from extreme cold.
> Q. You described the fabric as heavy?

5

> A. Yes.
> Q. How do you define heavy?
> A. Picking it up.
> Q. The way it feels for you?
> A. Yes compared to other items.
> Q. Which?
> A. Any other items blankets whatever or garments that you would wear.
> Q. Do you have the ability to pick up an object, and measure its weight?
> A. Bass, trout.
> Q. Do you have a specific definition of heavy?
> A. No.
> Q. That's just your personal feeling as to how heavy it is?
> A. Yes.

Crumley Tr. at 172-73.

> Q. Paragraph 15, you state that sherpa fabric is specifically designed to protect against extreme cold, what do you base this statement on?
> A. Personal knowledge of extreme cold and garments that you wear.
> Q. What is your definition of extreme cold?
> A. What feels like extreme cold, I have no definition.
> Q. So you cannot provide a temperature range?
> A. No.
> Q. You also state that micro fleece is a fabric designed to protect against extreme cold, what do you base this on?
> A. That it can trap air.
> Q. Have you performed any tests to measure the amount, thickness of the fleece that is required to provide protection in certain temperature ranges?
> A. No.
> Q. You state, textile products combining both sherpa and micro fleece fabrics and layers are designed to and do protect against extreme cold because the polyester

> fabric material traps heat inside, you said
> that?
> A. Yes.
> Q. If you can't provide a definition of
> extreme cold, what metric are you using to make
> the conclusion that these products combined
> provide protection against extreme cold?
> A. Personal experience in extreme cold
> conditions.

Crumley Tr. at 175-76.

> Q. Paragraph 18, you stated that the
> Comfy weighs 3 pounds, but earlier you said you
> didn't know how much it weighed?
> A. I didn't weigh it, I felt it.
> Q. You estimated on personal
> experience?
> A. Yes.
> Q. And then you say that the Comfy,
> which weighs approximately 3 pounds is
> significantly heavier than a typical garment,
> what do you base this statement on?
> A. Heavier than a blanket that I have
> had.

Crumley Tr. at 180.

> Q. Talking about tests, there is some
> discussion of field test, did you feel the need
> to conduct a field test with a Comfy in this
> case?
> A. No.
> Q. Why not?
> A. Judging on personal opinion of the
> fabrication and construction.
> Q. And what was your personal opinion
> based on?
> A. Thickness, and the construction of
> the fabric, and the construction of the Comfy.

Crumley Tr. at 211-12.

Mr. Crumley's personal experiences and opinions, without more, provide an insufficient basis upon which the Court can conclude that Mr. Crumley's opinions are reliable. Indeed, this is the very

7

concern raised by the advisory committee notes for FRE 702. The Court cannot simply take Mr. Crumley's word for it. And "[t]he more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." FRE 702 advisory committee's note (2000 amends.).

Further calling into question the reliability of Mr. Crumley's opinions is that in preparing his opinion, Mr. Crumley did not review any of the information developed during discovery in this matter. Crumley Tr. at 18. Instead, he relied on his memory of documents about The Comfy® that he had received in the *Top Brand* Litigation. Crumley Tr. at 19. He testified that he burned these documents in May 2024 after the *Top Brand* case ended. Crumley Tr. at 19-20. The failure to consider the information developed in this matter and to rely on one's memory of information developed in another case relating to the same product but not the same issues (*i.e.*, determining what an article is for classification purposes vs. testifying as to patent infringement) is contrary to the guidance of *Daubert* and *Kumho*.

By ignoring the documents and information developed during this litigation and relying on memory, Mr. Crumley reveals that he cannot satisfy the factors of FRE 702. First, any testimony that Mr. Crumley would provide is not based on sufficient facts or data as required by FRE 702(b) because he has not reviewed the documents and information adduced during the discovery phase of this action. Next, relying on memory rather than considering the documents and information available to him in this matter—had he only requested it from plaintiff when retained as an expert in this case —reveals that any testimony would be unreliable, rather than being the product of reliable principles and methods as required by FRE 702(c). Indeed, as discussed above, Mr. Crumley could not consistently remember the assignment that plaintiff's counsel instructed him for this case. Nor can Mr. Crumley claim to have reliably applied the principles and methods to the facts of this case because he did not

8

consider the facts of this case. Thus, he has also failed the standard of FRE 702(d).

Moreover, as noted above, had Mr. Crumley considered the documents and information developed in this case, including the Court's June 18, 2024 Order, ECF No. 48, he would have learned about *Allstar Marketing Group, LLC v. United States*, 211 F. Supp. 3d (Ct. Int'l Trade 2017), and its determination that the Snuggie® is properly classified as a blanket. He could then have learned that the Snuggie® at issue in *Allstar* had been imported in 2009 and was the version against which he should have been comparing The Comfy®, including considering the facts found by the Court in *Allstar* as they relate to the Snuggie® it examined. Instead, without gathering sufficient information as to why, he simply compared a Snuggie® (one with a copyright date of 2023) to The Comfy®. Thus, his position that The Comfy® is a blanket, presumably based on the *Allstar* analysis, is without a reliable basis and falls short of FRE 702.

