Slip Op. No. 24-114

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COZY COMFORT COMPANY, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*. | Before: Stephen Alexander Vaden, Judge<br><br>Court No. 1:22-cv-00173 (SAV) |

## <u>OPINION</u>

[Granting in Part two of Plaintiff's Motions *in Limine* and Denying Defendant's Motion *in Limine*.]

Dated: October 15, 2024

*Christopher J. Duncan*, Stein Shostak Shostak Pollack & O'Hara, LLP of Los Angeles, CA, for Plaintiff Cozy Comfort Company, LLC. With him on the brief were *Elon Pollack* as well as *Gregory P. Sitrick*, *Isaac S. Crum*, and *Sharif S. Ahmed* of Messner Reeves LLP of Phoenix, AZ.

*Beverly A. Farrell*, Senior Trial Attorney, and *Brandon A. Kennedy*, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of New York, NY, for Defendant United States. With them on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Justin Miller*, Attorney-in-Charge, *Aimee Lee*, Assistant Director, and *Michael Anderson*, Of Counsel, U.S. Customs and Border Protection, Office of the Assistant Chief Counsel.

**Vaden, Judge:** Plaintiff Cozy Comfort Company, LLC (Cozy Comfort) is suing to challenge the United States Customs and Border Protection's (Customs) tariff classification of The Comfy® under heading 6110, which covers "[s]weaters, pullovers,

sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted." 6110,

HTSUS; *see* Compl. ¶ 2, ECF No. 6.  On June 12, 2024, the Court denied the

Government's Motion for Summary Judgement.  *See* Min. Order, ECF No. 47.  The

Court then issued an order scheduling a bench trial to begin on October 21, 2024.  *See*

Order at 9, ECF No. 48.  At the Court's September 19, 2024 pre-trial conference, the

parties indicated that they had objections to the other side's proposed witnesses and

exhibits.  *See* Revised Pre-Trial Conf. Tr., ECF No. 64.  The Court established a

briefing schedule for the parties to file motions *in limine* and responses in opposition.

S*ee* Min. Order, ECF No. 58.  On October 11, 2024, the Court held a hearing on the

Motions. S*ee id*.

Decisions concerning evidentiary matters are within the sound discretion of

the trial court.  *See N. Am. Processing Co. v. United States*, 22 CIT 701, 703 (1998)

(citing *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988)).  "Generally

speaking, *in limine* rulings are preliminary in character because they determine the

admissibility of evidence before the context of trial has actually been developed."

*Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330,

1338 (Fed. Cir. 2007).  The admissibility of evidence, in turn, is governed by the U.S.

Constitution, federal statutes, the Federal Rules of Evidence, and other rules

prescribed by the Supreme Court.  *See* Fed. R. Evid. 402.

Within that framework, the Court reaches the following conclusions after

considering each of the three witness-related motions *in limine* filed by the parties.

First, the Court **GRANTS** in part Cozy Comfort's Motion *in Limine* to exclude the

testimony of Patricia Concannon.  Second, the Court **GRANTS** in part Cozy Comfort's Motion *in Limine* to exclude the testimony of Renee Orsat.  Third, the Court **DENIES** the Government's Motion *in Limine* to exclude the testimony of James Crumley. Rulings on the other pending Motions before the Court are reserved for trial.

### I.     Cozy Comfort's Motion *in Limine* to Exclude the Testimony of Patricia Concannon

Patricia Concannon is a fashion industry professional.  *See* Proposed Pre-Trial Order at 35–36, ECF No. 52.  She has spent most of her career working on the sale, marketing, and merchandising of apparel at various companies, non-profits, and university departments.  *See id.*  The Government intends to call Ms. Concannon as an "expert in apparel sales, marketing, and merchandising."  *Id.* at 35.  According to its pre-trial description of her testimony, Ms. Concannon will testify, "The Comfy® is, by design, physical features, use, and marketing, a garment, and specifically, a pullover or oversized sweatshirt that does not protect from extreme cold."  *Id.* at 36. She also will compare The Comfy® to The Snuggie® and a Santa suit jacket.  *See id.* These two products were at issue in prior tariff classification disputes.  *See Allstar Mktg. Grp., LLC v. United States*, 41 CIT __, 211 F. Supp. 3d 1319, 1337 (2017) (finding that The Snuggie® is a blanket under heading 6301); *Rubies Costume Co. v. United States*, 922 F.3d 1337, 1346 (Fed. Cir. 2019) (finding a Santa suit to be a garment under heading 6110).

