## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S PRETRIAL SUMMARY MEMORANDUM OF LAW

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

BEVERLY A. FARRELL
Senior Trial Attorney

*Of Counsel*:                                                   BRANDON A. KENNEDY
Michael Anderson                                          Trial Attorney
General Attorney                                            Department of Justice, Civil Division
Office of the Assistant Chief Counsel           Commercial Litigation Branch
International Trade Litigation                         26 Federal Plaza, Room 346
U.S. Customs and Border Protection            New York, New York 10278
New York, New York 10278                         Tel.: (212) 264-9237 or 9230
                                                                       *Attorneys for Defendant*

Dated: October 16, 2024

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

MATERIAL FACTS TO BE ESTABLISHED AT TRIAL .................................... 4

QUESTIONS PRESENTED ................................................................................. 4

SUMMARY OF ARGUMENT ............................................................................. 4

DISCUSSION OF MATERIAL FACTS, EVIDENTIARY ISSUES, AND LEGAL ISSUES
THAT REMAIN IN DISPUTE .............................................................................. 6

I.    STANDARD AND SCOPE OF REVIEW ...................................................... 6

    A.   The Court Enjoys *De Novo* Review Of Customs' Classification Decisions And
        Shall Make Its Determinations Based On The Record Before It ................................... 6

    B.   Customs' Final Classification Decisions Are Presumptively Correct ........................... 7

    C.   Plaintiff Bears The Burden Of Proof With Regard To Its Factual Averments ............. 8

II.    LEGAL FRAMEWORK FOR TARIFF CLASSIFICATION UNDER THE HTSUS ... 10

III.    PLAINTIFF CANNOT SHOW THROUGH SUFFICIENT ADMISSIBLE AND
         CREDIBLE EVIDENCE THAT THE COMFY® IS NOT PROPERLY CLASSIFIED
         AS A "PULLOVER" UNDER SUBHEADING 6110.30.30, HTSUS ........................... 12

         a.   A "Pullover" Is A Knitted Or Crocheted Article Of Clothing That Is Worn
             By Pulling It Over One's Head And Covers The Upper Body ........................... 14

         b.   The Admissible And Credible Evidence In The Record Will Show That The
             Comfy® Meets All The Elements Of The Definition Of A Pullover ............... 15

         c.   Plaintiff's Arguments Are Not Supported By The Law ..................................... 20

         d.   The Comfy® Is Properly Classified In Subheading 6110.30.30 ...................... 22

IV.    IN THE ALTERNATIVE, SHOULD THE COMFY® NOT BE CONSIDERED
         A PULLOVER, IT IS STILL PROPERLY CLASSIFIED UNDER HEADING
         6110, HTSUS, BECAUSE IT QUALIFIES AS A "SIMILAR ARTICLE" TO
         SWEATERS, PULLOVERS, SWEATSHIRTS, AND WAISTCOATS (VESTS)
         AND PLAINTIFF IS UNABLE TO SHOW THROUGH ADMISSIBLE AND
         CREDIBLE EVIDENCE THAT IT PROTECTS FROM EXTREME COLD .............. 22

a. The Meaning Of "Similar Articles" To "Sweaters, pullovers, sweatshirts, waistcoats (vests)" ................................................................... 23

b. The Facts Show That The Comfy® Qualifies As A "Similar Article" "Sweaters, pullovers, sweatshirts, waistcoats (vests)" Of Heading 6110 ........... 24

V. THE COMFY® IS NOT PROPERLY CLASSIFIED UNDER ANY OF THE FOUR HEADINGS PROFFERED BY PLAINTIFF ...................................... 26

a. The Comfy® Is Not Properly Classified Under HTSUS Heading 6301 For "Blankets and Traveling Rugs" ......................................................... 26

b. The Comfy® Is Readily Distinguishable From The Merchandise In *Allstar* ...... 28

c. The Comfy® Is Not Properly Classified Under HTSUS Heading 6307 For "Other Made Up Articles, Including Dress Patterns" .................................. 33

d. The Comfy® Is Not Properly Classified Under HTSUS Heading 6114 For "Other Garments, Knitted Or Crocheted" ...................................... 34

e. The Comfy® Is Not Properly Classified Under HTSUS Heading 6108 For "Women's Or Girls' Slips, Petticoats, Briefs, Panties, Night Dresses, Pajamas, Negligees, Bathrobes, Dressing Gowns And Similar Articles, Knitted Or Crocheted" ....................................................................... 35

CONCLUSION ........................................................................... 36

## TABLE OF AUTHORITIES

**Cases**

*Allstar Mktg. Grp., LLC v. United States*,
211 F.Supp.3d 1319 (Ct. Int'l Trade 2017) ........................................................*passim*

*Aves. In Leather, Inc. v. United States*,
178 F.3d 1241 (Fed. Cir. 1999)..................................................................................... 23

*Aves. In Leather, Inc. v. United States*,
423 F.3d 1326 (Fed. Cir. 2005)..................................................................................... 11

*AZ v. Shinseki*,
731 F.3d 1303 (Fed. Cir. 2013)..................................................................................... 10

*BASF Corp. v. United States*,
482 F.3d 1324 (Fed. Cir. 2007)..................................................................................... 11

*Bausch & Lomb, Inc. v. United States*,
148 F.3d 1363 (Fed. Cir. 1998)....................................................................................... 6

*BenQ Am. Corp. v. United States*,
646 F.3d 1371 (Fed. Cir. 2011)..................................................................................... 11

*CamelBak Prods., LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011)..................................................................................... 13

*Casio, Inc. v. United States*,
73 F.3d 1095 (Fed. Cir. 1996)....................................................................................... 13

*Cummins Inc. v. United States*,
454 F.3d 1361 (Fed. Cir. 2006)..................................................................................... 11

*Deckers Corp. v. United States*,
532 F.3d 1312 (Fed. Cir. 2008)....................................................................................... 8

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014)........................................................................... 13, 17, 23

*Deckers Corp. v. United States,*
2007 WL 2489657 (Ct. Int'l Trade 2007).................................................................... 8

*Fuji Am. Corp. v. United States*,
519 F.3d 1355 (Fed. Cir. 2008)..................................................................................... 12

*GRK Canada, Ltd. v. United States*,
761 F.3d 1354 (Fed. Cir. 2014)..................................................................13, 17

*Jarvis Clark Co. v. United States*,
 733 F.2d 873 (1984)....................................................................................7

*Kahrs International, Inc. v. United States*,
713 F.3d 640 (Fed. Cir. 2013)....................................................................12

*Len-Ron Mfg. Co., Inc. v. United States*,
334 F.3d 1304 (Fed. Cir. 2003)..................................................................12

*Link Snacks, Inc. v. United States*,
742 F.3d 962 (Fed. Cir. 2014)....................................................................11

*Michael Simon Design, Inc. v. United States*,
637 F. Supp. 2d 1218 (Ct. Int'l Trade 2009) .............................................12

*Mitsui Petrochemical USA v. United States*,
21 CIT 882 (1997) .......................................................................................8

*Nat'l Advanced Sys. v. United States*,
26 F.3d 1107 (Fed. Cir. 1994)....................................................................11

*North American Processing Co. v. United States*,
236 F.3d 695 (Fed. Cir. 2001).....................................................................6

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998)...............................................................6, 11

*Pillowtex Corp. v. United States*,
171 F.3d 1370 (Fed. Cir. 1999).....................................................................6

*Pomeroy Collection, Ltd. v. United States*,
559 F.Supp.2d 1374 (Ct. Int'l Trade 2008) ...............................................11

*R.T. Foods, Inc. v. United States*,
757 F.3d 1349 (Fed. Cir. 2014)............................................................*passim*

*Rollerblade, Inc. v. United States*,
282 F.3d 1349 (Fed. Cir. 2002).............................................................33, 35

*Rubies Costume Co. v. United States*,
279 F.Supp.3d 1145 (Ct. Int'l Trade 2017) .........................................*passim*

*Rubies Costume Co. v. United States*,
922 F.3d 1337 (Fed. Cir. 2019)..................................................................5, 6, 21, 24

*Schott Optical Glass, Inc. v. United States*,
11 C.I.T. 899 (1987)
  *aff'd*, 862 F.2d 866 (Fed. Cir. 1988) ...................................................................7

*Sports Graphics, Inc. v. United States*,
24 F.3d 1390 (Fed. Cir. 1994)..........................................................................23

*United States v. Rich*,
580 F.2d 929 (9th Cir.1978) ............................................................................10

*Victoria's Secret Direct, LLC v. United States*,
769 F.3d 1102 (Fed. Cir. 2014)........................................................................23

*Warner-Lambert Co. v. United States*,
407 F.3d 1207 (Fed. Cir. 2005)........................................................................12

**Harmonized Tariff Schedule of the United States**

General Rules of Interpretation 1 ...............................................................4, 11, 22, 26

General Rules of Interpretation 6 ...........................................................................6

Chapter 61

   Heading 6108 ...............................................................................................35

      Subheading 6108.92.00...............................................................................3

   Heading 6110 .........................................................................................*passim*

      Subheading 6110.30.30...........................................................................*passim*

      Explanatory Note to 61.10 ...........................................................................14

   Heading 6114 .................................................................................6, 26, 34, 35

