FORM SCP 1-1

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

|  |  |
|---|---|
| COZY COMFORT COMPANY, LLC,<br><br>                              Plaintiff,<br><br>                    v.<br><br>THE UNITED STATES,<br><br>                              Defendant. | COURT NO.: 22-00173 (SAV) |

## <u>PRETRIAL ORDER</u>

At the pretrial conference held on October 11, 2024, before the Hon. Stephen A. Vaden, Judge, and attended by counsel, the following matters were discussed and agreed to, and are hereby ORDERED:

1.     <u>General</u>. The parties recognize that this joint pretrial order controls the subsequent course of the action unless the order is modified by consent of the parties and the Court, or by order of the Court to prevent manifest injustice. The attached schedules, each on a separate sheet, are part of this order.

2.     <u>Parties and Counsel</u>. Schedule A sets forth the names of all parties; the names, addresses, email addresses, and telephone numbers of their respective attorneys, and the names of the trial counsel for each party.

3.     <u>Jurisdiction</u>. Schedule B-1 sets forth the statutes, legal doctrines, and facts on which Plaintiff claims jurisdiction. Schedule B-2 indicates which of these, if any, are contested.

4.     <u>Uncontested Facts</u>. All material facts that are without substantial controversy are set forth in Schedule C. Material facts that are actually and in good faith controverted, and which a party intends to establish at trial, are separately listed in Schedules C-1 and C-2. Facts not included in these schedules may be established at trial, provided prompt notice is given to all parties and to the Court, and on showing of good cause. Objections to fact, and the grounds therefor, are separately stated as objections in Schedules I-1 and I-2.

5.     <u>Claims and Defenses</u>. The parties' claims and defenses are separately listed in Schedules D-1 and D-2.

6.     <u>Damages and Other Relief</u>. Claims with respect to damages and other relief sought by each party are detailed in Schedules E-1 and E-2.

FORM SCP 1-2

7.    Waiver of Claims. The parties waive all claims with respect to liability, damages, and other relief and all affirmative defenses which are not set forth in Schedules D and E.

8.    Triable Issues. Schedule F sets forth and separately numbers the issues of the case, without simply restating the disputed facts. All legal issues are to be addressed prior to the commencement of the trial. For legal issues the parties cannot agree as to, their separate statement of the issues are set forth in Schedules F-1 and F-2. Objections to legal issues, and the grounds therefor, are separately stated as objections in Schedules I-1 and I-2.

9.    Witnesses. Schedules G-1 and G-2. list for the respective parties the witnesses they will or will probably call to testify at the trial, setting forth for each witness (a) name, (b) address, (c) a summary of expected testimony, and, for expert witnesses, (d) a curriculum vitae, and (e) the area of expertise. Objections to witnesses, and the grounds therefor, are separately stated as objections in Schedules I-1 and I-2.

10.    Deposition Testimony. The parties submitted deposition designations, objections, counter designations, along with highlighted copies of the designated transcripts on October 4, 2024, at Docket 72.

11.    Exhibits. Schedule H lists the parties exhibits to be offered into evidence at trial. Plaintiff's exhibits are identified by P#, Defendant's identified by D. Except for exhibits a party intends to use during cross examination, or rebuttal, the parties recognize that they will not be allowed to use at trial any exhibits or witnesses not identified in this pretrial order except on prompt notice to all parties and to the Court, and on a showing of good cause. Objections to exhibits, and the grounds therefor, are separately stated as objections to Schedule I-1 and I-2.  The parties have agreed the following exhibits from Schedule H attached hereto are admitted into evidence: P1-9, P17-22, D5-7, D23 and D25-26. By approving this Order, the Court does not rule on the admissibility of any of the proposed exhibits. Such rulings will occur at Trial.

12.    Objections. Schedules I-1 and I-2 list for the respective parties' objections and the specific grounds for each objection, to facts, issues, witnesses, and exhibits, including each adversary's exhibits whose authenticity or admissibility are contested.

13.    Discovery. All discovery is complete. Undisclosed discovery which surfaces during trial will be deemed untimely and may be subject to the sanction of exclusion.

14.    Jury Trial. This is a bench trial.

15.    Pretrial Summary Memoranda: The parties submitted pretrial summary memoranda on October 16, 2024, at Docket XX and Docket XX containing: (1) a statement of the material facts the party intends to establish at trial, (2) a description of the evidence the party intends to introduce at trial support those material facts, and (3) a discussion addressing the material facts, evidentiary issues, and legal issues that remain in dispute.

16.    <u>Trial Time</u>. The trial is scheduled for 5 days, beginning on October 21st, 2024, and ending on October 25th, 2024.

Dated: _____
                New York, New York

Approved and Consented To:

/s/ Christopher J. Duncan
CHRISTOPHER J. DUNCAN
Stein Shostak Shostak Pollack & O'Hara
Attorneys for Plaintiff
865 South Figueroa Street, Suite 1388
Los Angeles, California 90017
Telephone: (213) 630-8888
Fax: (213) 630-8890
E-Mail: cduncan@steinshostak.com
*Attorneys for Plaintiff*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

BEVERLY FARRELL   Digitally signed by BEVERLY FARRELL
                  Date: 2024.10.18 19:36:20 -04'00'
BEVERLY A. FARRELL
Senior Trial Attorney
BRANDON          Digitally signed by BRANDON
KENNEDY          KENNEDY
                 Date: 2024.10.18 19:22:59 -04'00'
BRANDON A. KENNEDY
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
*Attorneys for Defendant*

**Approved: /s/ Stephen Alexander Vaden**
**Judge**

**Dated: October 21, 2024**
**New York, NY**

## **SCHEDULE A**

## **PARTIES AND COUNSEL**

| | |
|---|---|
| **Plaintiff:** | Cozy Comfort Company, LLC |
| Attorneys and Trial Counsel: | Christopher J. Duncan, Esq. |
| | cduncan@steinshostak.com |
| | |
| | Elon A. Pollack, Esq. |
| | elon@steinshostak.com |
| | |
| | Stein Shostak Shostak Pollack & O'Hara, LLP |
| | 865 South Figueroa Street, Suite 1388 |
| | Los Angeles, California 90017 |
| | (213) 630-8888 |
| Trial Counsel: | Greg Sitrick, Esq. |
| | gsitrick@messner.com |
| | |
| | Isaac S. Crum, Esq. |
| | icrum@messner.com |
| | |
| | Sharif S. Ahmed, Esq. |
| | sahmed@messner.com |
| | |
| | Messner Reeves, LLP |
| | 7250 N. 16th Street, Suite 410 |
| | Phoenix, AZ 85020 |
| | (602) 457-5059 |
| **Defendant:** | United States |
| Attorneys and Trial Counsel: | Brandon A. Kennedy, Esq. |
| | brandon.a.kennedy@usdoj.gov |
| | |
| | Beverly A. Farrell, Esq. |
| | beverly.a.farrell@usdoj.gov |
| | |
| | U.S. Department of Justice, Civil Division |
| | Commercial Litigation Branch |
| | 26 Federal Plaza, Suite 346 |
| | New York, New York 10278 |
| | (212) 264-9237 |

<u>Of Counsel</u>:                        Michael Anderson, Esq.
                                Office of the Assistant Chief Counsel
                                International Trade Litigation
                                U.S. Customs and Border Protection
                                26 Federal Plaza, Suite 258
                                New York, New York 10278
                                (718) 916-4271

## **SCHEDULE B**

## **JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) because Cozy Comfort

contests CBP's denial of its protest of the tariff classification of its merchandise. 28 U.S.C. §

1581(a).

## SCHEDULE C

## UNCONTESTED FACTS

1.      The subject merchandise is commercially known as The Comfy® or The Comfy® Original.

2.      The subject merchandise is a product of China.

3.      The Comfy® was inspired by a men's XL hooded sweatshirt and a sherpa blanket.

4.      The Comfy® is knitted and made from 100% man-made fibers, specifically polyester.

5.      The Comfy® is made using two separate knitted fabrics: a microfiber fabric (microfleece) for the exterior and a sherpa fabric for the interior that provides extra warmth to the user.

6.      The Comfy® has an opening for the head, a hood, long sleeves, ribbed wrist cuffs, a wide, un-ribbed, hemmed bottom opening, and a frontal marsupial or kangaroo pocket.

7.      The front panel of The Comfy® measures approximately 36 inches wide and 33 inches long from the bottom of the neck hole to the bottom of the panel. The back panel measures approximately 36 inches wide and 41 inches long from the bottom of the neck hole to the bottom of the panel.

8.      The Comfy® is reversible.

9.      The Comfy® is one-size-fits-all.

10.     To wear The Comfy®, users pull it over their heads, extend their arms through the sleeves, and have the option of placing the hood over their heads.

11.     The Comfy® is intended to be worn over clothes or undergarments.

12.     The Comfy® is intended to provide warmth to its users.

13.    The Comfy® does not provide protection against rain or wind.

14.    The Comfy® is unisex, and it is intended to be used by people of all genders.

15.    The Comfy® has been marketed as a "blanket that's a sweatshirt"; "a giant blanket that's a giant sweatshirt"; "a giant blanket that's really a giant sweatshirt"; "The Blanket . . . That's A Sweatshirt"; and as "The Original Blanket/Sweatshirt".

16.    The Comfy® has been marketed as a wearable blanket.

17.    Cozy Comfort's marketing includes that The Comfy® allows users who wear The Comfy® to perform activities that are not feasible with an ordinary blanket.

18.    The Comfy® is intended and marketed for use both while relaxing and while doing activities such as: ice skating; holiday activities at the park; tailgating; dinner party hosting; outside chores, like raking leaves; outside play, like jumping in the freshly raked leaves; pumpkin picking; pumpkin carving; hayrides; corn mazes; dancing; walking the dog; getting the mail; cheering on the sidelines; and raiding the fridge for snacks.

19.    In February 2017, Michael and Brian Speciale invented The Comfy® in Phoenix, Arizona.

20.    In April 2017, Michael and Brian Speciale created Cozy Comfort Company, LLC ("Cozy Comfort") to produce, market, and sell The Comfy®.

21.    In April 2017, Michael and Brian Speciale pitched The Comfy® on the television show Shark Tank and investor Barbara Corcoran decided to invest in The Comfy®.

22.    On March 29, 2018, Cozy Comfort applied for a trademark which it described as consisting of "an image of a standing panda bear to the left of the words 'THE COMFY' all of which is above the words "THE BLANKET... THAT'S A SWEATSHIRT!.""

23.    The trademark was first used in commerce on December 3, 2017.

24.     On February 19, 2019, the U.S. Patent and Trademark Office (USPTO) registered Trademark Reg. No. 5,678,126 to Cozy Comfort under Class 24, "Blanket throws, namely, whole body blankets," and Class 35, "On-line retail store services featuring blanket throws, namely, whole body blankets," and stated "The mark consists of an image of a standing panda bear wearing a hooded sweatshirt to the left of the words 'THE COMFY' all of which is above the words 'THE BLANKET...THAT'S A SWEATSHIRT!'"

25.     Cozy Comfort describes The Comfy® as a garment or overgarment in two if its patents, which were issued by the United States Patent and Trademark Office (USPTO): Patent Nos. D859,788 and 10,420,431.

26.     On September 19, 2019, the USPTO issued Design Patent No. D859,788 to Cozy Comfort for an "ENLARGED OVER-GARMENT WITH AN ELEVATED MARSUPIAL POCKET."

27.     The covered product in U.S. Patent No. D859,788 is referred to as an "enlarged over-garment" throughout the patent and it is not referred to as a blanket in the patent.

28.     On September 24, 2019, the USPTO issued Patent No. 10,420,431 to Cozy Comfort for an "OVERGARMENT WITH AN ELEVATED MARSUPIAL POCKET."

29.     In U.S. Patent No. 10,420,431, Cozy Comfort described the field of the invention as relating to blankets or large, wearable blankets and the covered product is referred to as a "garment" or an "overgarment" throughout the patent.

30.     All the claims of U.S. Patent No. 10,420,431 are directed to overgarments.

31.     No patents for The Comfy® include a description that it is for "protection against extreme cold."

32.     On or about March 9, 2020, U.S. Customs and Border Protection (CBP) issued Notices of Action reclassifying several entries of The Comfy® original from HTSUS subheading 6301.40.0020 (blankets) to HTSUS subheading 6110.30.3059 (pullovers).

33.     On August 26, 2020, Cozy Comfort filed Protest No. 2704-20-141606.

34.     On January 6, 2021, as CBP directed in its Notice of Action, Cozy Comfort entered The Comfy® at issue in this case under Entry No. 442-9233932-0 and classified it in HTSUS subheading 6110.30.3059 (pullovers).

35.     On May 21, 2021, following Cozy Comfort's request for further review arising from Protest No. 2704-20-141606, CBP issued Headquarters Letter Ruling (HQ) 313594 deciding that The Comfy® is properly classified in HTSUS subheading 6110.30.3059 (pullovers).

36.     On June 17, 2021, Cozy Comfort requested from the USPTO that Trademark Reg. No. 5,678,126 be surrendered in its entirety.

37.     On December 9, 2021, the USPTO cancelled the registration for Trademark Reg. No. 5,678,126 pursuant to Cozy Comfort's June 17, 2021, request.

38.     On May 20, 2022, Cozy Comfort timely filed Protest No. 2704-22-160430 contesting CBP's liquidation of The Comfy® in HTSUS subheading 6110.30.3059 (pullovers) in Entry No. 442-9233932-0.

39.     On May 31, 2022, CBP denied Protest No. 2704-22-160430.

40.     On November 15, 2022, at Cozy Comfort's request, the USPTO issued Design Patent No. D969,458 to Cozy Comfort for "WHOLE BODY BLANKET."

<u>SCHEDULE C-1</u>

<u>PLAINTIFF'S MATERIAL FACTS TO BE ESTABLISHED AT TRIAL</u>

1.      The subject merchandise is commercially known as The Comfy® or The Comfy® Original.

2.      The Comfy® is knitted.

3.      The Comfy® is made from 100% man-made fibers, specifically polyester.

4.      The Comfy® is made using two separate knitted fabrics: a microfiber fabric (microfleece) for the exterior and a sherpa fabric for the interior.

5.      The Comfy® has both microfleece and sherpa layers.

6.      The Comfy® has a sherpa lining used to provide extra warmth to the wearer.

7.      The front panel of The Comfy® measures approximately 36 inches wide and 33 inches long from the bottom of the neck hole to the bottom of the panel.

8.      The back panel of The Comfy® measures approximately 36 inches wide and 41 inches long from the bottom of the neck hole to the bottom of the panel.

9.      The Comfy® is one-size-fits-all.

10.     The Comfy® is unisex, and it is intended to be used by people of all genders.

11.     The Comfy® has been marketed as a wearable blanket.

12.     The Comfy® is a wearable blanket.

13.     The Comfy® users can pull their arms inside against their bodies inside The Comfy® to keep warm.

14.     The Comfy® users can pull their legs up against their bodies inside The Comfy® to keep warm.

15.     The Comfy® protects against extreme cold.

16.     The Comfy® is designed to be a blanket.

17.     The Comfy® is produced by factories without the word "garment" in their names.

18.     83% of The Comfy® purchasers of are women.