In connection with his testimony in the *Top Brand* Litigation, Mr. Crumley provided an expert report that repeatedly referred to The Comfy® as a garment. *See Top Brand* Litigation, Case 2:21-cv-00597, Document 137-1.[2] Also, during the *Top Brand* trial, Mr. Crumley testified about The Comfy® by consistently referring to it as a garment.

---

[2] The report contained statements such as:

1. "Here the design(s) are whole body blankets / (enlarged) overgarments with an elevated marsupial pocket." (at 6-7, ¶ 18).

2. "[I]t is my opinion that, in this case, the disclosure of an over-garment with a particular pocket on the front and with cuffs . . . would convey that the inventor of that design also knew and disclosed the ability to make that same garment without the pocket or without the cuffs or without the specific top/bottom or left/right edges to the pocket." (at 9, ¶ 32).

3. "The garment described in the patent does not have a 'rigid' bottom edge or a bottom edge that is 'incapable returning to its original size, shape, or position after being stretched, squeezed, flexed, or expanded.' Instead, the patent specification teaches the exact opposite: 'The bottom edge 33 is constructed from a soft and flexible – yet inelastic – fabric material.'" (at 16, ¶ 64).

Direct Examination, Pages 187-88:

> Q. Mr. Crumley, I'd like to talk about your infringement analysis that you conducted in this case.
> What were you told the test for a design patent is to be infringed?
> A. I was told to use the test of the ordinary observer.
> Q. And what is the ordinary observer test that you were given to apply?
> A. The ordinary observer test is whether in the eyes of an ordinary observer that is familiar with the prior art, and getting such attention as a purchaser would give before purchasing, the observer would be deceived into thinking the accused design embodies the patented design or looks the same.
> Q. And who, in your opinion, in this case is the ordinary observer?
>
> A. I consider the ordinary observer in this case is -- the majority of them is an online shopper that probably had a good idea of what they were going to buy and went online to find that particular item.
> Q. How does the price of a product factor into that analysis?
> A. Well, it factors in a lot. I think high priced items are more highly scrutinized online. I mean, if someone is buying a garment to go climb Mount Everest, I think they're going to spend a lot of time looking at the garments, comparing garments, going to different places.
> In this particular case, the type of garment is not going to require a lot of time. I think the person knows what they're looking for, either they have seen ads, or it could have been word of mouth, or it could have been family or friends said, oh, you got to try this, so they've got an idea of what they're looking for. And they go online and they see a picture, and that's it, and so they click and they buy it.

Cross-examination, Page 25:

> Q. All right. You'll agree with me that the claim of the patent says: Ornamental design for an enlarged overgarment with an elevated marsupial pocket, as shown and described. Right?
> A. Yes.
> Q. Which means as shown in the figures and described in the description, right?
> A. Yes.

Cross-examination, Page 26:

> Q. And you'll agree with me that nowhere in the description does it make any mention of any particular fabric. Right?
> A. Yes.
> Q. And it doesn't mention these being wearable blankets, right?
> A. Right.
> Q. It just says enlarged overgarment with an elevated marsupial pocket. Correct?
> A. Right.

Mr. Crumley does not provide an explanation as to why he believes that The Comfy®, which he repeatedly referred to as a garment in the *Top Brand* Litigation, is now a blanket. Given that Mr. Crumley (i) has changed his position, without explanation, on whether The Comfy® is a garment or blanket, (ii) has relied on an irrelevant version of the Snuggie® for comparison with The Comfy®, (iii) has failed to consider any facts or documents in this litigation, and (iv) is relying on his memory concerning information from the *Top Brand* Litigation, which he testified to having burned in May 2024, he fails to satisfy FRE 702(a). Because Mr. Crumley fails to meet any of the FRE 702 factors, he should be rejected as an expert in this matter.

# **CONCLUSION**

For the reasons stated above, the Government respectfully requests that the Court grant its motion *in limine* to preclude the testimony of Mr. James H. Crumley as an expert witness.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
| By: | /s/ Justin R. Miller<br>JUSTIN R. MILLER<br>Attorney-In-Charge<br>International Trade Field Office |
|  | /s/ Beverly A. Farrell<br>BEVERLY A. FARRELL<br>Senior Trial Attorney |
| *Of Counsel*:<br>Michael Anderson<br>Office of the Assistant Chief Counsel<br>International Trade Litigation<br>U.S. Customs and Border Protection<br>New York, New York 10278 | /s/ Brandon A. Kennedy<br>BRANDON A. KENNEDY<br>Trial Attorney<br>Civil Division, U.S. Dept. of Justice<br>Commercial Litigation Branch<br>26 Federal Plaza, Room 346<br>New York, New York 10278<br>Tel.: (212) 264-9230 |
| Dated: September 24, 2024 | *Attorneys for Defendant* |

# CERTIFICATE OF COMPLIANCE

I, Beverly A. Farrell, a senior trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing Memorandum in Support of Defendant's Motion *In Limine* to Exclude the Expert Testimony of Mr. James H. Crumley, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,246 words.

/s/ Beverly A. Farrell
BEVERLY A. FARRELL