Cozy Comfort has filed a Motion *in Limine* to exclude or limit Ms. Concannon's testimony.  *See* Pl.'s Mot., ECF No. 54.  The Motion raises two legal issues with her proposed expert testimony.  First, Cozy Comfort argues that Ms. Concannon's

testimony should be excluded because she "is not an expert qualified to opine on …

(1) whether The Comfy® protects against 'extreme cold,' (2) how The Comfy®

compares to the Snuggie®, and (3) the use factors identified in *GRK*[.]"  *Id.* at 1.

Second, Cozy Comfort contends that, even if Ms. Concannon qualifies as an expert,

she has "fail[ed] to articulate any recognizable or reproducible methodologies."  *Id.* at

5.

The Government disagrees.  It argues that it does not "offer Ms. Concannon as

an expert in the construction of outerwear; instead, [it] offer[s] her as an expert in

apparel sales, marketing, and merchandising."  Def.'s Resp. at 4, ECF No. 68.  The

Government claims that "in order to be able to sell and market apparel, one needs to

be knowledgeable to a certain extent about the physical features and design of

apparel."  *Id.* at 5.  Thus, Concannon should also be able to testify as to "how garments

are sold and marketed based on their design and physical features."  *Id.*  In defense

of her testimony's reliability, the Government notes how she combined her own

experience with an analysis of online websites for The Comfy® and for other outwear

garments.  *See id.* at 10–15.

Before allowing expert testimony, the Court must find it more likely than not

that "the expert's scientific, technical, or other specialized knowledge will help the

trier of fact understand the evidence or to determine a fact in issue."  Fed. R. Evid.

702(a).  Baked into this requirement is an assumption that experts will only testify

about matters within the scope of their expertise.  "If the court finds a witness is not

qualified to testify on a particular field or on a given subject, the court will preclude

that witness from testifying on that field or subject." *United States v. Univar USA Inc.*, 42 CIT __, 294 F. Supp. 3d 1314, 1327 (2018) (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

The Court agrees with Cozy Comfort that Ms. Concannon lacks the expertise necessary to testify about whether The Comfy® can protect against extreme cold.[1] Any testimony on that topic would require knowledge of material design or material science. Ms. Concannon's education and work experiences, however, almost exclusively involve apparel sales, marketing, and merchandising. Her bachelor's degree is in "[a]pparel [m]erchandising and [m]anagement." Pl.'s Mot., Ex. A at 2 (Expert Report of Patricia Concannon) (Concannon Report), ECF No. 54-2. After receiving this degree, she primarily worked in jobs where she managed fashion non-profits or handled sales, communications, and buyer relations for fashion companies. *See id.* Her responsibility in these roles focused on tasks like "strengthen[ing] and maintain[ing] relationships with high value buyers," "conduct[ing] market research," "coordinat[ing] … trade show[s]," and organizing "technical training programs for displaced workers in the apparel industry." *Id.* at 23–24. Ms. Concannon's only notable experience with material design or material science came during an eight-month employment at a fashion company thirteen years ago. *See id.* at 24. This

---

[1] The Court is unpersuaded by the Government's account of Ms. Concannon's testimony. The Government's Response characterizes Ms. Concannon's testimony as limited to how "garments are sold and marketed based on their design and physical features." Def.'s Resp. at 5, ECF No. 68. Yet, the Government later says Ms. Concannon will also testify as to why The Comfy® is "a pullover and that it cannot protect from extreme cold." *Id.* at 14. Testimony on that topic would be divorced from her expertise in apparel sales, marketing, and merchandising.

dated, short-term experience does not make her an expert in material design or material science.

The Court finds that Ms. Concannon's testimony must be limited to topics related to the sale, marketing, and merchandising of apparel. Ms. Concannon should root any discussion of extreme cold-resilient apparel in her marketing expertise. For instance, she may testify about how products that protect against the extreme cold are typically sold, marketed, and merchandised. She may not offer an opinion as to whether The Comfy® can actually protect against the extreme cold.