      Subheading 6114.30.30.................................................................................34

      Subheading 6114.30.3070..............................................................................2

      EN 61.14 (2017)...........................................................................................35

Chapter 63

    Heading 6301 ................................................................................................ 26, 28

        Subheading 6301.40.00 ......................................................................... 2, 26

        Subheading 6301.40.0020 ............................................................................ 3

    Heading 6307 ...................................................................................... 6, 26, 33, 34

        Subheading 6307.90.98 ............................................................................. 33

        Subheading 6703.9891 ................................................................................ 3

        EN 63.01 (2017) ...................................................................................... 27

        EN 63.07 (2017) ...................................................................................... 34

    Note 7 to Section XI ....................................................................................... 34

**Statutes**

28 U.S.C. §2639(a)(1) .............................................................................................. 7

28 U.S.C. §2640(a)(1) .............................................................................................. 6

28 U.S.C. §2643(b) .................................................................................................. 8

Section 515 of the Tariff Act of 1930 .................................................................. 6, 7

**Rules**

Fed. R. Evid. 803(7) ............................................................................................... 10

**Other Authorities**

HQ H313594 (May 21, 2021) ....................................................................... 1, 2, 3, 18

*Pullover*, MERRIAM-WEBSTER.COM,
https://www.merriam-webster.com/dictionary/pullover (last visited Oct. 4, 2024) ................... 14

*Pullover*, BRITANNICA.COM,
 https://www.britannica.com/dictionary/pullover (last visited Oct. 4, 2024) ............................ 14

*Pullover*, DICTIONARY.COM,
 https://www.dictionary.com/browse/pullover (last visited Oct. 4, 2024) ................................. 14

*Pullover*, AHDICTIONARY.COM,
  https://www.ahdictionary.com/word/search.html?q=pullover (last visited Oct. 4, 2024).......... 14

Charlotte Mankey Calasibetta & Phyllis Tortora*, THE FAIRCHILD DICTIONARY OF FASHION
(‘DICTIONARY OF FASHION’)* 441 (Fairchild Publications, Inc.) (2003) .......................................15

*Blanket*, MERRIAM-WEBSTER.COM,
  https://www.merriam-webster.com/dictionary/blanket (last visited Oct. 4, 2024)..................... 27

*Blanket*, AHDICTIONARY.COM,
https://www.ahdictionarycom/word/search.html?q=blanket (last visited Oct. 4, 2024) ............... 2

*What Every Member of the Trade Community Should Know About: Classification, Apparel
Terminology under the HTSUS*, AN INFORMED COMPLIANCE PUBLICATION, U.S. CUSTOMS AND
BORDER PROTECTION, June 2008 https://www.cbp.gov/sites/default/files/assets/documents/2020-
Feb/ICP-Apparel-Terminology-2008-Final.pdf (last visited Oct. 11, 2024)......................... 15, 21

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S PRETRIAL SUMMARY MEMORANDUM OF LAW

Pursuant to the Court's Order dated June 18, 2024 (ECF No. 48), as well as the Court's Minute Order dated September 19, 2024 (ECF No. 52), defendant, United States (the Government), respectfully submits this pretrial summary memorandum of law supporting the classification of The Comfy® under heading 6110 of the Harmonized Tariff Schedule of the United States (HTSUS) consistent with the decision made by U.S. Customs and Border Protection (Customs or CBP) in ruling letter H313594. The facts to be established at trial will show that the subject merchandise is a pullover, sweatshirt, or similar article under heading 6110, HTSUS, that does not protect from extreme cold, and defendant is entitled to judgment in its favor as a matter of law.

## INTRODUCTION

This case concerns the classification of a single product called The Comfy®, first imported by Cozy Comfort Company, LLC (Cozy Comfort) on July 20, 2019 through the Port of Los Angeles. *See* Exhibit P22, ECF No. 52 at 67 (P22), at 1; Exhibit D1, ECF No. 52 (D1), at 1. In its first importation of The Comfy® in July 2019 under cover of Entry No. 9HX-5585266-6 The Comfy® was described as being a "utility blanket" and Cozy Comfort claimed that it was

classified under subheading 6301.40.00, HTSUS.  D4 at 37-38.  Three months later, on October 24, 2019, Cozy Comfort filed a Post Entry Amendment for another entry of The Comfy® (Entry No. 9HX-5590259-4 made on September 19, 2019), in which it claimed that it had entered The Comfy® under the wrong HTSUS provision (6114.30.3070 for "other garments"), after which CBP sent Cozy Comfort a Request for Information (CF 28) concerning the entry on October 30, 2019, indicating that Cozy Comfort provided insufficient information to classify The Comfy® as a "blanket" under 6301.40.00, HTSUS.  *See* D4 at 20-21.  Cozy Comfort responded to CBP's Request for Information in November 2019, providing a photograph of The Comfy® and product information, and further claimed that the product was a "utility blanket" and that classification should be under subheading 6301.40.00, HTSUS.  *See* D4 at 20.  After reviewing plaintiff's reply to the CF 28, CBP issued a Notice of Action Taken (CF 29) on March 9, 2020, in which it indicated that The Comfy® was considered an oversized pullover properly classified under subheading 6110.30.30, HTSUS.  *See id.*  CBP liquidated Entry No. 9HX-5585266-6 on April 10, 2020 under subheading 6110.30.30, and on August 26, 2020, plaintiff filed its lead protest and application for further review, Protest No. 2704-20-141606.  *See* P22 at 1; D1 at 1.

On May 21, 2021, CBP issued Ruling H313594, confirming that The Comfy®, also known as The Comfy® Original, is properly classified under subheading 6110.30.30, HTSUS. *See* P22; Schedule C of Proposed Pretrial Order, ECF No. 52 at 9 (Schedule C), ¶ 1.  On the basis of this ruling, CBP denied Cozy Comfort's Protest No. 2704-20-141606 on July 12, 2021 and Cozy Comfort filed a summons on August 12, 2021, after which Cozy Comfort filed a complaint in Court No 21-404.  *See* D3.  On June 1, 2022, Cozy Comfort moved to voluntarily dismiss that action, and the action was dismissed on June 2, 2022.  *See* ECF Nos. 17-18 in Court No. 21-404.

A week later, on June 9, 2022, Cozy Comfort filed the summons in the present action

covering Protest No. 2704-22-160430, which was also denied on the basis of ruling H313594

given that the imported merchandise is the exact same as the merchandise in the ruling, *i.e.*, The

Comfy®, also known as The Comfy® Original.  *See* ECF No. 1; Schedule C, ¶ 1; P1; P22; D7,

at 19.  On June 29, 2022, Cozy Comfort filed the complaint in this action, which contains an

almost identical factual background section as its prior complaint and covers the same

merchandise, *i.e.*, The Comfy® or The Comfy® Original.  *Compare* Compl. (ECF No. 8) in

Court No. 21-404 *with* Compl. (ECF No. 6) in Court No. 22-173.  As it claimed in its complaint

in Court No. 21-404, Cozy Comfort claims in the complaint in the present action that the

merchandise should be classified under subheading 6301.40.0020 (as a "blanket"), subheading

6307.90.9891 (as an "other made up article, including dress patterns"), or subheading

6114.30.3070 (as an "other garment").  Compl. ¶¶ 27, 32, 36 (ECF No. 6).  In addition, Cozy

Comfort included a new claim in its Schedule D-1 that The Comfy® is classifiable under

subheading 6108.92.00, HTSUS, as a "robe", even though that is not a tariff term under that

heading.  Schedule D-1 of Proposed Pretrial Order, ECF No. 52 at 45 (Schedule D-1).  The

Government continues to maintain that it is properly classified under subheading 6110.30.30,

HTSUS, as a "pullover", "sweatshirt", or "similar article."  *See* Answer, ECF No. 9 (Answer),

¶ 2; Schedule D-2.

As we explain below, the evidence at trial will show that The Comfy® is an oversized

hooded pullover, sweatshirt, or similar article with a kangaroo pocket and ribbed cuffs, and it is

properly classified under subheading 6110.30.30, HTSUS, as a "pullover", "sweatshirt", or

"similar article" as those terms are interpreted pursuant to their common and commercial meaning.

**MATERIAL FACTS TO BE ESTABLISHED AT TRIAL**

Defendant intends to establish at trial the material facts included in its Schedule C-2, which include citations to specific exhibits to support these material facts, all of which support Customs' classification of The Comfy® under heading 6110, HTSUS. *See* ECF No. 52 at 18-44 (Schedule C-2). Below, we address and cite to specific material facts as they relate to evidentiary issues and the disputed legal issues.

**QUESTIONS PRESENTED**

1.   Whether plaintiff has met its burden of proof by showing through sufficient admissible and credible evidence that The Comfy® is not properly classified as a "pullover," "sweatshirt," or "similar article" under heading 6110, HTSUS, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted."

2.   Whether plaintiff has met its burden of proof by showing through sufficient admissible and credible evidence that The Comfy® meaningfully protects from extreme cold as it contends.