19.     The Comfy® extends to the knees or below on the average user.

20.     The Comfy® does not have a ribbed waistband.

21.     The Comfy® loosely drapes over the user rather than fitting over the body.

22.     The Comfy® is marketed as a blanket.

23.     The Comfy® is sold nearly exclusively in the home furnishings and/or bedding departments of online and brick and mortar stores and is typically not sold in the apparel, clothing or garment departments.

24.     Companies including Disney, Marvel, and the National Hockey League executed licensing agreements with Cozy Comfort allowing Cozy Comfort to produce The Comfy® using their registered trademarks only on blankets, not apparel, clothing, or garments.

25.     Less than one percent of the companies who purchase The Comfy® have the words "garment," "apparel," or "clothing" in their names.

26.     The Comfy® is used as a blanket.

27.     The Fashion Institute of Technology classifies The Comfy® in the intimate apparel specialty class, which includes robes.

28.     In June 2008, CBP published an Informed Compliance Publication entitled "What Every Member of the Trade Community Should Know: Classification: Apparel Terminology under the HTSUS," stating as follows: "[Sweaters (6110, 6111)] excludes garments that have a sherpa lining or a heavyweight fiberfill lining (including quilted lining), which are used to

provide extra warmth to the wearer. Such garments, whether or not they have a sweater stitch-count, are classified in heading 6101 or 6102."

29.     In February 2017, Michael and Brian Speciale invented The Comfy® in Phoenix, Arizona.

30.     In March 2017, Michael and Brian Speciale hired Barry Heim of ProtoSew to construct a prototype of The Comfy® made from blankets with microfleece on one side and sherpa on the other.

31.     In April 2017, Michael and Brian Speciale created Cozy Comfort Company, LLC ("Cozy Comfort") to produce, market, and sell The Comfy®.

32.     In April 2017, Michael and Brian Speciale pitched The Comfy® on the television show Shark Tank and investor Barbara Corcoran decided to invest in The Comfy®.

33.     On February 19, 2019, the U.S. Patent and Trademark Office (USPTO) registered Trademark Reg. No. 5,678,126 to Cozy Comfort under Class 24, "Blanket throws, namely, whole body blankets," and Class 35, "On-line retail store services featuring blanket throws, namely, whole body blankets," and stated "The mark consists of an image of a standing panda bear wearing a hooded sweatshirt to the left of the words 'THE COMFY' all of which is above the words 'THE BLANKET...THAT'S A SWEATSHIRT!'"

34.     On September 19, 2019, the USPTO issued Design Patent No. D859,788 to Cozy Comfort for an "ENLARGED OVER-GARMENT WITH AN ELEVATED MARSUPIAL POCKET."

35.     On September 24, 2019, the USPTO issued Patent No. 10,420,431 to Cozy Comfort for an "OVERGARMENT WITH AN ELEVATED MARSUPIAL POCKET."

36.    Prior to March 9, 2020, Cozy Comfort entered The Comfy® classified under HTSUS subheading 6301.40.0020 (blankets) with commercial invoices describing The Comfy® as a "utility blanket."

37.    On or about March 9, 2020, CBP issued Notices of Action reclassifying several entries of The Comfy® original from HTSUS subheading 6301.40.0020 (blankets) to HTSUS subheading 6110.30.3059 (pullovers).

38.    On August 26, 2020, Cozy Comfort filed Protest No. 2704-20-141606.

39.    On December 22, 2020, at Cozy Comfort's request, the USPTO issued Design Patent No. D905,380 to Cozy Comfort for "WHOLE BODY BLANKET."

40.    On January 6, 2021, as CBP directed in its Notice of Action, Cozy Comfort entered The Comfy® at issue in this case in Entry No. 442-9233932-0 classified in HTSUS subheading 6110.30.3059 (pullovers).

41.    On May 21, 2021, following Cozy Comfort's request for further review arising from Protest No. 2704-20-141606, CBP issued Headquarters Letter Ruling (HQ) 313594 deciding that The Comfy® is properly classified in HTSUS subheading 6110.30.3059 (pullovers).

42.    The CBP official who drafted HQ 313594 did not examine The Comfy® prior to drafting the decision.

43.    On May 20, 2022, Cozy Comfort timely filed Protest No. 2704-22-160430 contesting CBP's liquidation of The Comfy® in HTSUS subheading 6110.30.3059 (pullovers) in Entry No. 442-9233932-0.

44.    On May 31, 2022, CBP denied Protest No. 2704-22-160430.

45.    On November 15, 2022, the USPTO issued Design Patent No. D969,458 to Cozy Comfort for "WHOLE BODY BLANKET."

46.    The Comfy® is not a pullover.

47.    The Comfy® is not a sweater.

48.    The Comfy® is not a sweatshirt.

49.    The Comfy® is not a jacket.

50.    The Comfy® is not a waistcoat.

51.    The Comfy® is not a vest.

52.    The Comfy® is not a typical blanket.

53.    The Comfy® is not a typical garment.

54.    The Comfy® protects the wearer from extreme cold.

55.    The Comfy® provide extra warmth when worn in a cocooning position.

56.    The Comfy® protects the wearers body from coming on direct contact with surfaces.

57.    Extreme cold can cause hypothermia in a person.

58.    Hypothermia can occur indoors from air conditioning.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| COZY COMFORT COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 22-00173 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S ADDITIONAL SCHEDULES
FOR JOINT PROPOSED PRETRIAL ORDER**

**SCHEDULE C-2**

**DEFENDANT'S STATEMENT OF
MATERIAL FACTS TO BE ESTABLISHED AT TRIAL**[1]

1. The merchandise at issue in the present action, The Comfy®, is the same merchandise at issue in Court No. 21-00404 (The Comfy®). D1; D2; D3; D4; D5; D6; D7.

2. The merchandise in Court No. 21-00404 (The Comfy®) was first imported into the United States on July 10, 2019, under cover of Entry No. 9HX-5585266-6. D1; D2; D3; D4.

3. The merchandise at issue in Court No. 21-00404 and covered by Entry No. 9HX-5585266-6, The Comfy®, was protested under Protest No. 2704-20-141606. D1; D2; D3; D4.

---

[1] Any reference in this document to a trial exhibit designated by plaintiff (PXX) currently subject to a Government objection as support for a fact should not be construed as the Government agreeing that any such exhibit has been properly authenticated or is otherwise admissible.

4.  The commercial invoice and packaging list for the merchandise at issue in the present

    action describes the merchandise as "Knit PullOver (Comfy Blue)."  D7; D14 at Cozy

    Comfort 00004–Cozy Comfort 00005.

5.  Below are a photograph and a diagram of The Comfy®:



D14 at Cozy Comfort 00013, 00185.

6.  The dimensions of The Comfy® are provided in the following two images:





D14 at Cozy Comfort 00196.

7.  The Comfy® is worn on the body of the user like an article of clothing.  D10 at 94:1–3

    ("Q.  Do customers put it on in the typical fashion of or similar to an article of clothing?

    A.  Yes."); D12 at 71 (U.S. Provisional App. No. 62/558,136) ("In operation, the garment

    10 is worn on the body of the person 11 like an article of clothing."); P1.

8.  On the 2017 Shark Tank episode featuring The Comfy®, one of the Speciale brothers

    stated that The Comfy® would retail for $39.99 and its production cost was $13 dollars.

    D27 at 3 (Shark Tank Video at 4:23).

9.  On the 2017 Shark Tank episode featuring The Comfy®, one of the Speciale brothers

    stated, in reference to The Comfy®, "It is absolutely not the Snuggie."  D27 at 3 (Shark

    Tank Video at 6:10).

10. The following four photographs depict users wearing The Comfy®.





D10 at 27:10–17, 31:7–33:15; D11.  Michael Speciale, plaintiff's designated agent

pursuant to USCIT R. 30(b)(6), appears in photographs 1, 3, and 4.  D10 at 31:3—33:6.

11. The Comfy® covers the user's torso and typically extends below the waist.  D10 at

    27:10–17, 31:7–33:15; D15, at Cozy Comfort 00013, 00185.

12. The length of The Comfy® below the waist will depend on the user's body size.  *Id.*

13. For some users, The Comfy® will fall mid-thigh or above the knees.  *Id.*

14. For other users, The Comfy® will fall at or below the knees.  *Id.*

15. The following is a photograph of people wearing The Comfy® that appeared on Cozy

Comfort's website:



D27 at 3-4.

16. The Comfy® is not worn for protection against the elements. *See* P1; D8 at 5 ("In HQ

H313594, Customs acknowledges that The Comfy® is a knit garment designed for

warmth with no protection from the weather."); D9 at 653 ("It is neither appropriate nor

useful as exterior clothing in public. If used outside, it could only reasonably be utilized

to cover the body for warmth for a short period of time, like a blanket, during an outdoor

sporting event or while walking a dog. It is designed almost exclusively for use inside a

home or other living quarters.").

17. The Comfy® cannot provide, nor is it intended to be worn for, protection against extreme

cold. *See id; see also* D29; D39.

18. The Comfy® is intended for use both inside and outside the home. D10 at 47:18–21;

D14 at Cozy Comfort 00635–636.

19. The Comfy® is sold online, including on Cozy Comfort's website and on Amazon, in retail brick and mortar stores, through social media, and by live stream.  D13 at 5.

20. Cozy Comfort's marketing distinguishes The Comfy® from traditional blankets based on its functions and features, including that The Comfy® allows users who wear The Comfy® to perform activities that are not feasible with an ordinary blanket.  D21 at 2 ("You can't dance in a blanket.  You can't hug in a blanket.  You can't flip pages of your novel in a blanket without your arms being exposed.  The Comfy is the blanket reinvented!  You can do all of your favorite cold-weather activities with Comfy-ness and ease.").

21. Cozy Comfort has at times marketed The Comfy® as a sweatshirt or a garment.  D10 at 48:14–49:2, 94:4–20; D14 at Cozy Comfort 00012, 00239–261; D20; D23; D27 at 3-4.

22. Cozy Comfort marketed The Comfy® as "The Blanket … That's A Sweatshirt" on its website, its product labeling for The Comfy®, in a promotional video, and during its co-founders' appearance on the television show Shark Tank.  D11; D14 at Cozy Comfort 00012; D27 at 3-4.

23. Cozy Comfort marketed The Comfy® as a "Blanket/Sweatshirt" on its product packaging, as shown in the following image, in which Cozy Comfort describes The Comfy® as "The Original Blanket/Sweatshirt."



D14 at Cozy Comfort 00240.

24. Cozy Comfort markets The Comfy® as a substitute for an oversized sweatshirt.  D20 at

2.  On its website, Cozy Comfort states:

> It's no secret that there is something sensational about
> throwing on a sweatshirt that's 3 sizes too big for you.
> That's literally why we invented The Comfy, a giant
> wearable blanket that feels even better than an oversized
> sweatshirt! Whether you're tired of your favorite sweatshirt
> going missing, or you're tired of them complaining about
> you wearing their sweatshirt, it no longer has to be a
> problem! Trade out their oversized sweatshirt for a

wearable blanket, and it'll be smooth snuggling from here
on out.

*Id.*

25. Cozy Comfort obtained a federal trademark registration, Reg. No. 5,678,126, for

the following trademark:



D23.

26. Cozy Comfort used trademark No. 5,678,126 on its website, its product labeling for The

Comfy®, in a promotional video, and during its co-founders' appearance on the

television show Shark Tank.  D11; D14 at Cozy Comfort 00012; D27 at 3-4.

27. U.S. Patent No. 10,420,431 was filed on September 13, 2018, and is entitled

"Overgarment with an elevated marsupial pocket."  D24 at 1.

28. Although in U.S. Patent No. 10,420,431 the applicant described the field of the invention

as relating to blankets or large, wearable blankets, the covered product is referred to as a

"garment" or an "overgarment" throughout the patent.  D24 at 1 (Abstract) and 19-25,

showing the first paragraph under the heading titled "Summary of the Invention"

providing as follows:

>An overgarment includes a single body constructed from
>two soft, woven fabric plies and a torso in the body.
>Opposed sleeves are attached to the torso at sleeve
>openings, and the sleeves each have a top, an opposed

bottom, and a length. A marsupial pocket on a front of the torso has a top and opposed bottom, the top of the marsupial pocket is above the bottom of each sleeve, and the bottom of the marsupial pocket is below the bottom of each sleeve.

29. U.S. Patent No. D859,788 was filed on September 13, 2017, and is entitled "Enlarged over-garment with an elevated marsupial pocket."  D25 at 2.

30. The sole claim of U.S. Patent No. D859,788 is directed to the ornamental design for an enlarged over-garment with an elevated marsupial pocket, as shown and described in the patent.  D25 at 2; *see also* 3-11.

31. U.S. Patent No. D969,458 was filed on April 11, 2020, and is entitled "Whole body blanket."  P8 at 1.

32. The sole claim of U.S. Patent No. D969,458 is directed to the ornamental design for a whole body blanket, as shown and described in the patent.  P8 at 1-17.

33. The Comfy® has been manufactured by Xiamen Fitex Garment Company, Xiamen Jinshi Export and Import Trade Company, Zhangzhou Luckytex Garment Company, Quanzhou Shengliren Garments and Weaving Company, and Mace Quanzhou Clothing Company. D14 at Cozy Comfort 00056-00180; D10 at 82:10-85:19.

34. Cozy Comfort's internal business documentation shows that The Comfy® was sold at various apparel stores between 2018 and 2022.  *See, e.g.*, D26 at 439 ("Net Sales 2018-2022 . . . Advantage Apparel and Graphics"), 440 ("Elite Custom Apparel"), 441 ("Lazydog Apparel and IMprints") (this information was previously dedesignated as confidential by plaintiff on January 16, 2024; *see* ECF Nos. 40-41).

35. The Comfy® is an oversized hooded pullover intended primarily for indoor relaxing and non-intensive activities.  D29 at 2.

36. The Comfy® can only afford the wearer protection in mild, not-too-cold, not-too-hot, nor rainy or windy weather conditions. *Id.*

37. The Comfy®'s sherpa lining is created on a very porous open weave base. *Id*. at 5.

38. The Comfy®'s lining fabric does not wick properly, thereby preventing protection from extreme cold. *Id*. at 7.

39. Professor Ferro's water test on The Comfy® showed that the sherpa absorbed the moisture immediately but just stayed soaking wet, which shows that the lining could not spread out the moisture like true wicking should do. *Id.*

40. Professor Ferro's water test on The Comfy® showed that the microfleece absorbed and spread the water very quickly, but it did not dry for hours. *Id*. at 8.

41. Professor Ferro's water test on The Comfy®'s microfleece demonstrated to her that it did not have a DWR (durable water repellency) or Teflon finish, that is, a water repellent finish which would also afford better protection from wind, rain, and extreme cold. *Id.*

42. The Comfy® lacks water resistant, water repellent, and waterproof materials. *Id.*

43. If it was winter and Professor Ferro stepped outside into the cold or extreme cold weather while wearing The Comfy® and stayed out for more than a short time, according to the National Weather Service, she could experience frostbite or hypothermia, because The Comfy® lacks the design, materials, and physical features to protect the wearer against extreme cold and wind. *Id*. at 11.