The Court also agrees in part with Cozy Comfort's argument that Ms. Concannon is not qualified to testify about how The Comfy® compares to The Snuggie®. Ms. Concannon's proposed testimony on that topic includes how the two products compare in design, physical characteristics, and use. *See* Concannon Report at 17–19, ECF No. 54-2. Because Ms. Concannon is only an expert in the sale, marketing, and merchandising of apparel, she lacks the expertise to testify directly about these topics. She may, however, testify as to how a product with The Comfy® or The Snuggie®'s design, physical characteristics, and uses would usually be sold, marketed, or merchandised. *See id.* at 18–19 (discussing the products' "differing marketing"). She also may compare how the two products in fact were sold, marketed, or merchandised. *See id.* And she may testify as to any other relevant marketing-related aspect of the two products.

The Court further agrees with part of Cozy Comfort's argument that Ms. Concannon cannot testify about the use factors outlined in *GRK Canada, Ltd. v.*

*United States*.  761 F.3d 1354 (Fed. Cir. 2014).  As the Federal Circuit explained in *GRK Canada*, when use is relevant for tariff classification, the Court's inquiry should include a product's "physical characteristics," "what features the article has for typical users," "how it was designed and for what objectives," and "how it is marketed."  *Id.* at 1358.  Because use is relevant in this tariff classification case, these factors will weigh on the Court's final decision; and testimony on these factors is relevant.  *See* Order at 5–6, ECF No. 48.  That testimony, however, must comply with the Federal Rules of Evidence.  Ms. Concannon's proposed expert testimony about The Comfy®'s physical characteristics and design falls outside of her expertise.  For that reason, the Court rules that such testimony is impermissible.  Instead, Ms. Concannon may testify about facts related to how The Comfy® is marketed.  She also may testify regarding her opinions about the product in so far as those opinions stem from her observations about how The Comfy® is sold, marketed, or merchandised.

Cozy Comfort's only remaining argument against permitting Ms. Concannon's testimony hinges on the reliability of her testimony.  To be admissible, expert testimony must also be reliable.  *See* Fed. R. Evid. 702(b)–(d).  Reliability, in this context, should not be confused with credibility.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("When [an expert's] methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not to its admissibility.") (citations omitted).  Instead, reliability deals with whether the expert testimony is "based on

sufficient facts or data," is "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993). For non-scientific experts, reliability inquiries typically focus on "the expert's experience, rather than methodology" because it is usually "impossible to subject nonscientific theories to experimentation." *Univar USA*, 42 CIT __, 294 F. Supp. 3d at 1328 (citing *Amco Ukrservice v. Am. Meter Co.*, No. 00-2638, 2005 U.S. Dist. LEXIS 12992, at *2 (E.D. Pa. June 29, 2005)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

A significant portion of Cozy Comfort's arguments against the reliability of Ms. Concannon's methods are moot because the Court has limited those aspects of Ms. Concannon's testimony. Cozy Comfort, for instance, argues that Ms. Concannon "fails to describe the methodology she used to 'determine' that The Comfy® does not protect against the 'extreme cold.'" Pl.'s Mot. at 5–6, ECF No. 54. The Court has ruled she cannot testify on this topic.

Cozy Comfort's remaining complaints about Ms. Concannon's reliability generally speak to the weight the Court should give her testimony. These considerations are outside the scope of Rule 702 "reliability" challenges to expert testimony. Cozy Comfort complains about Ms. Concannon's alleged failure to "conduct any market research" on The Comfy®, to "consider[] what consumers thought of The Comfy®," and to "conduct any consumer opinion research on The Comfy®." *Id.* at 6. Even setting aside the Government's objections to this

characterization of Ms. Concannon's work, *see* Def.'s Resp. at 11–15, ECF No. 68, these complaints speak to the accuracy of Ms. Concannon's opinion about The Comfy® rather than her ability to reliably make conclusions about the sale, marketing, and merchandising of The Comfy®.

Ms. Concannon is a non-scientific expert whose reliability should be judged primarily by her experience rather than any assessment about her methods. *See Univar USA*, 42 CIT __, 294 F. Supp. 3d at 1328. As discussed above, Ms. Concannon has extensive experience in the sale, marketing, and merchandising of apparel. She has combined that experience with a "[t]horough" examination of court documents, a "[d]etailed" analysis of Cozy Comfort's website design, and a review of various online sources. *See* Concannon Report at 20–21, ECF No. 54-2. The Court is satisfied that her expert testimony "more likely than not" will be based on sufficient facts or data about The Comfy®; involve the principles of fashion sales, marketing, and merchandising; and will reliably apply those principles to the facts of this case. Fed. R. Evid. 702. For those reasons, the Court rejects Cozy Comfort's reliability arguments.