**SUMMARY OF ARGUMENT**

Heading 6110, HTSUS, provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted." The Comfy® is properly classified under this heading because, first, pursuant to Rule 1 of the General Rules of Interpretation (GRIs) of the HTSUS[1], it is described by the common meaning of the tariff term "pullover." A "pullover" is defined as a knitted or crocheted article of clothing worn by pulling it over one's head that covers the upper

---

[1]  GRI 1 provides:

> The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

parts of the body.  The dimensions and features of The Comfy® show that it meets these criteria.

Specifically, like all pullovers, it is a knitted article of clothing that is worn by pulling it over

one's head and it covers the upper parts of the body.  Moreover, like all pullovers, it features

front and back panels, openings for the head and waist, and long sleeves.  Like many pullovers, it

also features ribbed cuffs, fleece or microfleece material, a hood, and a marsupial pocket for the

hands on the front.  Consequently, The Comfy® is properly classified as a pullover under

heading 6110, HTSUS, and plaintiff cannot show through sufficient admissible and credible

evidence that it is not properly classified as a "pullover" under heading 6110.

Second, given the features described above, as well as the fact that Cozy Comfort has in

the past described The Comfy® as an oversized or giant hoodie or sweatshirt in its marketing,

The Comfy® also meets the common commercial meaning of the term "sweatshirt".  Therefore,

The Comfy® is also properly classified as a sweatshirt under heading 6110, HTSUS.

Third, The Comfy® is properly classified under heading 6110 because, alternatively,

pursuant to the rule of *ejusdem generis*, it also qualifies as a "similar article" to "[s]weaters,

pullovers, sweatshirts, waistcoats (vests)."  Under this rule, the phrase "similar articles" in

heading 6110, HTSUS, covers articles that share the essential characteristics of (1) covering the

upper body; (2) providing warmth to the wearer; (3) being suitable for wear over either

undergarments or other clothing; and (4) not protecting against wind, rain, or extreme cold.

*Rubies Costume Co. v. United States*, 922 F.3d 1337, 1345-1346 (Fed. Cir. 2019).  Here, like a

sweater, pullover, or sweatshirt, The Comfy® covers the upper body; provides warmth to the

wearer; can be worn over undergarments or other clothing; but also, by plaintiff's admission,

does not protect against wind or rain.  Further, plaintiff cannot show through sufficient

admissible and credible evidence that The Comfy® protects from "extreme cold".  Therefore,

under the *Rubies* analysis, it is properly classified under heading 6110 based on this alternative legal basis.

Finally, The Comfy® is not properly classified under headings 6301 and 6108, HTSUS, because it is not described by the plain meaning of any of the tariff terms under those headings. Similarly, it is not properly classified under headings 6307 or 6114, HTSUS, which are basket provisions, because The Comfy® is described by the plain meaning of the terms "pullover" or "sweatshirt" of heading 6110, HTSUS.

### DISCUSSION OF MATERIAL FACTS, EVIDENTIARY ISSUES, AND LEGAL ISSUES THAT REMAIN IN DISPUTE

**I.    STANDARD AND SCOPE OF REVIEW**

### A.  The Court Enjoys *De Novo* Review Of Customs' Classification Decisions And Shall Make Its Determinations Based On The Record Before It

This Court enjoys *de novo* review of classification decisions made by Customs and, pursuant to 28 U.S.C. §2640(a)(1), shall make its determinations upon the basis of the record before it in actions contesting the denial of a protest under section 515 of the Tariff Act of 1930.

> Determining whether imported merchandise has been properly classified under an appropriate tariff provision is ultimately an issue of statutory interpretation and thus a question of law. *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Resolution of that issue entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. Pillowtex Corp. v. United States, 171 F.3d 1370, 1373 (Fed. Cir. 1999). The first step is a question of law . . . . *Id.*  The second step is a question of fact . . . . *Id.*

*North American Processing Co. v. United States*, 236 F.3d 695, 697 (Fed. Cir. 2001); *see also*

*Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).

### B.  Customs' Final Classification Decisions Are Presumptively Correct

Pursuant to 28 U.S.C. §2639(a)(1),

> . . . in any civil action commenced in the Court of International Trade under section 515 . . . of the Tariff Act of 1930, **the decision of the Secretary of the Treasury**, the administering authority, or the International Trade Commission **is presumed correct. The burden of proving otherwise shall rest upon the party challenging such decision**.

Emphasis added.  As a matter of law, Customs is presumed to have found the existence of every fact necessary to support the classification of each of the articles at issue here.  *See Schott Optical Glass, Inc. v. United States*, 11 CIT 899, 904 (1987), *aff'd*, 862 F.2d 866 (Fed. Cir.1988).  In this regard, the presumption of correctness attaches not only to the ultimate conclusion of classification, but also to every subsidiary fact necessary to support that conclusion.  *Id.*  Therefore, for purposes of this action, Customs' final classification of the imported Comfy® enjoys a statutory presumption of correctness and, at trial, plaintiff bears the burden of overcoming this presumption as it pertains to every fact necessary to support Customs' classification decision.

The importer's burden to demonstrate that Custom's final classification decision is factually incorrect is consistent with the Court's duty to find the correct result.  As noted by this Court:

> The duty of the Court to find the correct result in a classification case stems from both legislative and judicial sources.  "[T]**he trial court . . . must consider whether the government's classification is correct, both independently and in comparison to the importer's alternative** . . . .  [T]he court's duty is to find the correct result by whatever procedure is best suited to the case at hand."  *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).  If the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative

> procedures as the court may consider necessary to enable it to reach
> the correct decision.    28 U.S.C. §2643(b)[.]

*Mitsui Petrochemical USA v. United States*, 21 CIT 882, 883 n.2 (1997) (emphasis added).   For

the reasons set forth below, and the reasons which will be demonstrated through the evidence

that is admitted at trial, as well as the absence of certain evidence, Customs' classification of The

Comfy® is correct, both independently and in comparison with plaintiff's alternatives.

### C.  Plaintiff Bears The Burden Of Proof With Regard To Its Factual Averments

At trial, plaintiff must establish the contested facts it avers in its Schedule C-1 that

constitute the elements of its alternative classification claims in order to prevail.  Plaintiff has

brought this case challenging Customs' decision and, through an affidavit alleging that The

Comfy® protects from extreme cold, has created at least one issue of material fact.  As such,

plaintiff bears the burden of producing sufficient admissible and credible evidence to establish

all of its factual averments which are necessary to support the elements of its claims that The

Comfy® is not a pullover, and that it is, alternatively, a "blanket", an "other made up article", an

"other garment", or a "robe" (even though heading 6108 includes the term "bathrobe", not

"robe").  *See* Schedule D-1; *see also Deckers Corp. v. United States*, 532 F.3d 1312, 1315 (Fed.

Cir. 2008) ("The trial court found, as a matter of fact, that the imported goods are sold as

'athletic footwear.'  *Deckers,* 2007 WL 2489657, at *2 (stating 'plaintiff bore its burden of proof

with regard to its factual averments, e.g., . . . the imported merchandise is sold as athletic

footwear.').  We discern no clear error that would warrant disturbing this finding of fact.").  As

such, in *Deckers*, the Federal Circuit recognized that plaintiff bears the burden of proof with

regard to its factual averments in a case challenging Customs' classification of imported

merchandise.

Defendant submits that plaintiff lacks sufficient admissible and credible evidence to establish at trial the factual averments that are necessary to support its legal claims.  For example, based on plaintiff's exhibits and defendant's objections, plaintiff is unable to produce sufficient admissible and credible evidence that The Comfy® is not a pullover according to that term's common commercial meaning.  Significantly, plaintiff does not contest that The Comfy® is knitted, so it is like articles of heading 6110, HTSUS, which must be "knitted or crocheted".  Plaintiff also does not contest that The Comfy® is made of microfleece and sherpa fabrics, which are allowed under heading 6110.  Plaintiff also does not contest that The Comfy® has an opening for the head, a hood, long sleeves, ribbed wrist cuffs, a wide, un-ribbed, hemmed bottom opening, and a frontal marsupial or kangaroo pocket, all of which are features found in pullovers.  Moreover, these are not features found in the common commercial meaning of blanket, which typically is an oblong piece of fabric with only front and back panels.

Further, plaintiff is unable to produce sufficient admissible and credible evidence that The Comfy® is a "blanket" or a "bathrobe".  Plaintiff has in the past stated that The Comfy® "is absolutely not the Snuggie®", see C-2 at ¶ 9, and this Court previously found that a model of the Snuggie® which consisted of a piece of fabric with longer dimensions than The Comfy® and tube-like armholes, and which lacked a back side, a hood, pockets, and ribbed cuffs, was found to be classifiable as a blanket.

In addition, plaintiff is unable to produce sufficient admissible and credible evidence that The Comfy® protects from extreme cold.  Plaintiff does not contest that none of the patents for The Comfy® include a description that it protects against extreme cold, and there is no admissible or credible evidence in the record that The Comfy® can protect from extreme cold.  Indeed, the absence of a record, where such a record should exist, may constitute admissible

evidence. *See AZ v. Shinseki*, 731 F.3d 1303, 1315 (Fed. Cir. 2013);[2] *see also* Fed. R. Evid. 803(7). Because plaintiff is unable to meet its burden of production as to its factual averments which are required to support its legal claims, plaintiff is unable to establish that Customs' classification of The Comfy® is incorrect and that it is not in fact classifiable as a pullover, sweatshirt, or similar article.