44. In the textile and garment industries, the term "blanket" is not considered something wearable, nor does it include a large marsupial pocket, sleeves, a hood, or ribbed cuffs. *Id.*; D39 at 3.

45. Microfleece and sherpa are not fabrics used exclusively in blankets, and several types of garments employ these fabrics.  D29 at 12-15.

46. The Comfy® is not constructed of sherpa that is blanket fabric, partly because its construction is of lower quality and is too sparse and exposed.  *Id*. at 15.

47. Microfleece that lacks water repellency is not suitable for protection from inclement or extreme cold weather protection.  *Id*.

48. In the garment and textile industries, items that are considered "wearable" are garments.

49. The Comfy® is not typically placed flat on a bed or laid over a person to keep the person warm, as a blanket is typically used.  *Id*. at 16.

50. A claim like Cozy Comfort's that The Comfy® can provide protection from extreme cold could pose a danger to the wearer since the product cannot provide protection from significant—let alone extreme—cold.  *Id*. at 17-18.

51. The Comfy® lacks labels indicating the thermal value of the garment as one would typically see on garments that do provide protection from extreme cold.  *Id*. at 18.

52. Canada Goose is an example of a major manufacturer that makes garments meant for cold, very cold, and extreme cold weather.  *Id*.

53. Canada Goose does not just claim that their products protect from cold, very cold, and extreme cold weather as a marketing claim, but they actually test their garments for cold weather conditions and offer a range of temperatures for best use.  *Id*. (describing range of temperatures displayed at https://www.canadagoose.com/us/en/snow-mantra-parka-9501L.html).

54. Cozy Comfort does not post appropriate wearable temperatures for The Comfy® on its website, unlike Canada Goose which does post the temperature ranges for several products on its website.  D29 at 19.

55. Typical features for a garment that is meant to provide protection from extreme cold include a stand collar to protect the neck and face, a drawstring to pull the hood closer to protect the face, a real fur trim for the hood to protect the face from frostbite, a drawstring inside the wait to pull the coat closer, a drawstring in the hem to close off the cold air and wind from entering the garment, a zipper, a placket covering the zipper, a zipper guard on the inside closing off cold air, wind, and rain that might enter, double-entry pockets with one layer for keeping items safe and another for keeping the hands warm, and clean fitting sleeves under the arms ending with a hidden knit cuff near the hem to keep cold air from traveling up the sleeves.  *Id*. at 19-20.

56. The Comfy® has none of the features that are typical of garments that protect from extreme cold.  *Id*. at 20-22.

57. The Comfy® does not list any technical information on its website nor on the box it is packaged in.  *Id*. at 20.

58. None of The Comfy®'s marketing suggests that it can be worn in extreme cold weather, including for extreme cold activities such as skiing, snowmobiling, ice fishing, or snowshoeing.  *Id*. at 21; D39 at 15; D46 at 7.

59. The Comfy® has a large and low neck opening so that it can be put on over the head. D29 at 21.

60. The Comfy®'s large and low neck opening exposes the wearer's neck to the cold.  *Id*.

61. Without a band or drawstring at the hem of the garment, or a collar at the neck, or a drawstring around the hood, cold air can easily enter the garment. *Id.*

62. Canada Goose's parkas feature a boxy fit that is purposely close to the body so that the layers of fabrics can make contact to create a system of keeping the wearer warm. *Id.* at 21.

63. This system considers heat from the body, wicking, evaporating, the trapping of air, breathability, and resistance to rain, win, and cold. *Id.*

64. In contrast to Canada Goose's parka, The Comfy® is oversized and roomy for a different purpose, which is for more casual and relaxing wear and use. *Id.* at 22.

65. The Comfy® is bulky and static producing, which hinders overt activities. *Id.*

66. The Comfy®'s dimensions and physical features break the cycle of warmth because the cold can get in through the gaps in the oversized, roomy fit. *Id.*

67. The Comfy®'s design and physical features demonstrate that it is primarily intended to be worn indoors for relaxing. *Id.*

68. The Comfy®'s design and physical features also permit it to be worn outdoors, but only in mild weather conditions because it does not protect from the elements such as wind, rain, or significant—let alone extreme—cold. *Id.* at 22, 25.

69. Canada Goose's Trillium Parka is designed for protection from extreme cold, given that the temperatures indicated for wearing it range from 5 degrees Fahrenheit to -13 degrees Fahrenheit, which comports with the National Weather Service's description of extreme cold weather. *Id.* at 23 (describing product details at

https://www.canadagoose.com/us/en/trillium-parka-6660W.html); D30

(https://www.weather.gov/dlh/extremecold).

70.  The Comfy® cannot protect from extreme cold, whether near freezing temperatures in southern states, or well below zero temperatures in northern states.  D29 at 30.

71. According to Cozy Comfort, at least 55% of sales of The Comfy® occur in the Midwest and Northeast regions, in addition to those sold in other northern and western states.  D26 at 205.

72. Given that most sales of The Comfy® occur in northern states, and because cold outerwear garments designed for American consumers are typically designed to be worn anywhere in the country and not just for a particular state or region, and for safety reasons, the more relevant definition of extreme cold for apparel purposes would contemplate temperatures significantly below freezing.  D39 at 7.

73. The natural heating system of the body works better to keep warm in the following conditions:

   a.  When there is a base layer that wicks away moisture such as a wool undershirt. (It could be an undershirt or the lining)

   b.  When the styling is closer to the body, that is, leaves little room for the cold to get in around the body, and minimizes ways for heat to escape.

   c.  When it includes design details that cover-up gaps, such as zip/fly closures, a high stand collar, rain shields, hoods, zip-out liners, etc.

   d.  When it is composed of materials that are made to trap the body's heat such as fleece, down, or fiberfil, which create pockets in their structure that traps the heat.

   e.  If the garment utilizes "hi-tech fabrics" that are engineered to sense the environment inside the garment as in a Gore-Tex membrane system, whereby a membrane bonded to a shell fabric acts like the pores of the skin, either

14

contracting (closing) the interlacing construction of the membrane to keep the heat from escaping or by opening to let the heat out, thereby keeping the inner temperature of the garment evenly comfortable.

f.  Or alternately when the garment utilizes, such as in "smart fabrics", other thermal features such as so called "phase change materials" calibrated to store or release back heat as needed.  D29 at 32-33.

74. The Comfy® does not have any of the above-mentioned features, which demonstrates that it cannot protect from extreme cold.  *Id*. at 33.

75. One example of a phase change material is that of a system of special microscopic capsules embedded in the fabric.  The capsules contain a waxy substance that can change from solid to liquid by sensing the temperature inside a garment.  That substance is calibrated to sense the temperature inside the garment, and so will absorb the excess heat, thus turning the substance to liquid and then releasing and radiating the heat back when the environment inside the garment goes below that temperature, which then changes the substance back to solid, thereby keeping a constant temperature inside the garment.  *Id*.

76. To provide protection from extreme cold, a garment should include a layer of fabric close to the skin or lining that wicks away moisture.  *Id*.

77. Physiologically, moisture (as in perspiration from the body) is meant to keep the body cool when the wearer is too warm, and thus moisture is not desirable in protecting against the cold, let alone extreme cold.  *Id*. at 33-34.

78. In the case of The Comfy®, a "wicking" lining or additional base garment would be needed that can absorb and draw away the moisture from the body as a first line of defense, but The Comfy® lacks such a lining.  *Id*. at 34.

79. A wearer of The Comfy® would therefore be trapped in a wet environment (from the wearer's perspiration) and not be protected from extreme cold. *Id*.

80. The absence of other protective features, like a collar or cinchable hem and hood, also shows that The Comfy® cannot protect the wearer from extreme cold, and these features would have to be added, among others mentioned above, to provide such protection. *Id*.

81. The sherpa lining of The Comfy® is sparsely constructed, and the weave is so open that it can be seen with the naked eye; therefore, a denser weave would be needed to protect from extreme cold weather. *Id*.

82. For protecting the body from extreme cold, the outside layer (shell) of a garment needs to be tightly woven and made water repellent to prevent heat from escaping and to prevent cold, wind, and rain from getting in. *Id*.

83. Microfibers have been used to make a tighter weave that would make the fabric more impervious to wind, cold, and rain, but again, depending on the quality of the fabric. *Id*. at 34-35.

84. The outside fabric of The Comfy® is not a highest quality microfiber; therefore, The Comfy®'s fabric is physically and technically incapable of providing protection from extreme cold, or wind or rain. *Id*. at 35.

85. The construction of The Comfy®'s hood, though somewhat of a protective detail, functions simply like that of a sweatshirt hoodie, which also is not meant to protect the wearer from extreme cold. *Id*.

86. The hood of The Comfy® is of an open construction and without a drawstring to pull it tightly around the face as would be needed in extreme cold weather. *Id*.

87. The Comfy® is an oversized design and has a straight silhouette, with the bottom being wide and lacking a band or drawstring to pull the garment in. *Id*. at 36.

88. Due to the The Comfy®'s wide bottom, it becomes a portal to pull in cold air and wind, thereby defeating the thermal effect of the sherpa lining, and thereby failing to follow another of the "rules" of outerwear design for extreme conditions for keeping a person warm and protected from extreme cold. *Id*.

89. The following are features of the Snuggie® which differ from The Comfy®:

    a.  It is a very long rectangular shape that overlaps the height of the body creating a fold up pocket for the feet.

    b.  It is 71 inches long (as opposed to The Comfy®'s 41 inches) and is not meant to walk around in it.

    c.  It does not have side seams.

    d.  It is totally open on the back.

    e.  The feet are covered when a person uses it.

    f.  It has two over-long "sleeves" that cover over the hands. Although its "sleeves" help it stay to the body, it is not a conventional sleeve.

    g.  There is no collar or hood.

    h.  Although a fleece, the fabric does not seem to be exactly the same. It is called micro mink. It is not lined.

    i.  It functions as a blanket. *Id*. at 38.

90. The National Weather Service's graphic depicting the proper way to dress in extreme cold—the coldest range shown—demonstrates that the amount of layering and other pieces of clothing that are portrayed necessary to protect in extreme cold are far more

than is afforded by The Comfy®.  *Id*. at 44-45; *see also* D31

([https://www.weather.gov/images/wrn/Infographics/Winter-Dress-Infographic.jpg](https://www.weather.gov/images/wrn/Infographics/Winter-Dress-Infographic.jpg)).

91. The photographs of customers selected by Cozy Comfort and shared in discovery do not

show what time of year it was, where they were taken, what the temperature was outside,

how long the individuals portrayed in the photographs stayed outside, or what other

layers the individuals were wearing underneath; as such, these photographs cannot prove

that it was extremely cold in any of those photographs, or that The Comfy® can be safely

worn in extreme cold.  D29 at 45; *see also* P12.

92. These photographs were taken after the first entry of The Comfy® in 2019 and after the

legal dispute with Customs arose, which led to the present court action.  D1; D2; D3; *see*

*also* P12.

93. Designers for outerwear that protects from extreme cold seriously consider the warnings

and suggestions of the National Weather Service for dressing appropriately in extreme

cold.  D29 at 45-46.

94. The Comfy® cannot be relied on to keep a person warm in cold weather, much less

extreme cold weather.  *Id*. at 47.

95. Extreme cold creates a dangerous environment for people.  D39 at 6; *see also* D41

([https://www.cisa.gov/topics/critical-infrastructure-security-and-resilience/extreme-](https://www.cisa.gov/topics/critical-infrastructure-security-and-resilience/extreme-weather-and-climate-change/extreme-cold)
[weather-and-climate-change/extreme-cold](https://www.cisa.gov/topics/critical-infrastructure-security-and-resilience/extreme-weather-and-climate-change/extreme-cold)).

96. Garments designed for protection from extreme cold must have a design and features that

protect the wearers from temperatures low enough that they create a dangerous

environment for people and expose them to the possibility of frostbite or hypothermia.

D39 at 7.

97. Consumers do not typically wear garments that protect from extreme cold—such as winter jackets and parkas—indoors.  *Id.*

98. Parkas are hooded fur garments designed for protection from arctic or extreme cold.  *Id*.

99. Winter jackets that protect the wearer from extreme cold are made of higher quality materials, such as down insulation, technical fabrics, and durable outer shells.  *Id*. at 8.

100.    Down insulation, technical fabrics, and durable outer shells come at a cost significantly higher than the cost of an average or standard jacket or sweatshirt.  *Id*.

101.    The average price range for a garment that protects from extreme cold will vary a great deal, from the low end of approximately $350.00 to the high end of approximately $1,500.00.  *Id*.

102.    Examples of garments that protect from extreme cold are Columbia Sportswear's Women's Icelandite™ Turbo Down Jacket at the retail price of $350.00, Kühl's men's Ükon™ Down Parka at the retail price of $699.00, and Canada Goose's Women's Loretta Parka Black Label at the retail price of $1,475.00.  *Id*.

103.    The price of The Comfy® ($44.99) is not indicative of a product containing the types of quality materials (e.g., weatherproof) and required details and accessories (e.g., hood with drawstring, fur trim) geared towards protecting a person from extreme cold.  *Id*.

104.    None of The Comfy®'s marketing indicates that it protects from extreme cold.  *Id*.

105.    It is common practice for products claiming to protect from extreme cold to market such a quality on their websites.  *Id*.

19

106.    *The Paradigm Expedition Parka* on Canada Goose's website is marketed for extreme cold.  *Id*.

107.    Canada Goose's Paradigm Expedition Parka states the following under Product Details: "The Paradigm Expedition Parka reimagines one of our most iconic silhouettes in two best-selling fabrics for a modern mixed-media style.  It features an adjustable down-filled hood with a removable brim for optimal protection on extreme days and an interior drawcord at the waist for a customized fit and added warmth."  Below this description, it lists "extreme" as -30° C & below & -22° F & below.  *Id*. at 8-9.

108.    If a company goes to the lengths and expense of constructing a garment that protects from extreme cold, the technical specifications and details would also be used in their marketing materials.  *Id*. at 9.

109.    Because marketing a product for protection from extreme cold essentially involves providing a guarantee that such a product can protect a person from frostbite and hypothermia, it is important and expected that the product would be tested for such protection and thereafter provide the temperature ranges at which such a product can safely protect a person in such extreme weather conditions.  *Id*.

110.    Nothing in the record shows that The Comfy® has ever been tested for extreme cold protection.  *Id*.

111.    The Comfy® does not provide any temperature ranges at which the product can safely be used.  *Id*.

112.    Extreme cold for purposes of apparel design can be defined as frigid, intense, bitter, or arctic cold.  *Id*. (citing to definitions available at https://www.merriam-webster.com/dictionary/parka; https://www.merriam-webster.com/dictionary/arctic;

https://www.merriam-webster.com/dictionary/frigid; https://www.merriam-webster.com/dictionary/intense).