## II.    Cozy Comfort's Motion *in Limine* to Exclude the Testimony of Renee Orsat

Renee Orsat is a national import specialist within Customs' National Commodity Specialist Division. *See* Proposed Pre-Trial Order at 33, ECF No. 52. She is responsible for tariff heading 6110, amongst others. *See id.* As part of her responsibilities, she reviewed the subject merchandise at issue in this case, as well

as similar merchandise at issue in Cozy Comfort's prior tariff classification protest.
*See id.*

The Government intends to call Ms. Orsat to testify "as to her responsibilities generally and as they apply to this matter" as well as "her review of [Cozy Comfort's] submissions concerning the classification of the subject merchandise and her review of the physical sample of the subject merchandise." *Id.* Ms. Orsat will also discuss Cozy Comfort's prior tariff classification protest. *Id.* She will conclude that "based on her knowledge of the product and its features, it functions as a garment and lacks the features to protect from extreme cold." *Id.*

Cozy Comfort filed a Motion *in Limine* to exclude or limit Ms. Orsat's testimony. *See* Pl. Mot., ECF No. 60. That Motion raises four arguments for why this Court should not permit some or all of Ms. Orsat's testimony. The Court addresses each of Cozy Comfort's arguments in turn.

First, Cozy Comfort argues that Ms. Orsat should not be allowed to testify about her "consultations with and advice to other [Customs] personnel regarding the classification of the merchandise" and "her review of [Cozy Comfort's] submissions concerning the classification of the subject merchandise." *Id.* at 1 (internal quotations omitted). This is because the Government "withheld such testimony and redacted underlying documents on the basis of [the] deliberative process privilege." *Id.* Cozy Comfort insists that permitting Ms. Orsat to testify on these matters would constitute "trial by surprise" and run afoul of "our adversarial system" by allowing parties to leverage "the civil discovery privileges as both a discovery shield and trial sword." *Id.*

at 1–2.  The Government "agree[s] with the proposition that no privilege may be used as a shield and a sword," but it disagrees with Cozy Comfort's "argument that [the Government] intend[s] to use the deliberative process privilege in that manner[.]" *See* Def.'s Resp. at 8, ECF No. 67.  It insists that Ms. Orsat will not "reveal information for which we have asserted the deliberative process privilege."  *Id.* at 9. The parties elaborated on these arguments in supplemental briefing submitted pursuant to the Court's October 3, 2024 Order.  *See* Order, ECF No. 71; *see also* Pl.'s Suppl. Br., ECF No. 77; Def.'s Suppl. Br., ECF No. 76.

"The deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 266 (2021).  In the underlying dispute, the Government invoked the privilege to shield internal communications at Customs about the tariff classification of The Comfy® from discovery.  *See* Pl.'s Mot., Ex. A at 8–34 (Government's Privilege Log), ECF No. 60-1; *see also* Def.'s Br. at 1, ECF No. 76 ("[Customs] asserted the deliberative process privilege with respect to internal pre-decisional written communications leading to [Custom's] official classification[.]").  These non-disclosed documents include numerous e-mails, documents, and discussions that involve Ms. Orsat.  *See* Pl.'s Mot., Ex. A at 8–34 (Government's Privilege Log), ECF No. 60-1; Def.'s Suppl. Br. at 1, ECF No. 76 ("Orsat … is among the [Customs] personnel identified in certain communications that were withheld under the deliberative process privilege.").

Parties may not use a privilege as both a sword and a shield. *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006). A litigant may not waive privilege as to favorable information while simultaneously "asserting privilege to unfavorable advice." *See id.* On similar grounds, courts have also held that a party may not offer trial testimony about matters that it previously kept from the opposing party by invoking privilege during the discovery period. *See Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1294 (Fed. Cir. 2023) (affirming the exclusion of testimony because privilege was invoked on that topic during a deposition); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) (affirming the exclusion of testimony that had been withheld during a deposition based on attorney-client privilege).

The Government does not dispute this legal framework. *See* Def.'s Suppl. Br. at 2–3, ECF No. 76. Instead, it focuses on the framework's application to Ms. Orsat's testimony, arguing that her testimony "will not involve any information covered by the asserted deliberative process privilege." *Id.* at 2. The Court disagrees.