Defendant further submits that the admissible and credible evidence that will constitute the record at trial affirmatively establishes facts showing that the design, features, use, and marketing of The Comfy® are of a pullover, sweatshirt, or similar article, and that it can only protect the wearer from mild temperatures, and not from moderate, significant, or extreme cold.

Finally, the Court should dismiss plaintiff's assertions that The Comfy® is a blanket or alternatively a robe, given the uncontested facts in Schedule C of the proposed pretrial order, the evidence admitted at trial, and the material facts to be established at trial according to Schedules C-1 and C-2.

## II.    LEGAL FRAMEWORK FOR TARIFF CLASSIFICATION UNDER THE HTSUS

Merchandise imported into the United States is classified under the HTSUS. The tariff classification of merchandise under the HTSUS is governed by the principles set forth in the

---

[2] *AZ*, 731 F.3d at 1317 n.11:

> While the absence of a record is "probably not hearsay as defined in" the general hearsay rule, its inclusion under the rubric of hearsay exceptions establishes that regardless of its hearsay status, the "[f]ailure of a record to mention a matter which would ordinarily be mentioned is satisfactory evidence of its nonexistence," thereby "set[ting] the question at rest in favor of admissibility" of such evidence. *See* Fed. R. Evid. 803(7) & advisory committee's note (1972); *see also United States v. Rich*, 580 F.2d 929, 937–38 (9th Cir.1978) (stating that Rules 803(7) and 803(10) "resolved the issue" of admissibility by "treat[ing] evidence of the absence of entries . . . as an exception to the hearsay rule").

GRIs and the Additional U.S. Rules of Interpretation.  *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007).

GRI 1 provides, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the {remaining GRIs.}" As interpreted by its EN, GRI 1 establishes that "the terms of the headings and any relative section or Chapter Notes are paramount, *i.e*., they are the first consideration in determining classification." *See also The Pomeroy Collection, Ltd. v. United States*, 559 F.Supp.2d 1374, 1385 (Ct. Int'l Trade 2008).  GRI 6 extends the principles of GRI 1 to the subheading level.  The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law.  *Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).

The determination of whether a particular product falls within a tariff classification is a two-step process: first, the meaning of terms within the provision must be ascertained, and second, a determination must be made as to whether the merchandise at issue falls within the description of such terms as properly construed.  *See Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994).  "When there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'"  *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965-66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

Where, as here, relevant terms are undefined in the tariff statute, they "are {to be} construed according to their common {and} commercial meanings."  *BenQ Am. Corp. v. United*

*States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (internal quotation marks omitted). To ascertain the "common {and} commercial meanings" of a particular tariff term, the Court "may rely on its own understanding of the term as well as upon lexicographic and scientific authorities." *Len-Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003). That is, the "court may consult dictionaries, scientific authorities, and other reliable information sources." *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

"After consulting the [H]eadings and relevant section or chapter notes" consistent with GRI 1, the ENs attendant to the relevant HTSUS Headings may be considered. *Fuji Am. Corp. v. United States*, 519 F.3d 1355, 1357 (Fed. Cir. 2008) (citation omitted). The World Customs Organization publishes the ENs as its "official interpretation of the Harmonized Commodity Description and Coding System," the "global system of trade nomenclature on which the HTSUS is based." *Kahrs International, Inc. v. United States*, 713 F.3d 640, 644 n.2 (Fed. Cir. 2013); *Michael Simon Design, Inc. v. United States*, 637 F. Supp. 2d 1218 (Ct. Int'l Trade 2009) (discussing the HTSUS's historical backdrop). The ENs provide persuasive guidance and "are generally indicative of the proper interpretation," although they do not constitute binding authority. *Kahrs*, 713 F.3d at 645 (citations omitted).

## III.   PLAINTIFF CANNOT SHOW THROUGH SUFFICIENT ADMISSIBLE AND CREDIBLE EVIDENCE THAT THE COMFY® IS NOT PROPERLY CLASSIFIED AS A "PULLOVER" UNDER SUBHEADING 6110.30.30, HTSUS

Plaintiff will be unable to show through sufficient admissible and credible evidence that The Comfy® is not properly classified as a "pullover" or "similar article" under heading 6110, HTSUS, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted."

The first four terms in heading 6110—"sweaters," "pullovers," "sweatshirts," and "waistcoats (vests)"—are *eo nomine* terms, which describe a commodity by a specific name, and they are interpreted through an *eo nomine* analysis. *See R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014); *Deckers Corp. v. United States*, 752 F.3d 949, 957 (Fed. Cir. 2014).

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has explained that "*eo nomine* designations include all forms of an article, including future improvements to that article." *Deckers*, 752 F.3d at 957; *see also GRK Canada, Ltd. v. United States*, 761 F.3d 1354, 1358 (Fed. Cir. 2014) ("An *eo nomine* designation with no terms of limitation, will ordinarily include all forms of the named article."). "*Eo nomine* terms are thus forward-looking, such that they include technological advancements, as long as the improved article performs the same essential function of the named exemplar." *Deckers*, 752 F.3d at 957. However, "when an article 'is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant,' it is not properly classified within an *eo nomine* provision." *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1365 (Fed. Cir. 2011) (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1097 (Fed. Cir. 1996)). "To determine whether such a difference is significant enough to remove an article from an *eo nomine* provision, [the Federal Circuit] has looked to whether the item possess[es] features *substantially in excess* of those within the common meaning of the term,' or whether the subject article is 'a change in identity of the article described by the statute.'" *R.T. Foods*, 757 F.3d at 1354 (quoting *CamelBak Prods.*, 649 F.3d at 1365).

As discussed below, The Comfy® is *prima facie* described by the term "pullover" of heading 6110.

**A.  A "Pullover" Is A Knitted Or Crocheted Article Of Clothing That Is Worn By Pulling It Over One's Head And Covers The Upper Body**

As stated above, heading 6110, HTSUS applies to, *inter alia*, "pullovers" that are knitted or crocheted.  The term "pullover" is not defined in the HTSUS.  The ENs to heading 61.10, however, state, in relevant part, "{t}his heading covers a category of knitted or crocheted articles, without distinction between male or female wear, designed to cover the upper parts of the body (jerseys, pullovers, cardigans, waistcoats and similar articles)."

Merriam-Webster defines "pullover" as "a pullover garment (such as a sweater)." *Pullover*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/pullover (last visited Oct. 4, 2024).  Encyclopedia Britannica defines "pullover" as "a piece of clothing (such as a sweater) that is put on by pulling it over your head."  *Pullover*, BRITANNICA.COM, https://www.britannica.com/dictionary/pullover (last visited Oct. 4, 2024).  Dictionary.com defines "pullover" as "Also called slipover, a garment, especially a sweater, that must be drawn over the head to be put on."  *Pullover*, DICTIONARY.COM, https://www.dictionary.com/browse/pullover (last visited Oct. 4, 2024).  The American Heritage Dictionary defines "pullover" as "[a] garment, such as a sweater, designed to be put on or taken off over the head." *Pullover*, AHDICTIONARY.COM, https://www.ahdictionary.com/word/search.html?q=pullover (last visited Oct. 4, 2024).[3]

---

[3] Because some of the definitions above include the terms "garment" and "clothing", it is also necessary to provide definitions for these terms.  The term "garment" "is not defined in the relevant section or chapter notes or in the legislative history."  *Allstar Mktg. Grp., LLC v. United States*, 211 F.Supp.3d 1319, 1329 (Ct. Int'l Trade 2017).  However, the *Allstar* Court considered its common commercial meaning.  *Id.*  The *Allstar* Court explained that the terms "garment," "apparel," "article of clothing," "clothes," "article of dress," and "wearing apparel" are all interchangeable with each other.  *See id.*  The Court found further support in this reasoning in The American Heritage Dictionary's definitions of "garment" as "An article of clothing," and "clothes" as "Articles of dress; wearing apparel; garments."  *Id.*

In addition, the Court of International Trade has previously considered the definition of "pullover." In *Rubies Costume Co. v. United States*, 279 F.Supp.3d 1145, 1167 (Ct. Int'l Trade 2017), the Court offered the following definition: "'[a]ny light knit shirt without neck placket or fastening,' alternatively, '[s]weater with round, crew, or V-neck pulled on over the head as contrasted with a cardigan or coat sweater, which opens down the front, Charlotte Mankey Calasibetta & Phyllis Tortora, *The Fairchild Dictionary of Fashion* ('*Dictionary of Fashion*') 408, 441 (Fairchild Publications, Inc.) (2003)[.]"

CBP's 2008 Informed Compliance Publication (ICP), entitled "What Every Member of the Trade Community Should Know: Classification: Apparel Terminology under the HTSUS," provides the following definition of "pullovers":

> **Pullovers** (6110, 6111) - are upper body knit garments without a full length opening, which are pulled over the head and are not more specifically provided for elsewhere in chapter 61.

*What Every Member of the Trade Community Should Know About: Classification: Apparel Terminology under the HTSUS*, AN INFORMED COMPLIANCE PUBLICATION, U.S. CUSTOMS AND BORDER PROTECTION, June 2008 (ICP), at 18, https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/ICP-Apparel-Terminology-2008-Final.pdf (last visited Oct. 11, 2024).