113.    Parkas are the types of garments that provide protection from extreme cold because they are typically made up of at least two layers: the lining and the outer shell, which is most commonly made of durable polyester or nylon blends of fabric with special weatherproof coatings that insulate from wind, rain, and extreme cold.  D39 at 9-10.

114.    Parka jackets are made to block out the cold and wind and keep the body heat from escaping.  *Id.* at 10.

115.    A parka should not be too loose, as that would let the cold air in and ruin the jacket's original purpose.  *Id.*

116.    In order to be effective in protecting from extreme cold, a parka should fit well and would never be sold as a "one-size-fits-all" article of clothing.  *Id.*

117.    The Comfy® is "one-size-fits-all" and has a wide opening at the bottom that allows cold air in and does not insulate anywhere as well as a parka, which typically is longer and narrower; therefore, based on its very design, The Comfy® cannot protect from extreme cold.  *Id.*

118.    Homes and other buildings designed for human use in the United States are not typically subject to "extreme cold" temperatures indoors, and people in the United States do not typically wear garments that protect from extreme cold (such as parkas) indoors; such garments are usually exclusively worn outdoors.  *Id.*

119.    The Comfy® cannot—on its own and without the aid of other clothes and layers—provide protection from both "a little cold" indoors—as claimed in The

Comfy®'s patents—as well as from extreme cold outdoors, notably missing from the claims made in the patents.  *Id.*

120.    The physical characteristics of The Comfy® itself, such as its materials, wide and loose opening at the bottom, and wide hood without a drawstring further show that it is not a product that is designed to or actually provides protection from extreme cold.  *Id.* at 11.

121.    There is no evidence in the record of documents, such as product manuals, marketing materials, website pages, patents, or test results, showing that The Comfy® protects from extreme cold.  *Id.*

122.    There is substantial evidence in the record consistently showing that The Comfy® does not protect from extreme cold, such as patents indicating that The Comfy® is meant to provide warmth in situations such as "when the house is a little cold," while at the same time there being no mention of protection from extreme cold in any of plaintiff's patents.  *Id.*

123.    In response to defendant's interrogatory no. 10, "Describe, in detail, how the ultimate purchaser of the imported merchandise expects to use the merchandise, " the plaintiff responded, "The ultimate purchaser expects to use The Comfy® as a wearable blanket in a stable seated or laying position on a chair, couch or bed while, for example, watching television, reading a book, using a mobile phone or laptop, relaxing, or sleeping[,]" which indicates that wearers of The Comfy® expect to use it more indoors than outdoors, given that chairs, couches, beds, and televisions are more commonly found indoors than outdoors, as well as the fact that people typically sleep indoors.  *Id.* at 11-12.

124.     Plaintiff's response to defendant's interrogatory 10 further confirms that wearers

of The Comfy® expect to use it more for additional warmth indoors, and not for

protection from extreme cold outdoors.  *Id.* at 12.

125.     *Standard* blankets do not protect from *extreme* cold.  *Id.* (citing to

https://www.merriam-webster.com/thesaurus/standard).

126.     Given that synonyms for "standard" include average, middle, and ordinary,

standard blankets protect from standard—*i.e.*, average, middle, or ordinary—cold.  D39

at 12.

127.     Sherpa is a synthetic fabric designed to mimic the appearance of Shearling

(wool), but Sherpa lacks the insulating properties found in genuine wool.  *Id.* at 13 (citing

to definition at https://www.merriam-webster.com/dictionary/shearling).

128.     Shearling is defined as skin from a recently sheared sheep or lamb that has been

tanned with the wool left on.  D39 at 13.

129.     The Comfy®'s Sherpa is of a lower-end quality with a loose weave, creating

small gaps which allow cold air to penetrate.  *Id.*; *see also* P1.

130.     The Comfy® lacks the ability to effectively block wind and retain body heat,

which makes it unsuitable for extreme weather conditions, including extreme cold.  D39

at 13.

131.     A different design, better materials, and actual testing showing The Comfy®'s

ability to protect against extreme cold is what is needed to show that such a claim is

capable of being made about this garment.  *Id.* at 15.

132.     According to The Comfy®'s marketing strategy and approach, The Comfy® is

used for relaxing on the couch or doing things like walking the dog, getting the mail,

cheering on the sidelines, dancing in the living room, or raiding the fridge for snacks, and none of these activities are indicative of extreme cold conditions. *Id.*

133.    There is no mention in the record of The Comfy® being used in a cold rainy climate, snowstorm, or extreme cold weather activities and sports such as skiing, snowmobiling, or snowshoeing; if a product were developed to protect from extreme cold, there would be some mention of that in the marketing strategy. *Id.*

134.    A typical user does not throw The Comfy® on in the same way a typical user would not use a sweatshirt as a blanket or throw. *Id.*

135.    The only way to properly use The Comfy® is to wear it as a garment by pulling it over the head, and the plaintiff has indicated as much in its patents and in Mr. Speciale's deposition. *Id.*

136.    The Comfy® has been marketed with the intention to provide some warmth to its users, like a hooded sweatshirt. *Id.* at 16.

137.    There is no evidence in the record that The Comfy® has ever been marketed for protection from extreme cold. *Id.*

138.    The Snuggie® is not put on in the same manner as a regular article of clothing: The Snuggie® is completely open with no closure in the back and could therefore only be "worn" on the front, in the same manner as a blanket. *Id.* at 18.

139.    Although Cozy Comfort has at times marketed The Comfy® as a wearable blanket, Cozy Comfort's marketing has at many times distinguished The Comfy® from traditional blankets as well as similar blanket-like products, like the Snuggie®, based on The Comfy®'s functions and features, including that The Comfy® allows users who

wear The Comfy® to perform activities that are not feasible with an ordinary blanket. *Id.* at 18-19.

140.    Weight and thickness of fabrics are not essential factors in providing warmth, which is why down, due to its lightness in particular, as well as Fiberfil, are superior products for providing warmth in garments and more highly desired for wear in extreme cold. D45 at 5.

141.    CLO is a value that describes the degree of insulation provided by an article of clothing. *Id.* at 6.

142.    There are different reasons to size a garment: measurements of the body, and length for example, neither of which are needed to be considered in the oversized and generic pullover silhouette of The Comfy®. *Id.*

143.    There are garments that are one-size-fits-all. *Id.*; D46 at 6.

144.    An example of a one-size-fits-all garment is Amazon's Allure Apparel crew neck shirt. D46 at 6.

145.    Blankets are often offered in twin, full, queen, and king sizes. D45 at 6.

146.    There are frequent design variations for sweatshirts, with some being banded or not banded, some having or lacking a hood, some being of different lengths, some having or lacking a kangaroo pocket, the presence or absence of a novelty rib trim, etc. *Id.*

147.    Variations of popular or classic designs are a designer's way of refreshing or updating a successful design while keeping the benefit of the original, recognizable design, but these variations in design do not change a product from a pullover, sweatshirt, or similar article into another type of product. *Id.*

148.    The Comfy® is worn, and not draped over the body. D46 at 3.

149.     When something is draped, it is placed around, over, across, or on top of the user, such as draping a coat or shawl over a person's shoulders.  *Id*. at 3.

150.     The Comfy® is not draped on the wearer, as it is not placed across a person's shoulders or over a person's body; instead, it is worn by pulling it over the head and placing the arms into the sleeves with ribbed cuffs.  *Id*.

151.     The fact that The Comfy® is constructed with a layered microfleece exterior and a sherpa lining is insufficient to show that The Comfy® protects from extreme cold, given that several other articles of clothing have a similar construction, yet cannot protect from extreme, such as the Reaper One Seven Microfleece Sherpa, which only offers "warm and comfortable day to day wear."  *Id*. at 4-5.

152.     Technical fabrics and coatings for outerwear do not need to be thick to provide effective protection from the cold, because advances in textile technology have allowed for the development of lightweight, thin materials that offer excellent insulation and weather protection.  *Id*. at 5.

153.     Examples of materials that can be thin yet effective in insulating are 3M™ Thinsulate™ and the Generation III Extended Cold Weather Clothing System (GEN III ECWCS).  *Id*.

154.     Not all garments are designed to fit close to the wearer's body, as evidenced by oversized garments which have been a big fashion trend for decades.  *Id*. at 6.

155.     Not all sweaters, sweatshirts, pullovers, and similar articles have a ribbed bottom, as evidenced by the Rhone DreamGlow Sweatshirt sold at Nordstrom, which lacks a ribbed bottom.  *Id*. at 8.

156.     Some oversized sweaters, sweatshirts, pullovers, and similar articles may be

constructed with a microfleece exterior and sherpa lining, as evidenced by Walmart's

LISTHA 2024 Women's Fleece Sherpa Lined Hoodie and Amazon's Essentials Men's

Sherpa-Lined Pullover Hoodie.  *Id*. at 8-9.

157.     The Snuggie® has a completely open back and would fall off the body when

walking around, let alone when performing many of the activities marketed by Cozy

Comfort for The Comfy®, like dancing, raking leaves, or pumpkin picking.  *Id*. at 9.

158.     The Snuggie® is used by draping it over the body.  *Id*.

159.     Features such as a layered construction, the absence of grading, loose draping,

and the lack of a ribbed bottom are common descriptions across various types of

garments, and none of these characteristics transform The Comfy® from a pullover into a

blanket.  *Id*. at 10.

## SCHEDULE D-1

## LIABILITY CLAIMS AND DEFENSES

## PLAINTIFF'S CLAIMS AND DEFENSES

Cozy Comfort claims The Comfy® protects against extreme cold and covers beyond the upper body so cannot be classified in HTSUS subheading 6110.30.3059 (pullovers). Cozy Comfort further claims The Comfy® has the physical characteristics, is marketed, and is designed and used like a blanket. Cozy Comfort further claims The Comfy® has the physical characteristics, is marketed, and is designed and used like the Snuggie®, which is classified in HTSUS subheading 6301.40.0020 (blankets). Accordingly, Cozy Comfort claims CBP's reclassification of The Comfy® from HTSUS subheading 6301.40.0020 (blankets) to HTSUS subheading 6110.30.3059 (pullovers) is erroneous and The Comfy® is correctly classified in HTSUS subheading 6301.40.0020 (blankets), HTSUS subheading 6307.90.9891 (other made up textiles), HTSUS subheading 6114.30.3070 (other garments), or HTSUS subheading 6108.92.0030 (robes).

Cozy Comfort asserts the defense that CBP admits articles with a sherpa lining for extra warmth (*i.e.*, to protect against extreme cold) like The Comfy® are excluded from classification in Heading 6110.

## SCHEDULE D-2

## DEFENDANT'S CLAIMS AND DEFENSES

First, defendant asserts that plaintiff, through its agents, has previously admitted that The Comfy® is a garment, specifically a sweatshirt or pullover, and that it is unlike the Snuggie®, and therefore not a blanket. As such, plaintiff should be precluded from now arguing that The Comfy® is not a garment, sweatshirt, or pullover, as well as from arguing that it is a blanket.

Second, heading 6110, HTSUS, provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted." The Comfy® is properly classified under this heading because, pursuant to Rule 1 of the General Rules of Interpretation (GRIs) of the tariff code, it is described by the common meaning of the tariff term "pullover." A "pullover" is defined as a knitted or crocheted article of clothing worn by pulling it over one's head that covers the upper parts of the body. The physical dimensions and features of The Comfy® show that it meets these criteria. Specifically, like all pullovers, it is a knitted article of clothing that is worn by pulling it over one's head and it covers the upper parts of the body. Moreover, like all pullovers, it features front and back panels, openings for the head and waist, and long sleeves, and like many pullovers, it features ribbed cuffs, fleece or microfleece material, a hood, and a kangaroo pocket for the hands on the front. Consequently, it is properly classified as a pullover under heading 6110, HTSUS.

Third, if The Comfy® is determined not to be properly described as a "pullover", then in the alternative, it is properly classified under heading 6110 because, pursuant to the rule of *ejusdem generis, it qualifies as* a "similar article" to "[s]weaters, pullovers, sweatshirts, waistcoats (vests)." Under this rule, the phrase "similar articles" in heading 6110, HTSUS, covers articles that share the essential characteristics of (1) covering the upper body; (2)

providing warmth to the wearer; (3) being suitable for wear over either undergarments or other clothing; and (4) not protecting against wind, rain, or extreme cold. *Rubies Costume Co. v. United States*, 922 F.3d 1337, 1345-1346 (Fed. Cir. 2019). Here, like a sweater, pullover, or sweatshirt, The Comfy® covers the upper body, provides warmth to the wearer, is suitable for wear over either undergarments or other clothing, and does not protect against the elements, such as wind, rain, or extreme cold. Therefore, classifying the merchandise under heading 6110 is appropriate under this alternative legal basis.

Fourth, the admissible evidence in the record shows that The Comfy®, based on its design, physical characteristics, use, and marketing, is significantly different from the Snuggie®, which the court considered to be a blanket in *Allstar Mktg. Grp., LLC v. United States*, 211 F.Supp.3d 1319 (Ct. Int'l Trade 2017). Moreover, the admissible evidence in the record shows that The Comfy®, based on its design, physical characteristics, and use, is similar to the Santa Suit jacket which the *Rubies* court found to be a similar article of heading 6110.

Fifth, because The Comfy® is properly classified under heading 6110, HTSUS, under GRI 1, it is not properly classified under any other HTSUS heading. It is not properly classified under heading 6301, HTSUS, because it is not described by the plain meaning of the tariff term "blanket", as construed by, among other things, *Allstar*, 211 F.Supp.3d at 1319. Similarly, The Comfy® is not a "bathrobe" nor any other article of heading 6108, HTSUS. It is also not properly classified under headings 6307 or 6114, HTSUS, which are basket provisions, because The Comfy® is described by the plain meaning of the term "pullover" or "similar articles" of heading 6110, HTSUS. Therefore, U.S. Customs and Border Protection's (CBP) classification of The Comfy® under subheading 6110.30.30, HTSUS, for "Sweaters, pullovers, sweatshirts,

waistcoats (vests) and similar articles, knitted or crocheted: Of man-made fibers: Other: Other: Other[,]" should be affirmed.

Finally, defendant disputes plaintiff's claim that CBP has admitted that "articles with a sherpa lining for extra warmth" are excluded from classification in heading 6110, HTSUS.

**SCHEDULE E-1**

**DAMAGES AND OTHER RELIEF**

**PLAINTIFF'S REQUEST FOR DAMAGES AND OTHER RELIEF**

Cozy Comfort requests classification of The Comfy® as a blanket under HTSUS subheading 6301.40.0020 and refund of the duties together with interest as provided by law. Alternatively, Cozy Comfort requests classification of The Comfy® as an other made up textile under HTSUS subheading 6307.90.9891 and refund the duties together with interest as provided by law. Alternatively, Cozy Comfort requests classification of The Comfy® as an other garment under HTSUS subheading 6114.30.3070 and refund the duties together with interest as provided by law. Alternatively, Cozy Comfort requests classification of The Comfy® as a robe under HTSUS subheading 6108.92.0030 and refund the duties together with interest as provided by law. Finally, Cozy Comfort requests costs, attorneys' fees and other such relief as the court deems equitable and just.