Ms. Orsat's proposed testimony will touch on aspects of the deliberative process that Customs went through to classify The Comfy®. The Government avers, "Ms. Orsat will testify as to her responsibilities generally and *as they apply to this matter*." *See* Proposed Pre-Trial Order at 33, ECF No. 52 (emphasis added). She also will "testify as to her review of plaintiff's submissions concerning the classification of the subject merchandise and her review of the physical sample of the subject merchandise." *Id.* Any responsibilities Ms. Orsat had in this matter, her review of

plaintiff's submissions concerning the classification of The Comfy®, and her review

of The Comfy® all fall under the scope of her employment at Customs.  All these

actions were part of the steps Customs took internally to render a final classification

decision about The Comfy®.

Other aspects of the classification process have been shielded from Cozy

Comfort and the Court through the Government's invocation of the deliberative

process privilege.  As the Government's privilege log demonstrates, there was robust

internal discussion at Customs about how The Comfy® should be classified.  *See* Pl.'s

Mot., Ex. A at 8–34 (Government's Privilege Log), ECF No. 60-1.  Ms. Orsat was privy

to much of this discussion, and she also contributed to it.  *See, e.g.*, *id.* at 9 (noting

Ms. Orsat authored an e-mail about the classification of the subject merchandise); *id.*

at 10 (noting Ms. Orsat authored an e-mail about the CIT's decision in *Allstar* and

how it related to the subject merchandise); *id.* at 14 (noting Ms. Orsat received an e-

mail concerning the classification of the subject merchandise).

This creates an impermissible, unfair situation for Cozy Comfort.  Ms. Orsat's

proposed testimony will provide information about Customs' classification process

that is favorable to the Government's overall litigation position.  *See* Proposed Pre-

Trial Order at 33, ECF No. 52 (indicating Ms. Orsat will testify about why "based on

her knowledge of the product and its features, it functions as a garment and lacks the

features to protect from extreme cold").  Yet, neither Cozy Comfort nor the Court will

know any other details about that process, including information that might be

disfavorable to the Government's litigation position.  For example, Cozy Comfort does

not know if Ms. Orsat ever expressed uncertainty over how to classify The Comfy® or

if Ms. Orsat faced any internal pressure to classify The Comfy® in a certain manner.

For these reasons, the Court finds it necessary to limit Ms. Orsat's testimony

at trial.  She may not testify about opinions she formed *during* the Customs'

classification process.  This limitation means that she may not talk about any opinion

she once held about The Comfy®'s tariff classification because such opinions would

be part of or informed by otherwise privileged deliberative processes at Customs.  She

may not discuss "her responsibilities … as they apply to this matter." *Id.*

Ms. Orsat may only testify on matters outside the scope of the Government's

invocation of the deliberative process privilege.  She may testify as to "her

responsibilities generally" at Customs because those do not relate to the specific

actions she took to help classify The Comfy®.  *Id.*  She also may authenticate and

recount the details of the Government's final classification decision because that final

decision was not shielded from discovery.  However, she may not discuss the details

of the specific process Customs employed to classify The Comfy® because of the

Government's invocation of the privilege.

Turning to Cozy Comfort's second argument in its Motion *in Limine*, Plaintiff

contends that Ms. Orsat should not be able to testify about her opinion on the proper

classification of The Comfy® because that testimony would "improperly encroach[]

upon this Court's *de novo* review."  Pl.'s Mot. at 3, ECF No. 60.  The Government

disagrees.  It argues that Ms. Orsat will not be testifying as to whether the Comfy

protects from extreme cold.  *See* Def.'s Resp. at 5, ECF No. 67.  Instead, she will testify

"that the garment lacks features that are generally associated with protection from extreme cold." *Id.* The Court has already ruled that Ms. Orsat cannot testify about her opinion on the proper classification of The Comfy®. That means this argument is moot.

Third, Cozy Comfort insists that Ms. Orsat should be unable to testify about its prior protests because those protests "do not actually concern *the same* merchandise at issue." Pl.'s Mot. at 3, ECF No. 60 (emphasis in original). That, according to Cozy Comfort, renders this aspect of her testimony "irrelevant under Federal Rules of Evidence 401 and 402." *Id.* The Government disagrees. It characterizes these aspects of Ms. Orsat's testimony as "background" testimony that "satisfies the low threshold for relevant evidence." Def.'s Resp. at 4, ECF No. 67. The Government further notes that modifications to The Comfy® "produce[d] an article virtually identical to the one covered by the entry at issue," making those modifications "pertinent to understanding the true nature of the imported merchandise." *Id.* at 4 n.2.