Taken together, the above authorities show that the common meaning of "pullover" is (1) a knitted or crocheted (2) article of clothing (3) worn by pulling it over one's head (4) that covers the upper parts of the body.

**B. The Admissible And Credible Evidence Will Show That The Comfy® Meets All The Elements Of The Definition Of A Pullover**

The Comfy® meets all the elements of the definitions of "pullover" described above because the admissible and credible evidence in the record to be developed at trial will show that

it is a knitted article of clothing worn by pulling it over one's head and it covers the upper parts of the body.

As the uncontested facts show, The Comfy® is knitted and is worn by pulling it over one's head.  Schedule C, ¶¶ 4, 10.

The evidence admitted to the record at trial will also show that The Comfy® is an article of clothing or a garment.  Significantly, Cozy Comfort has indicated that the design of The Comfy® was inspired, at least in part, by a garment, a men's XL hooded sweatshirt.  Schedule C, ¶ 3.  Further, Cozy Comfort does not contest that people wear The Comfy® by pulling it over their heads, extending their arms through the sleeves, and having the option of placing the hood over their heads, see Schedule C at ¶ 10, which common sense and experience shows is the same way that a person wears a hooded pullover or sweatshirt.  Cozy Comfort has also explicitly stated:

> The idea for The Comfy was hatched in Brian Speciale's Phoenix, Arizona living room when his little bro Michael was staying with him as he went through a painful divorce.  Michael woke up one morning and saw Brian's seven-year-old son, Saxon, curled up on the couch in one of his brother's old hoodies. Since it was a men's XL, it obviously swallowed Saxon up. Michael looked at Brian and said, "Hey Bro, you think they make those for adults?"

D18.  Moreover, The Comfy® possesses at least nine physical features that can be found in garments, such as pullovers, including: a front panel, a back panel, long sleeves, ribbed cuffs, an opening for the head, an opening for the waist, fleece or microfleece, a hood, and a marsupial pocket for the hands on the front.  *See* Physical Sample; Schedule C, ¶ 6.  All the above features common to garments are clear evidence that The Comfy® is a garment.

Although the tariff term "pullover" is an *eo nomine* provision, "use may be considered when determining the commercial meaning of a term in an *eo nomine* provision when the merchandise named in that provision 'inherently suggests a type of use,' or when determining

16

whether a particular article 'fits within the classification's scope.'" *Rubies Costume Co. v. United States*, 279 F.Supp.3d 1145, 1169 n.37 (Ct. Int'l Trade 2017) (quoting *GRK*, 761 F.3d at 1358–59). "As to the latter inquiry, the court may consider 'the subject article's physical characteristics, as well as what features the article has for typical users, how it was designed and for what objectives, and how it is marketed.'" *Id.* (quoting *GRK*, 761 F.3d at 1358). However, while it may be helpful information, use is not determinative of classification under heading 6110, HTSUS because the term "pullover" constitutes "[a]n *eo nomine* designation with no terms of limitation" such that it "include[s] all forms of the named article." *GRK*, 761 F.3d at 1358. In addition, *eo nomine* terms, such as "pullover," are "forward-looking, such that they include technological advancements, as long as the improved article performs the same essential function of the named exemplar," and here, The Comfy® performs the same essential function as a pullover of heading 6110. *Deckers*, 752 F.3d at 957.

Nevertheless, the evidence will show that The Comfy® is also used as a garment. To begin, The Comfy® is worn in the same manner as an article of clothing, particularly a pullover. *See* Schedule C, ¶ 10; D10 at 94:1-3. To wear The Comfy®, users pull it over their heads, extend their arms through the sleeves, and have the option of placing the hood over their heads. Schedule C, ¶ 10. Indeed, the Comfy® is intended to be worn over clothes, like many types of garments, and like many garments, The Comfy® is intended to provide warmth to its users. *See id.*, ¶¶ 11-12. The Comfy® is also intended to allow users who wear it to perform activities that are not feasible with a traditional blanket, but that are feasible with similar garments such as pullovers. *See* Schedule C, ¶¶ 17-18; D21 at 2. And like many garments, The Comfy® is intended for use both inside and outside the home, and is intended and marketed for use both

while relaxing and while doing a variety of activities amenable to wearing similar garments such as pullovers or sweatshirts.  *See* Schedule C, ¶ 18; Schedule C-2, ¶¶ 67-68.

Further evidence that The Comfy® is used as a garment can be found in the fact that Cozy Comfort has at times marketed The Comfy® as a sweatshirt or a garment.  Schedule C, ¶ 15.  The record at trial will show that Cozy Comfort has also described The Comfy® as a garment and a sweatshirt in filings before the U.S. Government.  The Comfy®'s registered trademark from February 2019 until December 2021 even consisted "of an image of a standing panda bear wearing a <u>hooded sweatshirt</u>".  Schedule C, ¶ 24 (emphasis added).  Significantly, plaintiff requested to cancel this trademark one month *after* Customs issued ruling H313594 deciding that the evidence showed that The Comfy® is an oversized hooded pullover.  *See* Schedule C, ¶¶ 35-36.  Cozy Comfort has used the trademark on its website, its product labeling for The Comfy®, in a promotional video, and during its co-founders' appearance on the television show Shark Tank.  Schedule C-2, ¶ 26.

Cozy Comfort also describes The Comfy® as a garment or overgarment in two of its patents issued by the United States Patent and Trademark Office, Nos. D859,788 and 10,420,431.  Schedule C ¶ 25.  Cozy Comfort's Patent No. 10,420,431 is entitled "Overgarment with an elevated marsupial pocket," and the covered product is consistently referred to as a "garment" or an "overgarment" throughout the patent.  Schedule C, ¶¶ 28-29.  For example, at trial the evidence will show that the Abstract and the first paragraph under the heading titled "Summary of the Invention" provides as follows:

> An overgarment includes a single body constructed from two soft, woven fabric plies and a torso in the body. Opposed sleeves are attached to the torso at sleeve openings, and the sleeves each have a top, an opposed bottom, and a length. A marsupial pocket on a front of the torso has a top and opposed bottom, the top of the

> marsupial pocket is above the bottom of each sleeve, and the
> bottom of the marsupial pocket is below the bottom of each sleeve.

Schedule C-2, ¶ 28.  Further, all claims of U.S. Patent No. 10,420,431 are directed to an

overgarment.  Schedule C, ¶ 30.  As we will show at trial, the invention claimed is:  1. An

overgarment comprising:

> a single body constructed from two soft, woven fabric plies;
>
> a torso in the body, the torso having a neck opening;
>
> opposed sleeves attached to the torso at sleeve openings, the
> sleeves each having a top, an opposed bottom, and a length;
>
> a marsupial pocket having a top and opposed bottom, wherein the
> top of the marsupial pocket is above the bottom of each sleeve at
> the respective sleeve opening, and the bottom of the marsupial
> pocket is below the bottom of each sleeve at the respective sleeve
> opening;
>
> wherein the marsupial pocket has a height between its top and
> bottom which is 1.2 times the distance between the neck opening
> and the top of the marsupial pocket.

Schedule C-2, ¶ 28.

We will establish that since 2017—with the filing of U.S. Patent No. D859,788 on

September 13, 2017, which is entitled "Enlarged over-garment with an elevated marsupial

pocket"—Cozy Comfort has referred to The Comfy® as a garment.  Schedule C-2, ¶ 29.  The

covered product in this patent is consistently referred to as an "enlarged over-garment"

throughout the patent, and it is not referred to as a blanket anywhere in the patent.  D25.  The

sole claim of this patent is directed to the ornamental design for an enlarged over-garment with

an elevated marsupial pocket, as shown and described in the patent.  Schedule C-2, ¶ 30.

Further, the evidence at trial will show that The Comfy® has often been referred to as a

garment or apparel in commercial invoices and by some of its manufacturers and vendors.

Schedule C-2, ¶¶ 4, 33, 34.  The commercial invoices for the subject entries for The Comfy®

describe it as a "Knit PullOver (Comfy Blue)."  Schedule C-2, ¶ 4.  The Comfy® has been manufactured by at least four garment or clothing companies.  Schedule C-2, ¶ 33.  And Cozy Comfort's confidential internal business documentation shows that The Comfy® was sold at various apparel stores between 2018 and 2022.  Schedule C-2, ¶ 34.  As such, all the foregoing facts that will be established at trial further confirm that The Comfy® is a garment.

As to the fourth and final element of the definition of pullover, Cozy Comfort does not dispute that The Comfy® covers the upper parts of the body; instead, it only argues that The Comfy® "covers beyond the upper body," *see* Schedule D-1, thereby conceding that The Comfy® does cover the upper body.  Finally, the evidence, including the sample itself, shows that when worn, The Comfy® covers the upper parts of the body, such as the head, torso, chest, shoulders, arms, back, hips, and waist.  Therefore, this element of the definition of pullover is met as well.

As the evidence will show, The Comfy® meets all four elements of the common meaning of "pullover".  As such, The Comfy® is described by the tariff term "pullover" of heading 6110.