## SCHEDULE E-2

## DEFENDANT'S RELIEF SOUGHT

1. Dismiss plaintiff's action for failure to establish through admissible and credible evidence that the subject merchandise is not correctly classified as a pullover, sweatshirt, or similar article under heading 6110, HTSUS, and specifically subheading 6110.30.30 for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted: Of man-made fibers: Other: Other: Other."

2. Affirm CBP's classification of The Comfy® under subheading 6110.30.30, HTSUS.

3. Grant defendant such other and further relief as may be just and appropriate.

## SCHEDULE F-1

## ISSUES

Whether The Comfy® protects from extreme cold, or provides the wearer with extra warmth, such that it falls outside HTSUS Heading 6110?

Whether The Comfy® covers more than just the upper body such that it falls outside HTSUS Heading 6110?

Whether The Comfy® is designed, used, and/or marketed as a blanket such that it falls outside HTSUS Heading 6110?

Whether The Comfy® is not properly classified as a pullover or similar article under HTSUS Heading 6110?

Under which HTSUS heading is The Comfy® properly classified?

### SCHEDULE F-2

### DEFENDANT'S TRIABLE ISSUES

1. Whether the subject merchandise is a pullover, sweatshirt, or similar article of heading 6110, HTSUS.

2. Whether plaintiff has established through admissible and credible evidence that the subject merchandise is classifiable other than as a pullover, sweatshirt, or similar article of heading 6110, HTSUS.

3. Whether plaintiff has established through admissible and credible evidence that the subject merchandise can meaningfully provide protection from extreme cold.

## SCHEDULE G-1

## WITNESSES

## PLAINTIFF'S WITNESSES

(a) <u>Michael Speciale</u>, Fact/Rebuttal Witness, President and Chief Executive Officer, Cozy Comfort Company, LLC.

(b) In person. 668 N. Coast Hwy., PMB 315, Laguna Beach, CA 92651.

(c) Mr. Speciale invented The Comfy®. The Comfy® was inspired by an oversized hooded sweatshirt and a sherpa/microfleece blanket. The prototype of The Comfy® was made with sherpa/microfleece blankets. The Comfy® is designed to be a wearable blanket. The Comfy® was patented and trademarked using the terms "over-garment" and "sweatshirt" along with the term "blanket" because the term "wearable blanket" was not yet widely known in U.S. commerce. When the term "wearable blanket" became widely known, Cozy Comfort sought a new patent for a "whole body blanket," surrendered the trademark using the phrase "the blanket…that's a sweatshirt," and discontinued all marketing using any term other than blanket. The Comfy® is exclusively sold in the home furnishings/bedding or wearable blanket departments of stores. The Comfy® is not sold the apparel, clothing, or garment section of stores. Licensees such as Disney, Marvel, and the National Hockey League describe The Comfy® as a blanket, not a garment, and limit use of their licenses to blankets, not garments. The main purchasers of The Comfy® are women. The Comfy® provides extra warmth, significantly more warmth than a pullover or similar article, and protects users against extreme cold. The Comfy® is comparable to the Snuggie®. The Comfy® is marketed, used, and commercially known as a blanket.

### PLAINTIFF'S WITNESSES

(a) <u>James Crumley</u>, Expert/Rebuttal Witness.

(b) In person. 2917 Trebark Rd., Buchanan, VA 24066.

(c) Mr. Crumley was born in Morgan, NC in 1947 and moved to Bristol, VA/TN in 1949. Mr. Crumley is a lifelong avid hunter, fisherman, and camper, has hunted in extreme cold locations, and has hosted numerous dignitaries on hunting and fishing trips. Mr. Crumley has designed and developed patents and trademarks for outerwear, including jackets, sweatshirts, and pullovers, as well as blankets. His most famous invention is Trebark® camouflage, which is widely used in the hunting industry. He has worked with numerous garment and outerwear companies, including, but not limited to, Bass Pro Shops, Cabela's, Cahartt, Columbia, LL. Bean, and Walmart. The Comfy® provides extra warmth, significantly more warmth than a pullover or similar article, and protects users against extreme cold. The Comfy® is comparable to the Snuggie®. The Comfy® is marketed, used, and commercially known as a blanket.

(d) <u>See</u> CV, attached.

(e) Mr. Crumley was qualified as an expert witness in the U.S. Federal Court for the District of Arizona in the *Top Brand* case involving The Comfy®. Mr. Crumley is an expert in garment design and has the background and expertise to opine on issues related to garment design such as protection against extreme cold, and the design, marketing, and use of garments, blankets, and other textiles.

# James H. Crumley

1947 - born Morganton, NC, raised in Bristol, TN/VA

## Education

1965 - graduated Virginia High School, Bristol, VA
1969 - graduated Virginia Tech, Blacksburg, VA, B.S. Degree - Marketing Education.
1974 - M.A. Degree - Education Administration, Virginia Tech

## Employment History

1969-1974 - Marketing Teacher-Coordinator, T.C. Williams High School, Alexandria, VA
1975-1981 - Administrator, Alexandria Public Schools
1972-1982 - Parttime waterfowl and deer hunting guide, Marvland Eastem Shore. 1980-2000, Owner/President, Bowing Enterprises, Inc. DBA Trebark® Camouflage, Roanoke, VA
1995-2018 - Owner, C.A.M.O. Enterprises Inc., Roanoke, VA
2000-2005 - President, Trebark LLC, Haas Outdoors, Inc., West Point, MS
2005-2010 - President President/CEO, Outdoor Families Inc., DBA Outfitter Tuff Brand Products, Roanoke, VA
2010-2021 - Consultant with Mossy Oak and Nomad in hunting/garment industry; manager of Springwood Properties LLC

## Publications

JIM CRUMLEY'S SECRETS OF BOWHUNTING DEER, copyright 1994, ISBN 0-9365513-41-1, Library of Congress 93-79804

## Representative Clients

Avondale Mills
Bass Pro Shops
Cabela's
Carhartt, Inc.
Columbia
Dickies
Dupont
LL Bean
Walmart

## Previous Expert Witness Experience

*Cabela's Inc. in Montana Camo, Inc. v. Cabela's Inc., et al.* Case No. CV-08- 71-BLG-RFC (D. Mont.)

*Top Brand et al. v. Cozy Comfort Company, LLC*, et al., Case No. 21-cv-00597-PHX-SPL (D. AZ)

## **PLAINTIFF'S WITNESSES**

(a) <u>Tatiana Matherne</u>, Adverse Fact Witness, U.S. Customs and Border Protection.

(b) Via deposition testimony only.

(c) Ms. Matherne helped prepare CBP's the Government's discovery responses and served as the Government's 30(b0(6) witness in this case. She will testify about Customs' Informed Compliance Publication on wearing apparel, in which Customs takes the official position that sweaters with interior sherpa lining that provide extra warmth are excluded from classification in Heading 6110. She will testify there is no practical difference between sweaters and other articles of Heading 6110 in terms of extra warm linings. She will testify that Customs' officials from different Headings examined The Comfy and came to different opinions on the classification of The Comfy®prior to the Customs' headquarters ruling. Ms. Matherne will also testify the Comfy is a novel product and that blankets and outer layers are the most typical articles that are constructed from sherpa and/or microfleece.

## SCHEDULE G-2

## DEFENDANT'S TRIAL WITNESSES

1. <u>Renee Orsat</u>, located at the National Commodity Specialist Division (NCSD), Office of Trade, U.S. Customs and Border Protection (CBP), 11099 S La Cienega Blvd, Los Angeles, California, 90045, is a National Import Specialist (NIS) with the NCSD. Ms. Orsat's responsibilities include issuing prospective binding rulings regarding tariff classification, country of origin determinations, and the application of special trade provisions. Ms. Orsat's additional duties include advising CBP personnel on import related issues, providing training to the importing community on specific commodity classification, advising on proposed Harmonized Tariff Schedule and Explanatory Note changes, miscellaneous tariff bill and product exclusion language, etc. Ms. Orsat is currently the NIS responsible for the tariff heading 6110, covering women's knitted or crocheted sweaters, pullovers, sweatshirts, vests, and similar articles. Ms. Orsat is also responsible for heading 6104, covering women's suits, dresses, ensembles, and track suits. As part of Ms. Orsat's responsibilities, she reviewed plaintiff's submissions in connection with Protest No. 2704-20-141606, and she consulted with and provided advice to other CBP personnel regarding the classification of the merchandise covered by the protest, including The Comfy® Original, which is at issue in this action. Ms. Orsat also reviewed a sample of the subject merchandise. Ms. Orsat will testify as to her responsibilities generally. She will also testify as to plaintiff's prior protests concerning the same subject merchandise.

2. <u>Patricia Concannon</u> is offered as an expert in apparel sales, marketing, and merchandising. Ms. Concannon is a resident of Claremont, California. She received her Bachelor of Science degree from California State Polytechnic University, Pomona, in 2011 with

a major in Apparel Merchandising and Management.  During her time in college, she worked for Launch USA International, a U.S. distributor of an Italian clothing manufacturer, where she worked in sales, marketing, and merchandising.  Upon graduating in 2011, she was employed by Critical Mass Manufacturing, where she performed testing on various fabrics for a heat transfer process known as kinetic colorization.  Between 2011 and 2017, she served as Executive Director at Fashion Business Inc., an educational non-profit 501(c)(3) which provided business development assistance and resources to start-up fashion companies and job training programs for displaced workers in the apparel industry.  From 2014 to 2017, she also served as Regional Director of the Los Angeles chapter of Fashion Group International.  Between 2017 and 2020, she worked with DG Expo, a regional business-to-business fabric and trim trade show, as Director of Communications.  From December 2020 to February 2024, she worked as Buyer Relations Specialist for Informa Markets Fashion, specifically for the Sourcing at MAGIC trade show.  There, she worked with fashion brands to connect them to a variety of global suppliers and production facilities.

In February 2024, she was hired at Emerald as Show Director for a trade show called Outdoor Design + Innovation, a co-located sourcing trade show with Outdoor Retailer.  She has also taught a class at California State Polytechnic University, Pomona called International Apparel Management, and she serves on the Advisory Board for their Apparel Merchandising and Management Department, as well as on the Advisory Board for the Santa Monica College Fashion Department.  She also continues to provide consulting services to start-up fashion brands.

Ms. Concannon will testify   regarding her expertise in marketing extreme cold-resilient apparel.  She will also testify about how products that protect against extreme cold are typically

sold, marketed, and merchandised.  She will further testify regarding how a product with The

Comfy® or the Snuggie®'s design, physical characteristics, and used would usually be sold,

marketed or merchandised.  She will also compare how the two products in fact were sold,

marketed, or merchandised.  She will also testify as to any other relevant marketing-related

aspects of the two products.  She will further testify about facts related to how The Comfy® is

marketed.  Finally, she will testify regarding her opinions about The Comfy® in so far as those

opinions stem from her observations about how The Comfy® is sold, marketed, or

merchandised.

3.  <u>Mary Ann Ferro</u> is offered as an expert in apparel design, specifically outerwear.

Professor Ferro is a resident of Norwood, New Jersey.  She trained as a designer of women's

apparel at the Fashion Institute of Technology (FIT) in New York.  She has 33 years of

experience in the garment industry and an overlapping and continuing career of 53 years as an

apparel design instructor at FIT.  She specializes in the category of outerwear design.  Her

outerwear experience ranges from designing rainwear, casual outdoor jackets and performance

outerwear meant for more rugged weather, including windy, rainy, and extreme cold conditions.

In her teaching capacity at FIT, she created and presently teaches apparel courses specific to

outerwear, teaching the functional design of outerwear.  She also created and presently teaches a

course introducing the development and features of hi-tech and "smart fabrics" and their use as

protective factors in outerwear.  Her courses cover the styling, patternmaking techniques,

fabrication, and construction of outerwear as a functional garment meant to protect the wearer

from the elements such as a range of cold temperatures, winds, rain, and other kinds of inclement

weather.

Between 1977 to 2000, she designed outerwear in the apparel industry mainly for London Fog, Misty Harbor, Woolrich, and Amerex. Her CV attached to her expert report outlines specifics, and additional apparel design experience. While working in the fashion industry in 1970, she was also called upon to teach a fashion course part-time at FIT, teaching up to 12 to 14 hours a week. She became a full-time instructor in 2000. In 2023, she finally decided to retire from her full-time position at FIT and she currently teaches courses part-time, two courses per semester.

Professor Ferro will testify that The Comfy® is a garment, not a blanket, and she will explain the many distinctions between them. She will testify that The Comfy® is not outerwear for the elements, and that by design it cannot protect from extreme cold. She will testify that The Comfy®, based on its design and physical characteristics, is primarily intended for lounging indoors. She will further testify that her extensive professional background in outerwear design makes her confident that The Comfy® lacks the protective structures and qualities of garments designed to protect against wind, rain, or extreme cold. She will also testify that she has reviewed and understands the blanket and garment analysis factors described in the court cases addressing the Snuggie® and the Santa Suit jacket, respectively, which were referenced by the Court in its June 18, 2024 Order, and can discuss the similarities or differences between these articles and The Comfy®. She will also testify that when expressing her opinions regarding The Comfy® in her expert report, she considered those same factors.

We reserve the right to call as a witness any witness identified on plaintiff's witness list.