The Court agrees with the Government. Evidence is relevant if "it has any tendency to make a fact more or less probable" and if that fact "is of consequence in determining the action." Fed. R. Evid. 401. As the Court noted in its June 18, 2024 Order scheduling trial, use is a "relevant consideration" for classifying The Comfy®. *See* Order at 6, ECF No. 48. The Court's determination must take the design and intended use of The Comfy® into account. *See GRK Canada*, 761 F.3d at 1358. Details about how a product was modified over time speak directly to matters

regarding a product's design and intended use. As a result, testimony about past protests and past versions of The Comfy® is relevant.

Fourth, Cozy Comfort argues that Ms. Orsat should be barred from testifying in this case because she will offer "expert, rather than lay witness testimony" as to the meaning of the ultimate phrase at issue: "extreme cold." Pl.'s Mot. at 4, ECF No. 60. Cozy Comfort believes this is problematic because the Government did not "adhere to the expert disclosure requirements of USCIT Rule 26(a)(2)" and "never identified Ms. Orsat as an expert nor provided an expert report to [Cozy Comfort]." *Id.* The Government disagrees with Cozy Comfort's description of Ms. Orsat's testimony as expert testimony and instead argues that Ms. Orsat is only serving as a percipient witness. *See* Def.'s Resp. at 5–9, ECF No. 67.

The precise line between expert and lay opinion testimony is not always clear. *See Kahrs Int'l, Inc. v. United States*, 33 CIT 1297, 1302 (2009). In general, fact witnesses may offer their opinions or inferences so long as those opinions or inferences are "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge[.]" Fed. R. Evid. 701. Nonetheless, Courts will permit "specialized opinion testimony, without first qualifying the witness as an expert," when "the particularized knowledge that the witness has [comes] by virtue of his or her position in the business" even if such knowledge is "specialized or technical." *Kahrs*, 33 CIT at 1302 (internal quotations omitted); *see also Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693

(Fed. Cir. 2001) (quoting *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997)) (applying 5th Circuit caselaw that permits lay witnesses to express opinions that required specialized knowledge if those opinions were "one[s] that a normal person would form from [personal] perceptions").

*Kahrs* is particularly informative for the Court's assessment of Ms. Orsat's status as a lay witness.  In that case, a private party filed a motion *in limine* to exclude the testimony of a national import specialist at Customs because the Government did not identify that witness as an expert and did not prepare an expert report. *See Kahrs*, 33 CIT at 1301.  The Government responded by arguing that the witness was not offering expert testimony and instead was offering his "personal knowledge" rather than "any specialized, scientific, or technical knowledge within the scope of [Federal Rule of Evidence] 702." *Id.*  The Court agreed with the Government and permitted the testimony because it was "based upon personal knowledge rather than scientific, technical, or other specialized knowledge."  *Id.* at 1303 (noting the witness had "seen and examined samples of the merchandise in this case").

The Court agrees with the Government's characterization of Ms. Orsat's testimony.  Ms. Orsat is a witness with firsthand knowledge of The Comfy®, how it was classified by Customs, and why it was classified under heading 6110.  The Government intends to call her to testify about "her responsibilities generally and as they apply to this matter," "her review of the plaintiff's submissions," "her review of the physical sample of the subject merchandise," "plaintiff's prior protests," and "that based on her knowledge of the product and its features, it functions as a garment and

lacks the features to protect from the extreme cold." Proposed Pre-Trial Order at 33,

ECF No. 52. The Court has already limited Ms. Orsat's testimony on many of these

topics for other reasons. The remaining topics outside of that Court-imposed

limitation involve fact-based testimony derived from her personal knowledge of this

case as the national import specialist who classified The Comfy®. That kind of

personal knowledge-driven testimony does not make Ms. Orsat an expert witness.

### III.    The Government's Motion *in Limine* to Exclude the Testimony of James Crumley

James Crumley is an "avid hunter, fisherman, and camper" who "has designed

and developed patents and trademarks for outerwear, including jackets, sweatshirts,

and pullovers, as well as blankets." Proposed Pre-Trial Order, Schedule G-1, ECF

No. 52. Mr. Crumley invented the Trebark® camouflage and has worked with

numerous major garment and outerwear companies. *See id.* He was qualified as an

expert witness in the U.S. District Court for the District of Arizona. *See id.* This

expert qualification was related to his testimony in a patent infringement case

involving The Comfy® where he offered a "comparison of [the] products" at issue. *See*

Pl.'s Resp., Ex. B at 2 (*Top Brand* Case Final Pre-Trial Conference), ECF No. 66-2

(rejecting a motion *in limine* to prevent Mr. Crumley from testifying). Cozy Comfort

intends to call Mr. Crumley as an "expert in protection against extreme cold" and in

"the design, marketing, and use of garments, blankets, and other textiles." Proposed

Pre-Trial Order, Schedule G-1, ECF No. 52.