### C.  Plaintiff's Arguments Are Not Supported By The Law

Plaintiff alleges in its Complaint that CBP's 2008 Informed Compliance Publication "instructs importers that Heading 6110 of the HTSUS excludes garments that have a sherpa lining and that such garments with a sherpa lining are to be classified in a different HTSUS heading."  Compl. ¶ 13 (ECF No. 6).  Plaintiff also contends that the ICP indicates that "a 'pullover' only covers the 'upper' part of a person's body" and that The Comfy® "extends to, or below, the average consumer's knees."  *Id.* ¶¶ 17, 18.  Plaintiff argues that The Comfy® is not classifiable as a "pullover" because of its sherpa lining, its length, and its alleged design, use, and function as a wearable blanket.  *See id.* ¶¶ 26, 29, 34.

To begin, the ICP is not binding on this Court. *Rubies*, 922 F.3d at 1344. Moreover, plaintiff's interpretation of the ICP is not supported by the law. Indeed, nothing in the terms of heading 6110 or in the dictionary definitions providing the plain meaning of the terms excludes garments with a sherpa lining or garments that cover the upper parts of a person's body and which extend to, or below, the wearer's knees from classification in heading 6110. *See supra*, Section III.B. As noted above, the common meaning of "pullover" is (1) a knitted or crocheted (2) article of clothing (3) worn by pulling it over one's head (4) that covers the upper parts of the body. As such, nothing in the definition excludes garments with a sherpa lining or garments that cover the upper parts of a person's body and which extend to, or below, the wearer's knees but which meet the four elements of the definition of "pullover" from being considered a pullover of heading 6110.

In addition, plaintiff's descriptions of the ICP are not accurate. *See* Compl. ¶¶ 13, 17. As explained above, the ICP defines pullovers as "upper body knit garments without a full length opening, which are pulled over the head and are not more specifically provided for elsewhere in chapter 61." ICP, at 18. Nothing in this definition references sherpa lining. Moreover, contrary to plaintiff's interpretation, the definition of "pullover" in the ICP does not state that pullovers *only* cover the upper body. *Id.* Instead, the phrase "upper body knit garments" from the definition of "pullover" in the ICP simply means that pullovers cover the upper body, but that does not disqualify them from also covering portions of the middle or lower body as well. This interpretation comports with the common meaning of "pullover." Accordingly, the ICP's definition of "pullover" does not conflict with the common meaning of the term "pullover" of heading 6110, HTSUS.

21

Plaintiff also claims that the design, use, and function of The Comfy® are of a blanket, and not of a pullover. *See* Compl. ¶¶ 26, 29, 34; Schedule D-1. However, as the evidence at trial will show, The Comfy®'s features match the plain meaning of the *eo nomine* term "pullover" of heading 6110, HTSUS, and as discussed *supra* in Section III.B, given the Court's prior determination that it will consider other factors such as design, use, and marketing, the trial evidence will show that the design, use, and marketing of The Comfy® are of a garment, and specifically of a hooded pullover, hoodie, or sweatshirt.

**D.  The Comfy® Is Properly Classified In Subheading 6110.30.30**

Because the trial evidence will establish that heading 6110 describes The Comfy®, pursuant to GRI 6, the GRIs are applied in sequential order to determine the correct subheading, at each subheading level.

The Comfy® is knitted and made of man-made fibers. Schedule C, ¶ 4. Therefore, pursuant to GRI 1, it is properly described by subheading 6110.30, HTSUS ("Of man-made fibers."). And because The Comfy® is 100 polyester and is made using two separate knitted fabrics (a microfiber fabric for the exterior and a sherpa fabric for the interior), the only subheading at the eight-digit level that describes The Comfy® is subheading 6110.30.30 ("Other"). *Id.* Therefore, The Comfy® is properly classified in subheading 6110.30.30, HTSUS.

**IV.  IN THE ALTERNATIVE, SHOULD THE COMFY® NOT BE CONSIDERED A PULLOVER, IT IS STILL PROPERLY CLASSIFIED UNDER HEADING 6110, HTSUS, BECAUSE IT QUALIFIES AS A "SIMILAR ARTICLE" TO SWEATERS, PULLOVERS, SWEATSHIRTS, AND WAISTCOATS (VESTS), AND PLAINTIFF IS UNABLE TO SHOW THROUGH ADMISSIBLE AND CREDIBLE EVIDENCE THAT IT PROTECTS FROM EXTREME COLD**

The *eo nomine* terms in heading 6110 (*i.e.*, "[s]weaters, pullovers, sweatshirts, waistcoats (vests)), are followed by the general phrase "and similar articles," which invites an *ejusdem*

*generis* analysis.  "In an *ejusdem generis* analysis 'where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified.'"  *Deckers*, 752 at 952 n.3 (quoting *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994)).  "*Ejusdem generis* analysis 'requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms.'"  *Id.* at 956 (quoting *Sports Graphics*, 24 F.3d at 1392).  "Identifying the essential (or unifying) characteristics is 'a question of law' and 'a matter of common sense.'"  *Rubies*, 279 F.Supp.3d at 1168 (quoting *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1107 (Fed. Cir. 2014)).  The first step in the analysis is to "consider the common characteristics or unifying purpose of the listed exemplars in a heading."  *Victoria's Secret*, 769 F.3d at 1107 (quoting *Aves. In Leather, Inc. v. United States*, 178 F.3d 1241 (Fed. Cir. 1999)).  "[T]he unifying characteristics may consist of both affirmative features and limitations."  *Id.*  The second step "is to consider the merchandise at issue with the identified unifying characteristics (or purpose) in mind."  *Id.*  Classification of imported merchandise under *ejusdem generis* is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars.  *Aves. In Leather, Inc. v. United States*, 178 F.3d 1241, 1244 (Fed. Cir. 1999).

### A.  The Meaning Of "Similar Articles" To "Sweaters, Pullovers, Sweatshirts, Waistcoats (Vests)"

The Federal Circuit interpreted the phrase "similar articles" in heading 6110, HTSUS, using the rule of *ejusdem generis*, to encompasses articles that share the essential characteristics of (1) covering the upper body, (2) providing warmth to the wearer, (3) being suitable for wear over either undergarments or other clothing; and (4) not protecting against wind, rain, or extreme

cold. *Rubies*, 922 F.3d at 1345-1346.  During the trial court proceedings of the *Rubies* case, the

Court of International Trade also conducted an *ejusdem generis* analysis using dictionary

definitions of the listed exemplars in heading 6110, HTSUS—*i.e.*, "sweaters," "pullovers,"

"sweatshirts," and "waistcoats (vests)"—and on the ENs to heading 6110.  *Rubies*, 279

F.Supp.3d at 1167-1169.  Notably, the Court of International Trade recognized that, although the

ENs provide examples of articles that share the essential characteristics of the articles named in

the heading, the "[EN's] exemplars do not represent the limits of what may be deemed 'similar'

to the heading's exemplars." *Rubies*, 279 F.Supp.3d at 1169.  Based on its analysis, the Court of

International Trade determined that a jacket worn as part of a Santa costume was properly

classified under heading 6110, HTSUS, despite not falling under any of the heading's named

exemplars, and the Federal Circuit affirmed.  *Id.*; *Rubies*, 922 F.3d at 1345-1346.

### B.  The Facts Will Show That The Comfy® Qualifies As A "Similar Article" To "Sweaters, Pullovers, Sweatshirts, Waistcoats (Vests)" Of Heading 6110

In the alternative, should the Court find that The Comfy® is not a "pullover," it is still

properly classified under heading 6110, HTSUS, because it qualifies as a "similar article" to

sweaters, pullovers, sweatshirts, and waistcoats (vests).  The exemplars identified in heading

6110 are indicative of just a few of the types of items that are classified under the heading, and

The Comfy® shares the characteristics that this Court has deemed are common to all these

exemplars based on the *Rubies* case.

In *Rubies*, the Court did not find that the Santa Suit jacket was a pullover, but here, the

Court is able to find that The Comfy® is a pullover because its features meet the common

meaning of pullover, including improved forms.  Although an *ejusdem generis* analysis

considering the term "similar articles" is unnecessary, this Court has previously ruled in this case

that it considers the *Rubies* factors to apply to all exemplars of heading 6110, including

pullovers, and that the key question is whether The Comfy® protects against extreme cold.  *See* ECF No. 48.  As the trial evidence will show, plaintiff cannot show through sufficient admissible and credible evidence that The Comfy® meaningfully protects from extreme cold.

The Comfy® possesses several features that can be found in pullovers, sweatshirts, and similar articles: a front panel, back panel, long sleeves, ribbed cuffs, an opening for the head, an opening for the waist, fleece or microfleece, a hood, and a marsupial pocket for the hands on the front.  *See* Schedule C, ¶ 6.  As explained *supra* in Section III, like sweaters, pullovers, sweatshirts, and waistcoats, The Comfy® covers the upper parts of the body (torso and arms).  Further, it is uncontested that The Comfy® is intended to be worn over clothes and is intended to provide warmth to its users.  Schedule C, ¶¶ 11-12.  It is also uncontested that The Comfy® is not worn for protection against rain or wind.  *Id.*, ¶ 13.