## SCHEDULE H JOINT EXHIBIT LIST

The parties have stipulated that the following exhibits are stipulated for admission before trial: **P1-P9, P17-P22, D5-D7, D23, and D25-D26.**

| Ex. No. | Pages | Description |
|---|---|---|
| P1 | N/A | Sample of The Comfy® |
| P2 | 1 | The Comfy® dimensions (Bates No. Cozy Comfort 000197) |
| P3 | 1-11 | Application for trademark (Gov't MSJ, Ex. 14) |
| P4 | 1-3 | Trademark Reg. No. 5,678,126 (Gov't MSJ, Ex. 15) |
| P5 | 1-8 | Cancellation of Trademark Reg. No. 5,678,126 (Gov't MSJ, Ex. 16) |
| P6 | 1-26 | Patent No. 10,420,431 (Gov't MSJ, Ex. 17) |
| P7 | 1-11 | Patent No. D859,788 (Gov't MSJ, Ex. 18) |
| P8 | 1-12 | Patent No. D905,380 |
| P9 | 1-18 | Patent No. D969,458 (Gov't MSJ, Ex. 19) |
| P10 | 1-23 | Photographs of The Comfy® displayed for sale (Bates Nos. Cozy Comfort 000240-261) |
| P11 | 1-177 | Licensing agreements (Bates Nos. Cozy Comfort 00762-00938) |
| P12 | 1-132 | The Comfy Psychographic Segmentation Study Findings (Bates Nos. Cozy Comfort 000939-001070) |
| P13 | 1-100 | Photographs from customers (Bates Nos. Cozy Comfort 001075-001174) |
| P14 | N/A | Compilation of customer reviews demonstrating use for protection against extreme cold |
| P15 | 1-2 | Amazon customer review demonstrating use for protection against extreme cold |
| P16 | 1-6 | Cozy Comfort net sales 2018-2022 (Bates Nos. Cozy Comfort 001175-001180) |

| **P17** | 1-13 | Entry records, Entry No. 9HX-5586673-2 (Pl. Resp. Gov't SOMF, Ex. 11) |
| **P18** | 1-3 | CBP Form 29 Notice of Action (March 9, 2020) (Pl. Resp. Gov't SOMF, Ex. 10) |
| **P19** | 1-7 | Entry records, Entry No. 442-9233932-0 (Bates Nos. Cozy Comfort 000002-000007) |
| **P20** | 1 | Protests and entries in *Cozy Comfort Company, LLC v. United States*, Court No. 22-173 (Protest # 2704-22-160430) (ECF No. 10) |
| **P21** | 1-30 | CBP Informed Compliance Publication, Apparel Terminology Under the HTSUS (June 2008) |
| **P22** | 1-10 | CBP Headquarters Letter Ruling (HQ) 313594 (May 21, 2021) |
| **P23** | 1-2 | Oxford English Dictionary, definition of "blanket," *available at* https://www.oed.com/search/dictionary/?scope=Entries&q=blanket |
| **P24** | 1 | [REMOVED] Image of The Comfy® marketed in the Walmart Home; Bedding; Blankets section (Ferro Depo., Exhibit 5) |
| **P25** | 1 | [REMOVED] Image of The Comfy® marketed in the Target Home; Home Décor; Throw Blankets section (Ferro Depo., Exhibit 5) |
| **P26** | 1 | [REMOVED] Image of The Comfy® marketed in the Amazon Wearable Blankets section (Ferro Depo., Exhibit 5) |
| **P27** | N/A | Sample of the Snuggie® |
| **P28** | 1-43 | [REMOVED] Exp. Rep. of James Crumley |
| **P29** | 1-24 | [REMOVED] Exp. Rep. of Patricia Concannon |
| **P30** | 1-73 | [REMOVED] Exp. Rep. of Mary Ann Ferro |
| **P31** | 1-7 | [REMOVED] Reb. Exp. Rep. of James Crumley |
| **P32** | 1-10 | [REMOVED] Reb. Exp. Rep. of Patricia Concannon |
| **P33** | 1-34 | [REMOVED] Reb. Exp. Rep. of Mary Ann Ferro |
| **P34** | 1-27 (screen | Screen capture of thecomfy.com reviews without any keyword search. (supplement to P14) |

| | | |
|---|---|---|
| | capture splits) | |
| **P35** | 1 (screen capture full page) | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "freeze" or "freezing". (supplement to P14) |
| **P36** | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "extreme". (supplement to P14) |
| **P37** | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "cold". (supplement to P14) |
| **P38** | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "chilly". (supplement to P14) |
| **P39** | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "winter". (supplement to P14) |
| **P40** | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "weather". (supplement to P14) |
| **P41** | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "wind". (supplement to P14) |
| **P42** | N/A | Data Collection for compilation of customer reviews demonstrating use for protection against extreme cold (supplement to P14 and P15) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| D1 | 1-2 | Summons in *Cozy Comfort Company, LLC v. United States*, Court No. 21-404 (ECF No. 1) |
| D2 | 000001-000670 | Protests and entries in *Cozy Comfort Company, LLC v. United States*, Court No. 21-404 (Protest # 2704-20-141606) (ECF Nos. 6, 6-1, 6-2) |
| D3 | 1-5 | Complaint in *Cozy Comfort Company, LLC v. United States*, Court No. 21-404 (ECF No. 8) |
| D4 | 000001-000493 | Plaintiff's Initial Disclosures in *Cozy Comfort Company, LLC v. United States*, Court No. 21-404 |
| D5 | 1-2 | Summons in *Cozy Comfort Company, LLC v. United States*, Court No. 22-173 (ECF No. 1) |
| D6 | 1-5 | Complaint in *Cozy Comfort Company, LLC v. United States*, Court No. 22-173 (ECF No. 6) |
| D7 | 000001-000058 | Protests and entries in *Cozy Comfort Company, LLC v. United States*, Court No. 22-173 (Protest # 2704-22-160430) (ECF No. 10) |
| D8 | 1-58 | Def. Mot. Summ. J. Ex. 11 (ECF No. 30-12), August 4, 2021 Request to Void Denials |
| D9 | 1-1456 | Def. Mot. Summ. J. Ex. 5 (ECF No. 30-6), Defendant's Production in Response to Plaintiff's Requests for Production |
| D10 | 1-155 | Def. Mot. Summ. J. Ex. 3 (ECF No. 30-4), Tr. of Depo. of Pl. Pursuant to Rule 30(b)(6) |
| D11 | 1-3 | Def. Mot. Summ. J. Ex. 7 (ECF No. 30-8), Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 3, Photos of Comfy, Shark Tank, Marketing description and Stealing Sweatshirt Blog post |
| D12 | 1-552 | Def. Mot. Summ. J. Ex. 6 (ECF No. 30-7), Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 4 Plaintiff's Initial Disclosures in Ct. No. 22-173 |
| D13 | 1-8 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 5 Pl. Resp. to Def. Interrog. (copy of unmarked responses also available at ECF 30-3) |

| D14 | Cozy Comfort 00001-00761 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 6 Pl. Prod. in Resp. to Def. Requests for Prod. (copy of unmarked responses also available at ECF 30-2) |
|---|---|---|
| D15 | 000001-000005 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 7 Screenshot of Walmart page for The Comfy® |
| D16 | 1-12 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 8 Pl. Responses to Defendant's Requests for Production in Cozy Comfort 22-173 |
| D17 | 1-3 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 9 Pl. Supp. Resp. to Def. Requests for Prod. |
| D18 | 1-5 | Def. Mot. Summ. J. Ex. 8 (ECF No. 30-9), Meet Our Mascot, Saxon Speciale - Inspiration For The Comfy® |
| D19 | 1-4 | Def. Mot. Summ. J. Ex. 9 (ECF No. 30-10), 3 Ways Hugs Improve Our Overall Health |
| D20 | 1-6 | Def. Mot. Summ. J. Ex. 10 (ECF No. 30-11), Relationship Hack: 3 Ways The Comfy Enhances Relationships |
| D21 | 1-5 | Def. Mot. Summ. J. Ex. 12 (ECF No. 30-13), An Ode To Comfy Season at 1, *available at* https://thecomfy.com/blogs/blog/an-ode-to-comfyseason?_pos=1&_sid=e5c64b7d4&_ss=r |
| D22 | 1-4 | Def. Mot. Summ. J. Ex. 13 (ECF No. 30-14), Staying Comfy This Winter |
| D23 | 1-3 | Def. Mot. Summ. J. Ex. 15 (ECF No. 30-16), Trademark Registration No. 5678126 |
| D24 | 1-26 | Def. Mot. Summ. J. Ex. 17 (ECF No. 30-18), US Patent No 10420431 |
| D25 | 1-11 | Def. Mot. Summ. J. Ex. 18 (ECF No. 30-19), US Patent No D859788 |
| D26 | 1-688 | [CONFIDENTIAL] Def. Mot. Summ. J. Confidential Ex. 20 (ECF No. 28-20), Pl. Add'l Records Following Pl. Depo. Pursuant to Rule 30(b)(6) |

| D27 | 1-5 | Def. Mot. Summ. J. Ex. 21 (ECF No. 30-22), Comfy website and promotional video links, including Shark Tank pitch, and patent information on Comfy website |
|---|---|---|
| D28 | 000001-000003 | Expert disclosure of Mary Ann Ferro |
| D29 | 1-73 | Expert report of Mary Ann Ferro |
| D30 | 000001-000004 | National Weather Service, *Extreme cold*, *available at* https://www.weather.gov/dlh/extremecold |
| D31 | 000001-000002 | National Weather Service, *Safety > Winter*, *available at* https://www.weather.gov/safety/winter, specifically, graphic number 2, *also available at* https://www.weather.gov/images/wrn/Infographics/Winter-Dress-Infographic.jpg |
| D32 | 000001-000004 | Canada Goose, *Simcoe Oversized Fleece Hoody*, *available at* https://www.canadagoose.com/us/en/simcoe-oversized-fleece-hoody-7016L.html |
| D33 | 000001-000004 | Canada Goose, *Chilliwack Bomber Kind Fleece*, Product Details section, *available at* https://www.canadagoose.com/us/en/chilliwack-bomber-kindfleece-7102W.html |
| D34 | 000001-000011 | Government of Canada, Health Canada, *Extreme Cold*, *available at* https://www.canada.ca/en/health-canada/services/healthy-living/yourhealth/environment/extreme-cold.html#a4 |
| D35 | 000001-000012 | Heat Holders, *Understanding the Science Behind Thermal Clothing: How Does It Work?*, *available at* www.heatholders.com/blogs/wow/understanding-the-science-behindthermal-clothing-how-does-it-work |
| D36 | 000001-000009 | REI Coop, Expert Advice, *How To Dress in Cold Weather*, *available at* https://www.rei.com/learn/expert-advice/how-to-dress-in-coldweather.html |
| D37 | 000001-000013 | Mayo Clinic, *Hypothermia*, *available at* https://www.mayoclinic.org/diseases-conditions/hypothermia/symptomscauses/syc-20352682 |

| | | |
|---|---|---|
| **D38** | 000001-000003 | Expert disclosure of Patricia Concannon |
| **D39** | 1-24 | Expert report of Patricia Concannon |
| **D40** | 000001-000002 | Updated CV of Patricia Concannon |
| **D41** | 000001-000009 | Cybersecurity & Infrastructure Security Agency, Extreme Weather and Climate Change, *Extreme Cold, available at* https://www.cisa.gov/topics/critical-infrastructure-security-andresilience/extreme-weather-and-climate-change/extreme-cold |
| **D42** | 000001-000003 | Columbia, *Women's Icelandite™ TurboDown Jacket, available at* https://www.columbia.com/p/womens-icelandite-turbodown-jacket-1667431.html?dwvar_1667431_color=263 |
| **D43** | 000001-000004 | Canada Goose, *Paradigm Expedition Parka*, Product Details section, *available at* https://www.canadagoose.com/us/en/paradigm-expeditionparka-2058MW.html |
| **D44** | 000001-000453 | Depo. of James Crumley, Exs. 1-25 |
| **D45** | 1-10; Ex. A 1-24 | Expert rebuttal report of Mary Ann Ferro, including Ex. A |
| **D46** | 1-10 | Expert rebuttal report of Patricia Concannon |
| **D47** | 1-2 | Trademark Registration No. 6,540,042 |
| **D47-1** | 1-291 | Prosecution history for Trademark Registration No. 6,540,042 |
| **D48** | 1-2 | Trademark Registration No. 6,693,853 |
| **D48-1** | 1-40 | Prosecution history for Trademark Registration No. 6,693,853 |
| **D49** | 1-2 | Trademark Registration No. 6,896,826 |
| **D49-1** | 1-64 | Prosecution history for Trademark Registration No. 6,896,826 |
| **D50** | 1-6 | Photographs of the Snuggie® from *Allstar Marketing Group LLC v. United States*, Court No. 13-00395, ECF No. 42-1, at 2-4, 55-57 |

Both parties reserve the right to use any exhibit identified on either party's exhibit list.

**SCHEDULE I-1**

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S
FACTS, ISSUES, WITNESSES AND EXHIBITS**

**A.** **Objections to Defendant's Set of Contested Facts (Schedule C-2)**

Plaintiff makes the following objections to Defendant's Set of Contested Facts (Schedule

C-2):

1.     402 Relevance

2.     402 Relevance

3.     402 Relevance

4.     402 / 403 / Hearsay

5.     Best Evidence Rule – Sample and advertising is best image of product.

6.     402 Relevance

7.     Contested

8.     Contested

9.     Contested

10.     402

11.     Contested – Always extends below the waist.

12.     Uncontested

13.     Uncontested

14.     Uncontested

15.     This is an offer of evidence and authentication of such.

16.     Contested

17.     Contested

18.     Uncontested

19.    Uncontested

20-24.  Contested

25.    Uncontested

26.    Uncontested

27.    Uncontested

28.    Uncontested

29.    Uncontested

30-159. Contested

**B.    Objections to Defendant's Issues (Schedule F-2)**

Plaintiff objects to Defendant's Schedule F-2 as an impermissible attempt to shoulder Plaintiff with the burden of proof regarding the proper classification. See GoPro, Inc. v. United States, 673 F. Supp. 3d 1349, 1363 (Ct. Int'l Trade 2023) (quoting Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984)) ("The plaintiff does not 'bear the burden of establishing the correct classification; instead, it is the court's independent duty to arrive at the 'correct result.'").

**C.    Objections to Defendant's Trial Witnesses (Schedule G-2)**

Plaintiff objects to the following witnesses proposed by Defendant to provide testimony at trial (Schedule G-2):

1.    Renee Orsat. Defendant avers that Ms. Orsat is being offered to provide testimony as to her responsibilities generally and to testify "as to plaintiff's prior protests concerning the same subject merchandise" as that of the present case. (Defendant's Schedule G-2). In its Order (ECF Doc. 83), the Court limited Ms. Orsat's testimony: "[s]he may not testify about opinions formed during the Customs' classification process. This limitation means that she may not talk

about any opinion she once held about The Comfy®'s tariff classification because such opinions would be part of or informed by otherwise privileged deliberative processes at Customs." (ECF 83, at 14.) Despite the Court's limitation, Defendant broadly describes Ms. Orsat's intended testimony. Accordingly, Plaintiff objects to Ms. Orsat's proposed testimony to the extent that Ms. Orsat intends to testify as to any aspect of the prior protests, as the prior protests are duplicative of or not relevant of this protest.  Plaintiff also objects to the introduction of any testimony related to the prior protests that touch upon an opinion she or anyone at CBP formed or once held about the classification of the subject merchandise in those prior protests. The Court agreed with Plaintiff that Ms. Orsat cannot testify regarding the classification of The Comfy®, and in particular that she could not testify as to whether The Comfy® functions as a garment or includes the features to protect from extreme cold. Ms. Orsat is not an expert on weather, extreme cold, the functionality of garments, or designing garments. Ms. Orsat lacks the qualifications to make any opinions concerning the functionality or design of The Comfy® in this case. Furthermore, Ms. Orsat was not disclosed as an expert in this case and did not provide an expert report or disclosure as required in this case. Lastly, Ms. Orsat's review of Protest No. 2704-20-141606 or her review of The Comfy®, is also irrelevant and unnecessary to the *de novo* review the Court is required to conduct regarding the classification the CBP already determined. Ms. Orsat should not be allowed to offer any testimony in this case.