The Government argues that the Court should exclude Mr. Crumley's

testimony because his testimony is unreliable. Its Motion notes five issues with Mr.

Crumley's reliability as an expert witness: (1) Mr. Crumley "changed his position, without explanation, on whether The Comfy® is a garment or [a] blanket"; (2) he "relied on an irrelevant version of [T]he Snuggie® for comparison with The Comfy®"; (3) he "failed to consider any facts or documents developed in discovery in this litigation"; (4) he "is relying on his memory concerning information from the *Top Brand* [l]itigation, where such information was burned"; and (5) he "bases his opinion almost entirely on his own experience." Def.'s Mot. at 4, ECF No. 62.

Cozy Comfort disagrees. It argues the Government's contentions on Mr. Crumley's reliability focus on the "weight [that should be] accorded to his testimony" rather than his actual qualification as an expert. Pl.'s Resp. at 3, ECF No. 66. This, it claims, is not the kind of reliability discussed in *Daubert* and embodied in the post-*Daubert* amended Federal Rule of Evidence 702. *See id.* at 4. Cozy Comfort also contests the Government's argument that Mr. Crumley bases his opinion on his own experience, noting that such experience-based testimony is "expressly contemplate[d]" in Rule 702. *Id.* at 10 (citing Fed. R. Evid. 702 advisory committee's notes to 2000 amendments) (emphasis omitted). In the alternative, Cozy Comfort argues that Crumley's testimony involves not only his experience but also his "technical expertise in the textile industry." *Id.*

As the Court has noted, Federal Rule of Evidence 702's discussion of reliability does not involve considerations of a witness's general credibility. Instead, the three reliability prongs in Rule 702 relate to the methodology an expert uses to arrive at his or her opinion. *See* Fed. R. Evid. 702 (b)–(d). These prongs require the Court to

determine if an expert's "testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." *Id.* "When [an expert's] methodology is sound, and the evidence relied upon sufficiently relate[s] to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not to its admissibility." *i4i Ltd. P'ship*, 598 F.3d at 852 (citations omitted).

Two of the Government's reliability arguments do not speak to the kind of reliability contemplated by Federal Rule of Evidence 702. *See* Fed. R. Evid. 702 (b)–(d). The Government challenges Mr. Crumley's reliability, in part, because he "changed his position, without explanation" and he "is relying on his memory" for key facts. Def.'s Mot. at 4, ECF No. 62. These two complaints focus on alleged inconsistencies and inadequacies with Mr. Crumley's proposed expert testimony. They speak to the weight the Court should give Mr. Crumley's testimony rather than the actual methodological reliability and admissibility of his expert opinion. The Government is welcome to draw out these problems during its cross-examination of Mr. Crumley, but the Court declines to exclude his testimony on this ground.

Two of the Government's remaining reliability complaints raise colorable attacks on the evidentiary basis of Mr. Crumley's opinion. Specifically, the Government argues that Mr. Crumley did not "consider any facts or documents developed in discovery" and that he "relied on an irrelevant version of [T]he Snuggie®." *Id.* Rule 702(b) requires expert testimony to be "based on sufficient facts

or data." If Mr. Crumley did not base his opinion on the facts at issue in this case or relied on irrelevant facts, that would call his methodological reliability into account in a manner contemplated by the Rule. The touchstone for this inquiry is whether the "evidence [he] relied upon sufficiently related to the case at hand." *i4i Ltd. P'ship*, 598 F.3d at 852.