At trial, plaintiff will be unable to show through sufficient admissible and credible evidence that The Comfy® actually protects the wearer from "extreme cold".  Furthermore, defendant's admissible and credible evidence adduced at trial will show that The Comfy® was not designed to protect from extreme cold, lacks the physical features to protect from extreme cold, cannot be used to protect from extreme cold, and has never been tested nor marketed to protect from extreme cold.  *See, e.g.*, Schedule C-2, ¶¶ 35-43, 47, 50-51, 54-61.  We will establish that examples of garments that do protect from extreme cold for substantial periods of time include Canada Goose parkas and Patagonia jackets.  *See, e.g.*, Schedule C-2, ¶¶ 52-53, 62, 69.

Because The Comfy® does not protect from extreme cold, it shares all the characteristics of "similar articles" of heading 6110 and is therefore properly classified in that heading.  Finally, having established that The Comfy® is properly classified in heading 6110, HTSUS, under an

*ejusdem generis* analysis, The Comfy® is properly further classified in subheading 6110.30.30, as explained *supra* in Section III.D.

## V.    THE COMFY® IS NOT PROPERLY CLASSIFIED UNDER ANY OF THE FOUR HEADINGS PROFFERED BY PLAINTIFF

Plaintiff proffers four HTSUS headings for classification of The Comfy®: heading 6301 ("Blankets and traveling rugs"), heading 6307 ("Other made up articles, including dress patterns"), heading 6114 ("Other garments, knitted or crocheted"), and heading 6108 ("Women's or girls' slips, petticoats, briefs, panties, night dresses, pajamas, negligees, bathrobes, dressing gowns and similar articles, knitted or crocheted").  *See* Compl. ¶¶ 27, 32, 36; Schedule D-1.  As we explain below, none of these headings describe The Comfy® pursuant to a GRI 1 analysis.

### A.    The Comfy® Is Not Properly Classified Under HTSUS Heading 6301 ("Blankets And Traveling Rugs")

Plaintiff claims that the subject merchandise is classifiable under subheading 6301.40.00, HTSUS.  Compl. ¶ 27; Schedule D-1.  Heading 6301, HTSUS, provides for: "Blankets and traveling rugs."  The heading does not define the term "blanket."  Although not dispositive or legally binding, the ENs to heading 6301 explain, in relevant part:

> Blankets and travelling rugs are usually made of wool, animal hair, cotton or man-made fibres, frequently with a raised pile surface, and generally of thick heavy-texture material for protection against the cold. The heading also covers rugs and blankets for cots or prams.

> Travelling rugs usually have fringes (generally formed by projecting warp or weft threads), but the edges of blankets are normally preserved by blanket stitching or binding.

> The heading includes fabrics in the piece which, by the simple process of cutting along defined lines indicated by the absence of weft threads, may be converted into separate articles having the character of finished blankets or travelling rugs.

> Electrically heated blankets are also included in the heading.

26

EN 63.01 (2017).

The Court of International Trade has previously considered the common commercial meaning of the term "blanket." In *Allstar*, 211 F.Supp.3d at 1336, the Court found "first, that a blanket is a large (possibly oblong) piece of fabric, and second, that a blanket is used as a covering for warmth, often, but not always, as common knowledge dictates, on a bed."

Merriam-Webster defines blanket as "1 a: a large usually oblong piece of fabric used as a bed covering." *Blanket,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/ blanket (last visited Oct. 4, 2024). The American Heritage Dictionary defines blanket as "1. A large piece of woven material used as a covering for warmth, especially on a bed." *Blanket,* AHDICTIONARY.COM, https://www.ahdictionary.com/word/search.html?q=blanket (last visited Oct. 4, 2024).

The undisputed material facts show that The Comfy®'s physical features do not comport with the common meaning of a blanket. *R.T. Foods*, 757 F.3d at 1354. Unlike most blankets, The Comfy® is not oblong. *See* Physical Sample; Schedule C, ¶¶ 6-7. Unlike a blanket, The Comfy® features an opening for the head, a hood, long-sleeves with ribbed cuffs, a frontal kangaroo pouch pocket open at both ends, and an opening for the waist. Physical Sample; Schedule C, ¶ 6. Unlike a blanket which is typically put on a bed or simply laid over a person's body, The Comfy® is worn by a person by pulling it over one's head, extending the arms through the sleeves, and optionally placing the hood on the head. Physical Sample; Schedule C, ¶ 10. Unlike a blanket, The Comfy®'s back panel is longer than the front panel. Physical Sample; Schedule C, ¶ 7. Unlike a blanket, The Comfy® is worn on the body of the user like an article of clothing. Physical Sample; Schedule C-2, ¶ 7. A comparison of the physical features

of a blanket and of The Comfy® therefore leads to the conclusion that The Comfy® does not match the common meaning of the tariff term "blanket".

Although it is unnecessary to consider use because a review of The Comfy®'s physical features is sufficient to show that it is not a blanket, The Comfy®'s use does not comport with the use of a blanket. Indeed, The Comfy® is intended to allow users who wear it to perform activities that are not feasible with a blanket. Physical Sample; Schedule C, ¶¶ 17-18. Further, Cozy Comfort has marketed and patented The Comfy® as a garment, specifically a sweatshirt. Schedule C, ¶ 15.

All the foregoing facts further establish that The Comfy® is not a blanket, and therefore not properly classified in heading 6301, HTSUS.

**B. The Comfy® Is Readily Distinguishable From The Merchandise At Issue In *Allstar***

In addition, The Comfy® is readily distinguishable from the merchandise considered by the *Allstar* Court. 211 F.Supp.3d at 1319. At issue in that case was The Snuggie®, which consisted of a 71-by-54-inch rectangular piece of polyester fleece knit fabric, with 28.5-inch sleeves attached to the front. *Id.* at 1333. A photograph of The Snuggie® being worn appears on its packaging in the photograph below:

28



*Allstar Marketing Group LLC v. United States*, Court No. 13-00395, Def. Resp. and Cross-Mot. to Mot. for Summ. Judg. (ECF No. 42-1, Ex. A, at 2).

Based on the unique characteristics of the Snuggie®, the *Allstar* Court concluded that its design, features, use, sales information, and marketing were of a blanket, albeit an improved one with sleeves. 211 F.Supp.3d at 1334-1335. The Court first found that the Snuggie®'s physical features, such as its dimensions and lack of rear closure, did not resemble an article of apparel. *Id.* at 1334. Second, the Court found that the Snuggie®'s design was inspired by blankets. *Id.*

Third, the Court found that the Snuggie®'s use was similar to that of a blanket because it was loosely worn as an outer layer to cover the front of the user. *Id.* Finally, the Court found that the Snuggie®'s sales and marketing referred to The Snuggie® as a blanket, and not as apparel. *Id.* For all these reasons, the Court essentially found that the Snuggie® was an improved blanket, also because the loose sleeves were "incidental" to the Snuggie®'s use as a blanket and the sleeves were "not so substantial as to transform the Snuggie® into something other than a blanket." *Id.* at 1337.

The Snuggie®'s physical features differ significantly from The Comfy®'s, however. To begin, the inventors of The Comfy® stated in 2017 that it "is absolutely not the Snuggie®." C-2, ¶ 9. In fact, the dimensions of the Snuggie® are very different from The Comfy®, which is not rectangular. *Compare* Physical Sample of The Comfy® with photograph above of the Snuggie®, or with *Allstar* model of the Snuggie® lacking a hood, a back, and pockets; *Allstar*, 211 F.Supp.3d at 1333. The Snuggie®'s dimensions are larger than The Comfy®'s: the Snuggie®'s 71-inch longest dimension is larger than The Comfy®'s (41 inches), and the Snuggie®'s shortest dimension (54 inches) is also longer than The Comfy®'s shortest dimension (33 inches). The shape and dimensions of The Comfy® considered together are also significantly different to the Snuggie®'s simple, longer, rectangular design: the front panel of The Comfy® measures approximately 36 inches wide and 33 inches long from the bottom of the neck hole to the bottom of the panel, and the back panel is longer than the front panel, given that the back panel measures approximately 36 inches wide and 41 inches long from the bottom of the neck hole to the bottom of the panel. Physical Sample; Schedule C, ¶ 7. Further, unlike The Comfy®, the Snuggie® was completely open with no closure in the back; therefore, it could only be used on the front side of the person. Physical Sample; Schedule C-2, ¶ 89; *Allstar,* 211

F.Supp.3d at 1333.  Unlike The Comfy®, the Snuggie® lacked a neck hole, waist opening, ribbed cuffs, a hood, and a marsupial pocket in the front.  Physical Sample; Schedule C-2, ¶ 89; *Allstar*, 211 F.Supp.3d at 1333.  Unlike The Comfy®, the Snuggie® had loose-fitting sleeves, which differ from The Comfy®'s more fitted sleeves.  *See* Physical Sample; Schedule C-2, ¶ 89; *Allstar*, 211 F.Supp.3d at 1333.