      2.   <u>Patricia Concannon.</u> Ms. Concannon is being offered to testify regarding "her expertise in marketing extreme cold-resilient apparel" and how such products are "typically sold, marketed, and merchandised." Moreover, Defendant is offering Ms. Concannon to testify about how The Comfy® and the Snuggie® are marketed, sold, and merchandised, and will testify "regarding her opinions about The Comfy® in so far as those opinions stem from her

observations about how The Comfy® is sold, marketed, or merchandised." Problematically, Defendant is offering Ms. Concannon to testify "regarding how a product with The Comfy® or the Snuggie®'s ***design, physical characteristics, and use*** would usually be sold, marketed or merchandised." This is improper. The Court already found that "Ms. Concannon's proposed expert testimony about The Comfy®'s physical characteristics and design falls outside her expertise. For that reason, the Court rules that such testimony is impermissible." (ECF 83, at 9.) All of this testimony is predicated on a background and expertise in garment design. Ms. Concannon, however, is not a garment designer. Ms. Concannon's background is in sales and she professes to be an expert on trade shows, not garment design, the physical characteristics, and their use. Ms. Concannon is not an expert on weather, extreme cold, the functionality of garments, or designing garments. Ms. Concannon lacks the qualifications to make any opinions concerning the functionality or design of The Comfy® in this case, or what features and/or The Comfy® uses. Ms. Concannon should not be allowed to offer any testimony in this case.

### D.    Objections to Defendant's Trial Exhibits (Schedule H-2)

Plaintiff reserves all rights to object to the introduction of Defendant's trial exhibits (Schedule H-2) on the grounds of relevance, failure to lay a proper foundation, the rule of completeness, and any other objection permitted by the Federal Rules of Evidence and the Rules of the U.S. Court of International Trade.

Without prejudice to the above, Defendant identifies the following specific objections to trial exhibits designated by Defendant:[1]

---

[1] For ease of reference, Plaintiff has employed the following conventions in listing its objections: 402 = Not Relevant: This exhibit is objectionable because it is not relevant to any claim or defense (see FRE 402); 403 = Confusing and Unduly Prejudicial: This exhibit is objectionable because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury or by considerations of undue delay, waste of time, or

| Ex. No. | Page Nos. | Description | Plaintiff's Objections |
|---------|-----------|-------------|------------------------|
| D1 | 1-2 | Summons in *Cozy Comfort Company, LLC v. United States,* Court No. 21-404 (ECF No. 1) | This exhibit is from a different proceeding that was dismissed. As such, it is not relevant (402/403); to the extent being offered for any fact contained therein, it is hearsay (801/802); there is no witness who has personal knowledge and can establish the foundation for this summons or to establish the same version of product was at issue (901; F). |
| D2 | 200001-670 | Protests and entries in *Cozy Comfort Company, LLC v. Unites States,* Court No. 21-404 (Protest # 2704-20-141606) (ECF Nos 6, 6-1, 6-2) | This exhibit is a compilation of almost 700 pages of numerous individual documents from a different proceeding that was dismissed. As such, it is not relevant or its prejudicial value outweighs any relevance as it is cumulative of the protest from this case (402/403); to the extent being offered for any fact contained therein, it is hearsay (801/802); there is no witness who has personal knowledge and can establish the |

needless presentation of cumulative evidence (see FRE 403); 408 = Compromise and offer to compromise: This exhibit is objectionable because it is a compromise or offer to compromise protected by Rule 408 (see FRE 408); 801/802 = Hearsay: This exhibit is objectionable because it is a statement made by one other than the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted and not subject to any hearsay exception (see FRE801 and 802); 901 = Lacks Authenticity; F = Lacks Foundation; ID = Incomplete Document/Exhibit; 702 = Improper Opinion Testimony on ultimate issue for Court to decide; IS = Improper Summary Document.

| | | | foundation for this protest or to establish the same version of product was at issue (901; F). |
|---|---|---|---|
| D3 | 1-5 | Complaint in *Cozy Comfort Company, LLC v. United States,* Court No. 21-404 (ECF No. 8) | This exhibit is from a different proceeding that was dismissed.  As such, it is not relevant (402/403); to the extent being offered for any fact contained therein, it is hearsay (801/802); there is no witness who has personal knowledge and can establish the foundation for this protest or to establish the same version of product was at issue (901; F). |
| D4 | 000001-493 | Plaintiff's Initial Disclosures in *Cozy Comfort Company, LLC v. United States,* Court No. 21-404 | This exhibit is a compilation of almost 500 pages of numerous individual documents from a different proceeding that was dismissed.  As such, it is not relevant or its prejudicial value outweighs any relevance as it is cumulative of the protest from this case (402/403); to the extent being offered for any fact contained therein, it is hearsay (801/802); there is no witness who has personal knowledge and can establish the foundation for these initial disclosures or to establish the same version of product was at issue (901; F). |

| D5 | 1-2 | Summons in Cozy Comfort Company, LLC v. United States, Court No. 22-173 (ECF No. 1) | No objection |
|----|-----|-----|-----|
| D6 | 1-5 | Complaint in Cozy Comfort Company, LLC v. United States, Court No. 22-173 (ECF No. 6) | No objection |
| D7 | 000001-000058 | Protests and entries in *Cozy Comfort Company, LLC v. United States*, Court No. 22-173 (Protest # 2704-22-160430) (ECF No. 10) | No objection |
| D8 | 1-58 | Def. Mot. Summ. J. Ex. 11 (ECF No. 30-12), August 4, 2021 Request to Void Denials | This exhibit is compromise request made in a different proceeding that was dismissed. As such, it is not relevant or its prejudicial value outweighs any relevance as it is cumulative of the protest from this case (402/403); to the extent being offered for any fact contained therein, it is hearsay (801/802); there is no witness who has personal knowledge and can establish the foundation for this document (901; F); any statement about classification contained therein was by way of compromise and excluded under FRE 408. |
| D9 | 1-1456 | Def. Mot. Summ. J. Ex. 5 (ECF No. 30-6), Defendant's Production in Response to Plaintiff's Requests for Production | Plaintiff objects on the grounds that this exhibit is improper composite exhibit; Plaintiff further objects to GOV00000001-994, 1049-1051, 1063-1071, 1375-1431, 1433-1455 on the grounds of 402/403 as these are Defendant's internal communications (and attachments thereto) portions of which have |

| | | | been withheld for privilege whose introduction now is prejudicial; internal Defendant emails between employees are out of court statements and inadmissible hearsay under 801/802. Plaintiff further objects to GOV00000001-387, 419-450, 458-478, 486-491, 497-627, 631-637, 640-994, 1387-1415, 1422-1431, 1433-1455 on the grounds of ID, since some or all of those documents have been redacted or withheld from production. Plaintiff further objects to GOV00000600-605, 631-633, 1376-1385, 1387-1408, 1434-1455 on the grounds of 702, since they contain hearsay related to the ultimate issue (i.e., proper classification). Plaintiff further objects to GOV1025, 1027, 1029-1040, 1043-1048, 1376-1386, 1422-1431, 1433-1455 which are unidentified images on the grounds of 901 and F since no witness can provide foundation. |
|---|---|---|---|
| D10 | 1-155 | Def. Mot. Summ. J. Ex. 3 (ECF No. 30-4), Tr. of Depo. of Pl. Pursuant to Rule 30(b)(6) | Deposition transcripts are classic hearsay and inadmissible under 801/802, the Court's pretrial order and FRCP 32 only allow admission |

| | | | through the designation process. |
|---|---|---|---|
| D11 | 1-3 | Def. Mot. Summ. J. Ex. 7 (ECF No. 30-8), Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 3, Photos of Comfy®, Shark Tank, Marketing description and Stealing Sweatshirt Blog post | These are incomplete, subsets of larger documents and incomplete and should be kept out on that basis (ID); These are partial documents which cannot be authenticated under 901; to the extent these documents are being offered for the truth of any matter stated therein they are hearsay (801/802); These partial documents combined together violate the best evidence rule (FRE 1002 (best evidence rule)). |
| D12 | 1-552 | Def. Mot. Summ. J. Ex. 6 (ECF No. 30-7), Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 4 Plaintiff's Initial Disclosures in Ct. No. 22-173 | Plaintiff objects on the grounds that this exhibit is improper composite exhibit of over 500 pages of different documents; Plaintiff further objects to 001-018, 372-382, 414-422, 428-437, 473-486, 520-529, 532-533 on the grounds of (402/403) as these documents contain documents from other cases, unsigned classification determinations, and irrelevant manufacturer information; these documents also contain hearsay if being used for the truth of the statements contained therein (801/802); and there is no witness who can lay foundation (F). |

| | | | Plaintiff further objects to GOV00000003-18, 477-486 on the grounds of 408 as these are proposed compromise documents. Plaintiff further objects to 001-2 on the grounds of 801/802 and lack of foundation as it is an out of court attorney discovery response. Plaintiff further objects to 532 as being a foreign language document without certified translation. See Chen v. Wai? Café, Inc., No. 10 Civ. 7254, 2016 WL 722185, at *6 n.5 (S.D.N.Y. Feb. 19, 2016) ("It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"). |
|---|---|---|---|
| D13 | 1-8 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 5 Pl. Resp. to Def. Interrog.(copy of unmarked responses also available at ECF 30-3) | No objection. |
| D14 | Cozy Comfort 00001-00761 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 6 Pl. Prod. in Resp. to Def. Requests for Prod. (copy of unmarked responses also available at ECF 30- 2) | Exhibit D14 appears to be substantially all of the discovery produced by Plaintiff in this case, as such objects on the grounds that this exhibit is improper composite exhibit; Plaintiff further objects these documents as duplicative of other exhibits. Plaintiff objects under 402/403 to the admission of these individual documents as |

| | | | a single exhibit. These documents contain extensive hearsay (801/802) including pages of garment audits without certified translation. See Chen v. Wai? Café, Inc., No. 10 Civ. 7254, 2016 WL 722185, at *6 n.5 (S.D.N.Y. Feb. 19, 2016) ("It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"). |
|---|---|---|---|
| D15 | 000001-000005 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 7 Screenshot of Walmart page for The Comfy® | This document lacks any foundation, including who printed alleged document. To the extent any statements contained herein are being offered for the truth it is hearsay (801/802); any relevance is outweighed by prejudice as these appear to by products sold by "Mega Maxi" and not Plaintiff and it would be prejudice for any marketing statement to be attributed to Plaintiff (402/403). |
| D16 | 1-12 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 8 Pl. Responses to Defendant's Requests for Production in Cozy Comfort 22-173 | Response to discovery requests are hearsay (801/802) with no relevance to case (402) |
| D17 | 1-3 | Depo. of Pl. Pursuant to Rule 30(b)(6), Ex. 9 Pl. Supp. Resp. to Def. Requests for Prod. | Response to discovery requests are hearsay (801/802) with no relevance to case (402) |

| D18 | 1-5 | Def. Mot. Summ. J. Ex. 8 (ECF No. 30-9), Meet Our Mascot, Saxon Speciale - Inspiration For The Comfy®® | This webpage printout is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
|---|---|---|---|
| D19 | 1-4 | Def. Mot. Summ. J. Ex. 9 (ECF No. 30-10), 3 Ways Hugs Improve Our Overall Health | This webpage printout is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
| D20 | 1-6 | Def. Mot. Summ. J. Ex. 10 (ECF No. 30-11), Relationship Hack: 3 Ways The Comfy® Enhances Relationships | This webpage printout is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
| D21 | 1-5 | Def. Mot. Summ. J. Ex. 12 (ECF No. 30-13), An Ode To Comfy Season at 1, available at https://thecomfy.com/blogs/blog/an-ode-to-comfyseason?_pos=1&_sid=e5c64b7d4&_ss=r | This webpage printout is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
| D22 | 1-4 | Def. Mot. Summ. J. Ex. 13 (ECF No. 30-14), Staying Comfy® This Winter | This webpage printout is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
| D23 | 1-3 | Def. Mot. Summ. J. Ex. 15 (ECF No. 30-16), Trademark Registration No. 5678126 | No objection |
| D24 | 1-26 | Def. Mot. Summ. J. Ex. 17 (ECF No. 30-18), US Patent No 10420431 | Wrong Document |
| D25 | 1-11 | Def. Mot. Summ. J. Ex. 18 (ECF No. 30-19), US Patent No D859788 | No objection |
| D26 | 1-688 | [CONFIDENTIAL] Def. Mot. Summ. J. Confidential Ex. 20 (ECF No. 28-20), Pl. Add'l Records Following Pl. Depo. Pursuant to Rule 30(b)(6) | No objection |
| D27 | 1-5 | Def. Mot. Summ. J. Ex. 21 (ECF No. 30-22), Comfy® website and promotional video links, including Shark Tank pitch, and patent information on Comfy® website | This is an inappropriate compilation of multiple webpage printouts is being offered for the truth of the matter asserted and, thus, is hearsay (801/802); there is no witness testimony who can establish the authentication or |

| | | | foundation for this document (901; F) |
|---|---|---|---|
| D28 | 000001-000003 | Expert disclosure of Mary Ann Ferro | This disclosure document is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
| D29 | 1-73 | Expert report of Mary Ann Ferro | This expert report is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). St. Bernard Par. Gov't v. United States, 121 Fed. Cl. 747, 763 (2015) ("sworn declarations, expert reports, and an appendix are inadmissible hearsay.") (citing FRE 801(c); FRE 802.) |
| D30 | 000001-000004 | National Weather Service, Extreme cold, available at https://www.weather.gov/dlh/extremecold | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., meaning of extreme cold) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F) |
| D31 | 000001-000002 | National Weather Service, Safety > Winter, available at https://www.weather.gov/safety/winter, specifically, graphic number 2, also available at https://www.weather.gov/images/wrn/Infographics/Winter-Dress-Infographic.jpg | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., meaning of extreme cold) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901, F). |

| D32 | 000001-000004 | Canada Goose, Simcoe Oversized Fleece Hoody, available at https://www.canadagoose.com/us/en/simcoe-oversized-fleece-hoody-7016L.html | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., meaning of extreme cold) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is prejudicial as it relates to a product not at issue in this case and does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
| --- | --- | --- | --- |
| D33 | 000001-000004 | Canada Goose, Chilliwack Bomber Kind Fleece, Product Details section, available at https://www.canadagoose.com/us/en/chilliwack-bomber-kindfleece-7102W.html | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., meaning of extreme cold) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is prejudicial as it relates to a product not at issue in this case and does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
| D34 | 000001-000011 | Government of Canada, Health Canada, Extreme Cold, available at https://www.canada.ca/en/health-canada/services/healthy-living/yourhealth/environment/extreme-cold.html#a4 | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., meaning of extreme cold) (801/802); Defendant cannot establish the authenticity of this |

| | | | exhibit or its foundation (901,F). |
|---|---|---|---|
| D35 | 000001-000012 | Heat Holders, Understanding the Science Behind Thermal Clothing: How Does It Work?, available at www.heatholders.com/blogs/wow/understanding-the-science-behindthermal-clothing-how-does-it-work | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., how thermal clothing works) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is prejudicial as it relates to a product not at issue in this case and does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
| D36 | 000001-000009 | REI Coop, Expert Advice, How To Dress in Cold Weather, available at https://www.rei.com/learn/expert-advice/how-to-dress-in-coldweather.html | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., how to dress in cold weather) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F). |
| D37 | 000001-000013 | Mayo Clinic, Hypothermia, available at https://www.mayoclinic.org/diseases-conditions/hypothermia/symptomscauses/syc-20352682 | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., medical details of hypothermia) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is prejudicial as it relates to a matter not at issue in this case, namely medical diagnosis, with |