The Court disagrees with the Government's contention that Mr. Crumley did not "consider any facts or documents developed in discovery." Def.'s Mot. at 4, ECF No. 62. This argument is contradicted by the very deposition testimony the Government cites for support. *Id.* Mr. Crumley's deposition transcript shows that he "reviewed" a variety of materials identical to those in discovery, including an assortment of patents listed in Exhibit B of the deposition. See Pl.'s Resp., Ex. D at 110:11- 111:10 (Dep. of James Crumley), ECF No. 66-4. Even if Mr. Crumley had not reviewed the precise documents in discovery, the question for the Court is whether the evidence he relied upon "sufficiently relate[s] to the case at hand." *i4i Ltd. P'ship*, 598 F.3d at 852. It is undisputed that Mr. Crumley has examined The Comfy® and formed an opinion about its physical features, design, and use based on his experience. That examination and those opinions "sufficiently relate[] to the case at hand." *i4i Ltd. P'ship*, 598 F.3d at 852.

The Court also disagrees with the Government's objection to the version of The Snuggie® Mr. Crumley used to form his opinion. *See* Def.'s Mot. at 9, ECF No. 62. Cozy Comfort wants to introduce evidence comparing The Comfy® with The Snuggie® because in *Allstar* this Court held that The Snuggie® is a blanket for tariff

classification purposes. *Allstar*, 211 F. Supp. 3d at 1337. If The Comfy® is

sufficiently similar to The Snuggie®, that similarity might persuade the Court to rule

that The Comfy® is a blanket for tariff classification purposes. The Government

argues that any comparison between The Comfy® and The Snuggie® must be based

on the precise version of The Snuggie® at issue in the *Allstar* case. *See* Def.'s Mot. at

9, ECF No. 62; *see also Allstar*, 211 F. Supp. 3d 1319. The Court disagrees. The

Government has introduced no evidence indicating that the version of The Snuggie®

that Mr. Crumley relied on is no longer classified as a blanket for tariff purposes.

Consequently, any comparison between this newer version of The Snuggie® and The

Comfy® would still be relevant evidence that is "sufficiently related to the case at

hand." *i4i Ltd. P'ship*, 598 F.3d at 852. For that reason, the Court does not believe

that Mr. Crumley's reliance on this newer version of The Snuggie® renders his

testimony unreliable.

The Government's only remaining attack on Mr. Crumley's reliability stems

from its contention that "Mr. Crumley's personal experiences and opinions, without

more, provide an insufficient basis upon which the Court can conclude that Mr.

Crumley's opinions are reliable." Def.'s Mot. at 7, ECF No. 62. This argument

misunderstands Federal Rule of Evidence 702. Experience alone is an adequate basis

for reliable expertise. As the advisory committee's notes to the 2000 amendments

explain:

> Nothing in this amendment is intended to suggest that experience alone
> – or experience in conjunction with other knowledge, skill, training[,] or
> education – may not provide a sufficient foundation for expert
> testimony. To the contrary, the text of Rule 702 expressly contemplates

that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

Fed. R. Evid. 702 (advisory committee's notes to the 2000 amendments). Indeed, for non-scientific experts, reliability inquiries typically focus on "the expert's experience, rather than methodology" because it is usually "impossible to subject nonscientific theories to experimentation." *Univar USA*, 42 CIT __, 294 F. Supp. 3d at 1328 (citing *Amco Ukrservice*, 2005 U.S. Dist. LEXIS 12992, at *2); *see also Kumho Tire*, 526 U.S. at 152.

For that reason, the Court disagrees with the Government's contention that Mr. Crumley is not an expert because he relies on his personal experience. Mr. Crumley has "designed and developed patents and trademarks for outerwear," has "worked with numerous garment and outerwear companies," and has invented his own camouflage pattern. Proposed Pre-Trial Order, Schedule G-1, ECF No. 52. He also is a seasoned hunter and outdoorsman. *See id.* Combined, these experiences make him qualified to offer his opinion about garment design and material, especially as they relate to garments designed for outdoor use during inclement weather.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part Cozy Comfort's first motion *in limine* (ECF No. 54), **GRANTS** in part Cozy Comfort's second motion *in limine* (ECF No. 60), and **DENIES** the Government's second motion *in limine* (ECF

No. 62).  Rulings on all other motions and objections currently before the Court are

reserved for trial.[2]

/s/ Stephen Alexander Vaden
_____
Stephen Alexander Vaden, Judge

Dated:  ___October 15, 2024___
              New York, New York

---

[2] The Court also ruled on the admissibility of a patent (No. D905,380) at its October 11, 2024 hearing.  The Court found the patent to be admissible even though Cozy Comfort did not produce it during discovery because Cozy Comfort's failure to produce the patent was harmless.  *See* USCIT R. 37(c)(1).