Aside from the substantial differences in their physical features, the Snuggie® is also distinguishable from The Comfy® in terms of their design, use, and marketing.  The Snuggie®'s design was inspired by the Slanket® and the Freedom Blanket, two products that are marketed as blankets, whereas The Comfy®'s design was inspired by a garment, specifically an XL hooded sweatshirt.  Physical Sample; Schedule C, ¶ 3; Schedule C-2, ¶ 24; *Allstar*, 211 F.Supp.3d at 1334.  Whereas the Snuggie® was used and was designed to be used primarily inside the home, The Comfy® is used and was designed to be used both inside and outside the home, including while performing a number of different outdoor activities such as walking the dog, ice skating, tailgating, and outside chores that cannot be performed with a blanket.  Schedule C-2, ¶¶ 18, 20; *Allstar*, 211 F.Supp.3d at 1333-35.  While the Snuggie® was designed to be draped over the front of users bodies' with their arms through the loose sleeves and used primarily while reclining or seated on an airplane, couch, bed, and floor, and engaging in largely sedentary activities such as reading, writing, knitting, holding a remote control, using a laptop, holding a baby, and playing backgammon, it could also be worn while standing and pouring coffee in the kitchen.  *Allstar*, 211 F.Supp.3d at 1325-26.  In stark contrast, The Comfy® is worn by pulling it over one's head and placing the arms through the long sleeves with ribbed cuffs and pulling it down to cover the torso, and The Comfy® is used for all kinds of activities—not just sedentary ones—such as ice skating, holiday activities at the park, tailgating, outside chores (like raking

leaves), outside play (like jumping in freshly raked leaf piles), pumpkin picking, hayrides, corn

mazes, dancing, walking the dog, getting the mail, and raiding the fridge for snacks.  Schedule C

¶¶ 10, 18.

Moreover, whereas the Snuggie® was referred to as a blanket, not apparel, in discussions

with the foreign vendor and in purchase orders, specifications, and commercial and retail

invoices, The Comfy® has been referred to as a garment or apparel in commercial invoices.

Schedule C-2, ¶ 4; *Allstar*, 211 F.Supp.3d at 1334.  Moreover, at least four of the manufacturers

of The Comfy® call themselves garment or clothing companies.  Schedule C-2, ¶ 33.  In

addition, Cozy Comfort's confidential internal business documentation shows that The Comfy®

was sold at various apparel stores between 2018 and 2022.  Schedule C-2, ¶ 34.

Finally, Cozy Comfort regularly described The Comfy® as a sweatshirt or garment in its

trademarks and patents.  Schedule C, ¶¶ 22, 24-28, 30; 211 F.Supp.3d at 1334.  Cozy Comfort

called The Comfy® "The Blanket . . . That's A Sweatshirt" in one of its federally registered

trademarks.  Schedule C, ¶¶ 22, 24.  Cozy Comfort obtained a federal trademark registration,

Reg. No. 5,678,126, for the following trademark:



*Id.*  Cozy Comfort's trademark No. 5,678,126 was described as "consist[ing] of an image of a

standing panda bear wearing a hooded sweatshirt[.]"  Schedule C, ¶ 24.  Cozy Comfort used the

trademark on its website, its product labeling for The Comfy®, in a promotional video, and during its co-founders' appearance on the television show Shark Tank. Schedule C-2, ¶ 26. Cozy Comfort describes The Comfy® as a garment or overgarment in two of its patents, which were issued by the United States Patent and Trademark Office. Schedule C, ¶ 25. Cozy Comfort was granted U.S. Patent No. 10,420,431 on September 24, 2019, which is entitled "Overgarment with an elevated marsupial pocket." Schedule C, ¶ 28. Although in U.S. Patent No. 10,420,431, the applicant described the field of the invention as relating to blankets or large, wearable blankets, the covered product is consistently referred to as a "garment" or an "overgarment" throughout the patent. Schedule C, ¶ 29. All claims of U.S. Patent No. 10,420,431 are directed to an overgarment. Schedule C, ¶ 30. Cozy Comfort's Patent No. D859,788 is entitled "Enlarged over-garment with an elevated marsupial pocket" and the covered product is consistently referred to as an "enlarged over-garment" throughout the patent, and it is not referred to as a blanket anywhere in the patent. Schedule C, ¶ 26-27.

For all the reasons noted above, The Comfy® has numerous characteristics that distinguish it from the features of a blanket. Therefore, The Comfy® is not properly classified under heading 6301.

### C. The Comfy® Is Not Properly Classified Under HTSUS Heading 6307("Other Made Up Articles, Including Dress Patterns")

Plaintiff also claims that the subject merchandise is classifiable under subheading 6307.90.98, HTSUS. Compl. ¶ 32; Schedule D-1. Heading 6307, HTSUS, provides for: "Other made up articles, including dress patterns." As the term "Other" suggests, heading 6307 is not a specific provision, and is instead a basket provision. *See R.T. Foods*, 757 F.3d at 1354; *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002). "[C]lassification of

imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *R.T. Foods*, 757 F.3d at 1354.

The tariff term "made up" is defined in Note 7 to Section XI, which covers Chapter 63, HTSUS. Note 7 to Section XI provides, in relevant part: "For the purposes of this section, the expression "made up" means: ". . . (b) Produced in the finished state, ready for use (or merely needing separation by cutting dividing threads) without sewing or other working (for example, certain dusters, towels, tablecloths, scarf squares, blankets)." The ENs to heading 6307 also explain, in relevant part: "This heading covers made up articles of any textile material which are not included more specifically in other headings of Section XI or elsewhere in the Nomenclature." EN 63.07 (2017).

As noted above, heading 6307, HTSUS, is a basket provision covering "other made up articles" not described in any other heading of the HTSUS. The Comfy®, however, is described by the terms "pullover" and "similar articles" of heading 6110, HTSUS. As such, pursuant to the rules governing the classification of merchandise under basket provisions, as well the ENs to heading 6307, which instruct that the heading "covers made up articles of any textile material which are not included more specifically in other headings," The Comfy® must be excluded from classification under the basket heading 6307 and classified under the specific terms of heading 6110.

### D. The Comfy® Is Not Properly Classified Under HTSUS Heading 6114 ("Other Garments, Knitted Or Crocheted")

Plaintiff also claims that the subject merchandise is classifiable under subheading 6114.30.30, HTSUS. Compl. ¶ 36; Schedule D-1. Heading 6114, HTSUS, provides for "Other garments, knitted or crocheted." The ENs to heading 6114 explain, in relevant part: "This heading covers knitted or crocheted garments which are not included more specifically in the

preceding headings of this Chapter."  EN 61.14 (2017).  Like heading 6307, this heading is also a basket provision that is only appropriate if there is no tariff category that covers the merchandise more specifically.  *See R.T. Foods*, 757 F.3d at 1354; *Rollerblade*, 282 F.3d at 1354.

As the evidence shows, The Comfy® is a knitted garment with long sleeves, front and back panels, ribbed cuffs, a hood, and a marsupial pocket; is worn by being pulled over one's head; covers the upper parts of the body; provides warmth to the wearer; is suitable for wear over either undergarments or other clothing; and does not protect against wind, rain, or extreme cold. As such, The Comfy® is described by the terms "pullover" and "similar articles" of heading 6110, HTSUS; therefore, The Comfy® is excluded from classification under heading 6114, which is a basket provision for garments not included more specifically in the preceding headings.

### E.   The Comfy® Is Not Properly Classified Under HTSUS Heading 6108 ("Women's Or Girls' Slips, Petticoats, Briefs, Panties, Night Dresses, Pajamas, Negligees, Bathrobes, Dressing Gowns And Similar Articles, Knitted Or Crocheted")

In the proposed September 12, 2024 pretrial order, plaintiff suggests for the first time that The Comfy® is a "robe" and is classifiable under heading 6108, HTSUS, even though the term "robe" is not an exemplar of this heading.  *See* Schedule D-1.  Instead, heading 6108 includes "bathrobes."  The similar articles of heading 6108 are best viewed as female undergarments and/or garments that provide modesty.  In contrast, The Comfy®, although worn indoors, is also marketed by plaintiff for and used by consumers outdoors, rather than promoted as an undergarment or one that provides modesty.  Moreover, the exemplars of heading 6108 do not possess hoods, ribbed cuffs, or kangaroo pockets.  Thus, The Comfy® is not described by the exemplars of heading 6108 and does not fall within "similar articles" to those exemplars. Therefore, The Comfy® is not properly classified in this heading.

## <u>CONCLUSION</u>

As the evidence and absence thereof at trial will show, the facts and law confirm that The

Comfy® is a "pullover", "sweatshirt", or "similar article" under heading 6110, HTSUS, that does

not protect from extreme cold.  For all the foregoing reasons, we respectfully request that the

Court find that The Comfy® is properly classified under subheading 6110.30.30, HTSUS, enter

judgment for the United States, and dismiss the action.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:    /s/ Aimee Lee
        AIMEE LEE
        Assistant Director

/s/ Beverly A. Farrell
BEVERLY A. FARRELL
Senior Trial Attorney

</div>

*Of Counsel*:                       /s/ Brandon A. Kennedy
Michael Anderson              BRANDON A. KENNEDY
General Attorney               Trial Attorney
Office of the Assistant Chief Counsel   Department of Justice, Civil Division
International Trade Litigation       Commercial Litigation Branch
U.S. Customs and Border Protection    26 Federal Plaza, Room 346
New York, New York 10278       New York, New York 10278
                                Tel.: (212) 264-9237 or 9230
                                *Attorneys for Defendant*

Dated: October 16, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF COMPLIANCE

I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Pretrial Summary Memorandum of Law, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 11,101 words.

/s/ Brandon A. Kennedy
BRANDON A. KENNEDY