| | | | no qualified witness to testify about the same, and it does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
|---|---|---|---|
| D38 | 000001-000003 | Expert disclosure of Patricia Concannon | This disclosure document is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). |
| D39 | 1-24 | Expert report of Patricia Concannon | This expert report is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). St. Bernard Par. Gov't v. United States, 121 Fed. Cl. 747, 763 (2015) ("sworn declarations, expert reports, and an appendix are inadmissible hearsay.") (citing FRE 801(c); FRE 802.) |
| D40 | 000001-000002 | Updated CV of Patricia Concannon | This expert CV is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). St. Bernard Par. Gov't v. United States, 121 Fed. Cl. 747, 763 (2015) ("sworn declarations, expert reports, and an appendix are inadmissible hearsay.") (citing FRE 801(c); FRE 802.) |
| D41 | 000001-000009 | Cybersecurity & Infrastructure Security Agency, Extreme Weather and Climate Change, Extreme Cold, available at https://www.cisa.gov/topics/critical-infrastructure-security-andresilience/extreme-weather-and-climate-change/extreme-cold | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (801/802); |

| | | | |
|---|---|---|---|
| | | | Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is prejudicial as it relates to a matter not at issue in this case, namely impact of climate change on cybersecurity, with no qualified witness to testify about the same, and it does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
| D42 | 000001-000003 | Columbia, Women's Icelandite™ TurboDown Jacket, available at https://www.columbia.com/p/womens-icelandite-turbodown-jacket-1667431.html?dwvar_1667431_color=263 | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., marketing of Columbia jacket) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is prejudicial as it relates to a product not at issue in this case and does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
| D43 | 000001-000004 | Canada Goose, Paradigm Expedition Parka, Product Details section, available at https://www.canadagoose.com/us/en/paradigm-expeditionparka-2058MW.html | This document is hearsay since Defendant is relying on it to prove the truth of the matter asserted (i.e., marketing of Canada Goose jacket) (801/802); Defendant cannot establish the authenticity of this exhibit or its foundation (901,F); this exhibit is |

| | | | |
|---|---|---|---|
| | | | prejudicial as it relates to a product not at issue in this case and does nothing to prove what constitutes extreme cold from an importation perspective (402/403). |
| D44 | | Depo. of James Crumley, Exs. 1-25 | Plaintiff objects on the grounds that this exhibit is improper composite exhibit. Plaintiff further objects to Plaintiff objects to Exhibit 4, an expert report, selection of testimony from another case, and patents/trademarks as being hearsay, irrelevant under 402 to the matters in this case, incomplete, and an improper composite exhibit (FRE 1004).   St. Bernard Par. Gov't v. United States, 121 Fed. Cl. 747, 763 (2015) ("sworn declarations, expert reports, and an appendix are inadmissible hearsay.") (citing FRE 801(c); FRE 802.) Plaintiff further objects to Exhibit 12, as it is an incomplete document and a collection of selected pages from larger documents (FRE 1004.  Exhibit 12 contains hearsay and 408 materials that are duplicative of identical documents elsewhere on Defendant's exhibit list. Plaintiff further object to Exhibit 6 under 801/802 as these appear |

|  |  |  | to be being offered for the truth of marketing statements, further, they are not relevant under 402 since they relate to other products and Defendant has not established the foundation for any of these internet printouts. Plaintiff objects to Exhibit 8 being introduced by the Defendant since it is the Defendant's own filing/statement, and its introduction would be hearsay. Plaintiff objects to Exhibit 9-11, as they are case law / the Court's Order and not evidence (402/403 or 801/802). Plaintiff objects to Exhibit 14 and 16 as duplicative of D16 and D17 and for the reasons stated with respect to D16 and D17, above. Plaintiff objects to Exhibit 15 as irrelevant under 402. Plaintiff objects to Exhibit 17 as being an inappropriate compilation of incomplete pages from documents found elsewhere in the production and complete documents have been omitted. (FRE 1004). Plaintiff objects to Exhibit 18 to the extent Defendant seeks to introduce its own discovery responses into |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | evidence as hearsay (801/802). Plaintiff objects to Exhibit 19 as duplicative of D25. Plaintiff objects to Exhibit 20 as duplicative of D24. Plaintiff further objects to Exhibit 21 and 22 under 801/802 as out of court statements being offered for the truth of the matter asserted and object to Exhibit 22 as being an incomplete copy of deposition testimony in this case which was not disclosed in the deposition designation process as ordered. Plaintiff further objects to Exhibits 24 as duplicative of D27 and for the reasons stated with respect to D27, above. Plaintiff objects to Exhibit 25 under 402 as the cell-phone checkout page is not relevant to any issue in this case and constitutes hearsay under 801/802, it also lacks authentication and foundation (901; F). |
| D45 | | Expert rebuttal report of Mary Ann Ferro, including Ex. A | This expert report is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). St. Bernard Par. Gov't v. United States, 121 Fed. Cl. 747, 763 (2015) ("sworn declarations, expert reports, and an appendix are |

| | | | |
|---|---|---|---|
| | | | inadmissible hearsay.") (citing FRE 801(c); FRE 802.) |
| D46 | | Expert rebuttal report of Patricia Concannon | This expert report is being offered for the truth of the matter asserted and, thus, is hearsay (801/802). St. Bernard Par. Gov't v. United States, 121 Fed. Cl. 747, 763 (2015) ("sworn declarations, expert reports, and an appendix are inadmissible hearsay.") (citing FRE 801(c); FRE 802.) |
| D47 | 1-2 | Trademark Registration No. 6,540,042 | This exhibit was not timely disclosed during discovery as required under FRCP 26 and 37 or during the parties' pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. |
| D47-1 | 1-291 | Prosecution history for Trademark Registration No. 6,540,042 | This exhibit was not timely disclosed during discovery as required under FRCP 26 and 37 or during the parties' pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. |
| D48 | 1-2 | Trademark Registration No. 6,693,853 | This exhibit was not timely disclosed during discovery as required under FRCP 26 and 37 or during the parties' |

| | | | pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. |
|---|---|---|---|
| D48-1 | 1-40 | Prosecution history for Trademark Registration No. 6,693,853 | This exhibit was not timely disclosed during discovery as required under FRCP 26 and 37 or during the parties' pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. |
| D49 | 1-2 | Trademark Registration No. 6,896,826 | This exhibit was not timely disclosed during discovery as required under FRCP 26 and 37 or during the parties' pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. |
| D49-1 | 1-64 | Prosecution history for Trademark Registration No. 6,896,826 | This exhibit was not timely disclosed during discovery as required under FRCP 26 and 37 or during the parties' pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. |
| D50 | 1-6 | Photographs of the Snuggie® from Allstar Marketing Group LLC v. United States, Court No. 13-00395, ECF No. 42-1, at 2-4, 55-57. | This exhibit was not timely disclosed during discovery as required |

| | | | under FRCP 26 and 37 or during the parties' pre-trial exchanges or submissions; to allow Defendant to introduce this new exhibit (which was publicly available) at trial would prejudice Plaintiff under FRE 403. Improper summary (FRE 1006) since these are not all the images from the Allstar Marketing case or the Court's judgment in Allstar marketing. These are simply some images from the government's own response to Allstar's motion for summary judgment in that case. |
|---|---|---|---|

\*Both parties reserve the right to use any exhibit identified on either party's exhibit list.

<u>SCHEDULE I-2</u>

<u>DEFENDANT'S OBJECTIONS TO PLAINTIFF'S WITNESSES AND TRIAL EXHIBITS</u>

**A. Objections to Plaintiff's Trial Witnesses**

Defendant objects to the following witness proposed by plaintiff to provide testimony at

trial:

1. <u>James H. Crumley</u>.  Mr. Crumley is offered as an expert witness.  Expert testimony is

admissible if, and only if: "(a) the expert's scientific, technical, or other specialized knowledge

will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the

testimony is based on sufficient facts or data; (c) the testimony is the product of reliable

principles and methods; and (d) the expert has reliably applied the principles and methods to the

facts of the case."  Fed. R. Evid. 702(a)-(d).  "Under *Daubert*, the trial court must act as a

'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's

reliability standards by making a preliminary determination that the expert's testimony is

reliable."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire*

*Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)).  Here, we believe that Mr. Crumley does

not meet all four of the required factors under Fed. R. Evid. 702.  His prior testimony in *Top*

*Brand LLC et al. v. Cozy Comfort Company, LLC, et al*., Case No. 21-cv-00597-PHX-SPL,

District of Arizona, reflects that in that case, which covers the same subject merchandise at issue

here, he prepared an expert report in which he considered and referred to The Comfy® as a

garment.  Therefore, his testimony is unlikely to help the trier of fact to understand the evidence

or to determine whether The Comfy® is a garment or a blanket.  Further, based on his report and

the testimony elicited during his deposition, the testimony he intends to offer at trial is not based

on the evidence developed here in the record.  In addition, his report and deposition testimony

both reveal that his opinion is not the product of reliable principles and methods. In fact, he indicated that his opinion relied almost exclusively on information not developed in this action and which he destroyed.

Given his prior testimony under oath, Mr. Crumley should be precluded from testifying that The Comfy® is a blanket, and not a garment. Further, although the Court has denied our motion *in limine* and will permit the testimony of Mr. Crumley, it is unlikely that Mr. Crumley's testimony at trial will assist the Court as the trier of fact. This is true as to the opinions of Mr. Crumley reflected in both his expert report and rebuttal report.

Should the Court exclude the testimony of any of plaintiff's witnesses, we reserve our right to designate portions of testimony from the depositions of these witnesses.

## B. Objections to Plaintiff's Trial Exhibits

Defendant reserves all rights to object to the introduction of plaintiff's trial exhibits on the grounds of relevance, failure to lay a proper foundation, the rule of completeness, and any other objection permitted by the Federal Rules of Evidence and the Rules of the U.S. Court of International Trade.

Without prejudice to the above, defendant identifies the following specific objections to trial exhibits designated by plaintiff:

| Ex. No. | Pg. Nos. | Description | Objections |
|---|---|---|---|
| P1 | N/A | Sample of The Comfy® | |
| P2 | 1 | The Comfy® dimensions (Bates No. Cozy Comfort 000197) | |
| P3 | 1-11 | Application for trademark (Gov't MSJ, Ex. 14) | |

| P4 | 1-3 | Trademark Reg. No. 5,678,126 (Gov't MSJ, Ex. 15) | |
| P5 | 1-8 | Cancellation of Trademark Reg. No. 5,678,126 (Gov't MSJ, Ex. 16) | |
| P6 | 1-26 | Patent No. 10,420,431 (Gov't MSJ, Ex. 17) | |
| P7 | 1-11 | Patent No. D859,788 (Gov't MSJ, Ex. 18) | |
| P8 | 1-12 | Patent No. D905,380 | |
| P9 | 1-18 | Patent No. D969,458 (Gov't MSJ, Ex. 19) | |
| P10 | 1-23 | Photographs of The Comfy® displayed for sale (Bates Nos. Cozy Comfort 000240-261) | Not included in exhibit list due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P11 | 1-177 | Licensing agreements (Bates Nos. Cozy Comfort 00762-00938) | Not probative; hearsay. |
| P12 | 1-132 | The Comfy Psychographic Segmentation Study Findings (Bates Nos. Cozy Comfort 000939-001070) | Unauthenticated; not probative; hearsay; prepared for litigation; FRE 1006 (best evidence rule) |
| P13 | 1-100 | Photographs from customers (Bates Nos. Cozy Comfort 001075-001174) | Unauthenticated; not probative; hearsay; prepared for litigation; FRE 1002 (best evidence rule); FRE 1006 (improper |

3

| | | | summary document). |
|---|---|---|---|
| P14 | N/A | Compilation of customer reviews demonstrating use for protection against extreme cold | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P15 | 1-2 | Amazon customer review demonstrating use for protection against extreme cold | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P16 | 1-6 | Cozy Comfort net sales 2018-2022 (Bates Nos. Cozy Comfort 001175-001180) | Unauthenticated; not probative; hearsay; prepared for litigation; FRE 1002 (best |

| | | | evidence rule); FRE 1006 (improper summary document). |
|---|---|---|---|
| P17 | 1-13 | Entry records, Entry No. 9HX-5586673-2 (Pl. Resp. Gov't SOMF, Ex. 11) | |
| P18 | 1-3 | CBP Form 29 Notice of Action (March 9, 2020) (Pl. Resp. Gov't SOMF, Ex. 10) | |
| P19 | 1-7 | Entry records, Entry No. 442-9233932-0 (Bates Nos. Cozy Comfort 000002-000007) | |
| P20 | 1 | Protests and entries in *Cozy Comfort Company, LLC v. United States*, Court No. 22-173 (Protest # 2704-22-160430) (ECF No. 10) | |
| P21 | 1-30 | CBP Informed Compliance Publication, Apparel Terminology Under the HTSUS (June 2008) | |
| P22 | 1-10 | CBP Headquarters Letter Ruling (HQ) 313594 (May 21, 2021) | |
| P23 | 1-2 | Oxford English Dictionary, definition of "blanket," *available at* https://www.oed.com/search/dictionary/?scope=Entries&q=blanket | |
| P27 | N/A | Sample of the Snuggie® | |
| P34 | 1-27 | Screen capture of thecomfy.com reviews without any keyword search. (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P35 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "freeze" or "freezing". (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; |

| | | | unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
|---|---|---|---|
| P36 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "extreme". (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P37 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "cold". (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); |

| | | | FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
|---|---|---|---|
| P38 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "chilly". (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P39 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "winter". (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P40 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "weather". (supplement to P14) | Not produced in discovery; not |

| | | | included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
|---|---|---|---|
| P41 | 1 | Screen capture of thecomfy.com reviews resulting from a search using a relevant keyword: "wind". (supplement to P14) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
| P42 | N/A | Data Collection for compilation of customer reviews demonstrating use for protection against extreme cold (supplement to P14 and P15) | Not produced in discovery; not included in list of exhibits due Aug. 8, 2024; unauthenticated; not probative; hearsay; prepared for litigation; FRE |

| | | | 106 (remainder of or related statements); FRE 1002 (best evidence rule); FRE 1006 (improper summary document). |
|---|---|---|---|

\*In accordance with the Court's October 18, 2024 instructions to the parties provided through Mr. Chien, we have highlighted plaintiff's additional proposed exhibits P34-42 to which we object.  Although plaintiff has also included additional objected to facts to be established at trial in red in its Schedule C-1 (paragraphs 46-58), defendant reasserts its objection as to those additional proposed facts as having been waived when not raised at the October 11, 2024 conference.  We object to plaintiff's highlighting and objecting to defendant's exhibits 47-49 and 47-1, 48-1, and 49-1.

As discussed at the October 11 conference, we raised as additional exhibits the three trademarks adverse to plaintiff's position that it had failed to produce in response to our request for production of documents.  Plaintiff's counsel objected to these exhibits as incomplete because they did not contain the prosecution histories for the trademarks.  We noted that these, too, should have been produced in response to our request for production of documents.  We agreed if plaintiff provided copies of these histories, we would include them in our exhibits, to which the Court expressed its pleasure.  Plaintiff did provide these, and we have included them on our Schedule H-2.